AO 241
(Rev. 12/04)

Page 2

**PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

**0 7 - 3 7 0**

| United States District Court | District: Delaware |
|---|---|

| Name (under which you were convicted): Michael Durham | Docket or Case No.: |
|---|---|

| Place of Confinement: D.C.C. 1181 Paddock Rd, Smyrna, De. 19977 | Prisoner No.: 161286 |
|---|---|

| Petitioner (include the name under which you were convicted) Michael Durham | Respondent (authorized person having custody of petitioner) Warden Thomas Carroll |
|---|---|

The Attorney General of the State of Joseph Biden

v.

**PETITION**

FILED

JUN 1 1 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD scanned

1.    (a) Name and location of court that entered the judgment of conviction you are challenging:

Supreme Court of Delaware
Superior Court of Delaware

(b) Criminal docket or case number (if you know): 0208019524A

2.    (a) Date of the judgment of conviction (if you know): 12-04-03
       (b) Date of sentencing: Resent- 5-25-04 / 3-9-04

3.    Length of sentence: Life + 103 years

4.    In this case, were you convicted on more than one count or of more than one crime?    ☒ Yes    ☐ No

5.    Identify all crimes of which you were convicted and sentenced in this case:

Four Counts of Possession of a Firearm During the Commission of a Felony,
One Count of Burglary in the First Degree.
One Count of Attempted Robbery in the First Degree.
Reckless Endangering in the First Degree, Conspiracy, Terroristic Threatening,
Assault, Endangering the Welfare of a Child, Criminal Mischief, Aggravated Menacing,

6.    (a) What was your plea? (Check one)

       ☐ (1)    Not guilty        ☐ (3)    Nolo contendere (no contest)

       ☐ (2)    Guilty           ☐ (4)    Insanity plea

Did not have a plea offering

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

☒ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☐ No

8.    Did you appeal from the judgment of conviction?

☒ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court: Supreme Court Delaware

(b) Docket or case number (if you know): NO. 227, 2004  also, Direct Appeal Filed by Att. Sandra Dean

(c) Result: Denied

(d) Date of result (if you know): 1/12/05

(e) Citation to the case (if you know): People v. Evans; U.S. v. Bartlett; U.S. v. Bishop U.S. v. Bradley  U.S. v. Gross.

(f) Grounds raised: Court Abused its discretion; Ineffective assistance of Counsel; vindictive Prosecution and/or misconduct; Judicial misconduct and/or abuse of discretion by Trial Court.

(g) Did you seek further review by a higher state court?    ☐ Yes    ☒ No

If yes, answer the following:

(1) Name of court:

(2) Docket or case number (if you know):

(3) Result:

(4) Date of result (if you know):

AO 241
(Rev. 12/04)

(5) Citation to the case (if you know):

(6) Grounds raised:

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☒ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?    ☒ Yes    ☐ No

11.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court: Superior Court Kent County (Post-conviction Relief)

(2) Docket or case number (if you know): 0208017524A

(3) Date of filing (if you know): 5/4/05

(4) Nature of the proceeding: Conviction, direct Appeal, Post-conviction relief

(5) Grounds raised:
Vindictive prosecution and/or prosecutorial misconduct.
Judicial misconduct and/or abuse of discretion by Trial Court.
Ineffective assistance of Counsel of pre-Trial, Trial and
post-Trial proceedings.
Double jeopardy, unlawful Confinement.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☒ Yes    ☐ No

(7) Result: Denied

(8) Date of result (if you know): 3/8/2004

AO 241
(Rev. 12/04)

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: Superior Court Kent County  5/4/05 (post-conviction Relief)

(2) Docket or case number (if you know): 0208019524A

(3) Date of filing (if you know): 5/4/05  on or about April or May 07

(4) Nature of the proceeding: same

(5) Grounds raised:     same
Ineffective assistance of counsel

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐  Yes    ☒  No

(7) Result: none

(8) Date of result (if you know): n/a

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court:

(2) Docket or case number (if you know):          N/A

(3) Date of filing (if you know):

(4) Nature of the proceeding:

(5) Grounds raised:

AO 241
(Rev. 12/04)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☒ No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ☒ Yes    ☐ No

(2) Second petition:    ☐ Yes    ☐ No

(3) Third petition:    ☐ Yes    ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

GROUND ONE: Vindictive prosecution and/or prosecutorial misconduct

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

State's Attorney introduction of a Theory of Accomplice liability was unreasonable; permitted perjure testimony to go uncorrected

(b) If you did not exhaust your state remedies on Ground One, explain why:

(c)    **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☒ No

(2) If you did not raise this issue in your direct appeal, explain why:

Counsel did not raise issue

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:    Delaware Superior Court

Type of motion or petition:    Post-Conviction Relief

Name and location of the court where the motion or petition was filed:
Dover, De. Superior Court Kent County

Docket or case number (if you know):    0208019524 A

Date of the court's decision:    3/14/06

Result (attach a copy of the court's opinion or order, if available):


(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☒ No

(4) Did you appeal from the denial of your motion or petition?    ☒ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☒ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
Supreme Court Kent county Dover, De.

Docket or case number (if you know):    0208019524A

Date of the court's decision:    9/28/06

Result (attach a copy of the court's opinion or order, if available):


(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One: N/A

**GROUND TWO:** Judicial misconduct and/or Abuse of discretion by Trial Court.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Court gave improper instruction on Accomplice liability, permitted States witnesses to give vouched testimony of Alleged victim, failed to question juror as to Any specific portion of Trial because of Juror inattentiveness, or vacated conviction and sentence; failed to give instructions as to unanimous decision.

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☐ Yes    ☒ No

(2) If you did not raise this issue in your direct appeal, explain why:

Counsel fail to raise

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state: Delaware

Type of motion or petition: Post-Conviction Relief

Name and location of the court where the motion or petition was filed:

Superior Court Kent County

Docket or case number (if you know): 0208019524 A

Date of the court's decision: 3/14/06

AO 241
(Rev. 12/04)

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?　　　　☐ Yes　　☑ No

(4) Did you appeal from the denial of your motion or petition?　　☑ Yes　　☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?　☑ Yes　　☒ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:
Supreme Court kent County

Docket or case number (if you know): 02080195 2 YA

Date of the court's decision: 9/28/06

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)　　**Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :
have used to exhaust your state remedies on Ground Two

**GROUND THREE:** Ineffective Assistance of Counsel of pre-Trial, Trial And post-Trial proceedings

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
Failed to investigate; no one took finger prints, blood samples; or police line-up, other witnesses. Fail to object to And/or challenge the admission of Exhibit (E); And officer fail to Raise double Jeopardy issue, Testimony;

AO 241
(Rev. 12/04)

Page 10

(b) If you did not exhaust your state remedies on Ground Three, explain why?

(c)     **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?      ☐ Yes    ☒ No

(2) If you did not raise this issue in your direct appeal, explain why:

Cannot raise on direct Appeal
As Counsel filed direct appeal

(d)     **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☒ Yes    ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: Post-Conviction relief

Name and location of the court where the motion or petition was filed:

Superior Court kent County

Docket or case number (if you know): 0208019524A

Date of the court's decision: ~~04/04/04~~  3/14/06

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?                                      ☐ Yes    ☒ No

(4) Did you appeal from the denial of your motion or petition?                               ☒ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☒ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Supreme Court kent County

Docket or case number (if you know): No. 176, 2006

Date of the court's decision: 9/28/06

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:** Double Jeopardy; Unlawful Confinement

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

Court Records Reflect, movant being Acquitted of possession of a Firearm during the commission of a felony in movants first Trial; In Second Trial movant was found guilty of the Same offense

See Attachment

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☐ Yes  ☑ No

(2) If you did not raise this issue in your direct appeal, explain why:
Counsel fail to Raise

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes  ☐ No

(2) If your answer to Question (d)(1) is "Yes," state: Delaware

Type of motion or petition: Post-conviction Relief

AO 241
(Rev. 12/04)

Name and location of the court where the motion or petition was filed:

Superior Court Kent County

Docket or case number (if you know): 0208:9524A

Date of the court's decision: 3/14/06

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?     ☐ Yes   ☒ No

(4) Did you appeal from the denial of your motion or petition?     ☒ Yes   ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☒ Yes   ☐ No

(6) If your answer to Question (d)(4) is "Yes," state: Delaware

Name and location of the court where the appeal was filed:

Delaware Supreme Court

Docket or case number (if you know): 176, 2006

Date of the court's decision: 9/28/06

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)     **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Four:

AO 241
(Rev. 12/04)

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court

having jurisdiction?    ☒ Yes    ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not

presenting them:

(b)    Is there any ground in this petition that has not been presented in some state or federal court?  If so,

ground or grounds have not been presented, and state your reasons for not presenting them:

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction

that you challenge in this petition?    ☐ Yes    ☒ No

If "Yes," state the name and  location of the court, the docket or case number, the type of proceeding, the issues

raised, the date of the court's decision, and the result for each petition, application, or motion filed.  Attach a copy

of any court opinion or order, if available.

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for

the judgment you are challenging?    ☐ Yes    ☒ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

raised.

AO 241
(Rev. 12/04)

16.    Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:    _SANDRA DEAN ESq_

(b) At arraignment and plea:

(c) At trial:

(d) At sentencing:

(e) On appeal:    _SANDRA DEAN ESq_

(f) In any post-conviction proceeding:    _PRO'SE_

(g) On appeal from any ruling against you in a post-conviction proceeding:

_pro'se_

17.    Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    ☐ Yes    ☒ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?    ☐ Yes    ☐ No

18.    TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.   § 2244(d) provides in

part that:

    (1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

✎AO 241
(Rev. 12/04)                                                                                                Page 16

    (2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

or any other relief to which petitioner may be entitled.

_____

                    Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on _____ (date).

_____

                    Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

IN FORMA PAUPERIS DECLARATION

_____

[insert appropriate court]

* * * * *

In The United States District Court
District Delaware

: Discussion :

The movant here inquiry's about a possession of a Firearm during the commission of a felony (PFDCF), a charge he was acquitted of in initial trial. In which raise seriously unanswered questions. Testimony at second trial by officer (Nick Berna) State's when asked "the smaller man is the one who had the gun" Answer, yes". However, both men were charged, and movant therefore was acquitted, so for jury to acquit on evidence, trial judge must have instructed the Jury on (accomplice liability) during initial trial proceeding. However, in subsequent trial, movant was found guilty of (4) four other possessions gun charges all consistant with the same incident, and found guilty of all. In opening arguments, state attorney stated "He's going to prove defendant possessed a gun" How did the state prove this statement? There is no evidence of direction by movant, or any testimony of aiding. The Trial Court clearly deprived movant in the second Trial by allowing

Jury to Convict on *Accomplice liability* when it was already established that movant did not possess the gun. Trial Court prejudiced movant, and plain ERROR is Clearly shown here......

IN THE United States District Court
District Delaware

Michael Durham                )
                              )
      V.                      )    CR. ID No. 0208019524A
                              )
Warden Thomas Carroll         )
                              )
                              )

Memorandum of Law
In Support of Writ of Habeas Corpus Relief

Dated: 5-30-07

Michael Durham
Michael Durham
SBI# 161286, Bldg C
D.C.C. 1181 Paddock Rd.
Smyrna, De. 19977

In Superior Court, movants due process Rights were violated, And the actions of The States Attorney predjudiced him during proceedings, which led to his illegal and/or Unlawful Confinement.

This correspondence is to assure the honorable Court that movant is actually innocent of Alleged-crimes For which he was convicted. Base on the Circumstantial evidence testimony, The evidence doesn't support conviction, and movant should not have been declared habitual; movant should not have been declared habitual because movant priors do not substantiate such declaration; movant asks honorable court to restore his liberty As a matter of public interest.

The Movant offers the following grounds and facts:

1. Vindictive prosecution and/or prosecutorial misconduct.

2. Judicial misconduct and/or Abuse of discretion by trial Court.

3. Ineffective assistance of counsel of pre-trial, trial and post-trial proceedings.

4. Double jeopardy.

5. Unlawful confinement.

6. Movant ask that all grounds and issues be addressed Separately and distantly

The Movant recently found a Colorable claim that there is a Miscarriage of justice because of a Constitutional violation and is warranted in the interest of justice which his attorney M.S. Sandra W. Dean, should have found and Should have respectfully Submitted in Movants direct appeal, which makes her performance ineffective and in violation of the Movants Sixth amendment rights to Effective Counsel pursuant to the United States constitution. In Schlup v. Delo, 513 U.S. 298, 315, 115 S.Ct. 851, 861, 130 L.Ed. 2d 808 (1995), the Miscarriage Standard is, the Movant need not prove that he is actually innocent, rather, Movant is required to present "Evidence of innocence".

Ground one(1)

Vindictive Prosecution and/or Prosecutorial misconduct

States attorney's introduction of a theory of accomplice liability was unreasonable; and insuffient to Sustain conviction of movant, committed deliberate entrapment, Permitted Perjured testimony to go uncorrected;

I

By prosecutor inducing this theory to the jury, Movant's Substantial rights were violated, after Movant's claims of innocence; prosecutor created in jurors Minds that Movant committed crime by aiding another. (§274) Movant argues the states evidence hasn't established he was participant, Moreover, def. witness testified at trial Movant wasn't present during alleged acts (trial transcripts: P.g. 86 lines 15-17). Moreover, alleged victim was known for being dishonest in the past (trial transcripts: p.g. 62 lines 19 - p.g. 63 lines 2).

II

States attorney created an unjustified action by allowing def. witness and Movant to be put in Same cell at Courthouse, than have holding cell officer (sgt. Porter) testify at trial as to some elaborate scene by Movant and def. witness. According to A.B.A. standards, this conduct is unprofessional (1.1)(b)(c) provides, The prosecutor is both an administrator of justice and an advocate; he must exercise sound discretion in the performance of his functions. depriving Movant of a fair trial violating his (14th) amendment rights to U.S Constitution. over →

(1)

Furthermore, these standards also state that, the (c) duty of the prosecutor is to seek justice, not merely to convict These unprofessional manners Comprimized Movants trial, deprived his (14th) Amendment rights and Violated their standards of Rule 5.8(c) stating "The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury." Confidence in judicial process is clearly devoid in eyes of Public and amounts to plain Error.

## III

Movants substantial rights were violated when states attorney let perjured testimony from that of police det. (Humphrey) and states witness (alleged victim) Taylor, and let go uncorrected. The record suggest that officer humphrey's testimony that alleged victims identification of Movant came when he interviewed alleged victim at hospital. (trial transcript: p.g. 34 line 15-21). Det. Humphrey stated that he was informed of the arrest of Movant as soon as he arrived at the scene, and that (Cpl. Richardson) informed him that (taylor) told him it was Movant (trial transcripts p.g. 41 line 7-10). but clarified that he didn't recall whether or not he told (taylor) that Movant was assailant (trial transcripts p.g. 42 line 10-18). The Conduct of the prosecution allowed Enforcement officers "suggestive" and "unnecessary", and amounts to the unreliability of the judicial process.

Ground TWO (2)

Judicial misconduct and/or Abuse of discretion by trial court.

Court judge gave improper instruction on accomplice liability, permitted states witnesses to give vouched testimony of alleged victim, failed to question juror as to any specific portion of trial because of juror inattentiveness, or Vacated Conviction and SENTENCE, Court judge failed to give instructions as to unanimous decision.

I

The Evidence did not support conviction of Movant regarding accomplice liability. One of the factors in §274 specifies an (individualized determination) of the defendants Mental state and Culpability for any aggravating fact or Circumstance. ① There's nothing in the record to support Movants awareness of alleged-crime, ② Alleged-victims accounts of what took place were inconsistant at preliminary hearing, initial trial and second trial, ③ There were no other witnesses to testify to Movants PRESENCE at SCENE of alleged-crime, Moreover, testimony from defense witness stated Movant was not among alleged perpetrators, and only had heard of him before, but was not his friend (SEE: trial transcripts: p.g. 86 line 15-17) (p.g. 89 line 19-p.g. 90-line 3). for these actions the trial Court undermined the judicial process and prejudiced the Movant, thus, violating his Constitutional rights, and the interests of justice is not satisfied.

(3)

## II

Court judge allowed improper bolstering of states witness through testimony at trial. There is no evidence in the record that suggest alleged-victim either gave officer at alleged scene of crime Movant's name or identity (SEE: trial trans. p.g. 62 lines 3-6). And movants due process rights were violated when officer lied under "Oath" When he said he learned of arrest of movant when he arrived at alleged-crime scene. (SEE: trial trans. p.g. 41 line 7-10). Thus, Det. Humphrey could not have learned of arrest of movant prior to hospital interview because alleged-victim did not inform officer of who was assailant? Moreover, When questioned about Whether or not he informed alleged-victim (Taylor) about arrest of Movant before he told him movant was assailant (SEE: p.g. 42 line 10-18 SO, Det. Humphrey's testimony was designed to improperly bolster the credibility of the alleged victim (Taylor). prejudicing movant's rights.

## III

Movant's trial was unfair because juror was inattentive and court judge should have made a fair conclusion because of this circumstance, movant was facing "life" in prison and is protected by the U.S. constitution to have (12) impartial jurors on serious felonies. During the Evidentiary hearing, the juror testified after being questioned about "dozing" at trial, that "that could have happened, but the juror next to me would nudge me. But I was not fully asleep". (SEE: Evidentiary tr. p.g. 116 116-11).

(4)

Clearly by the jurors own testimony she was inattentive, Moreover, another witness testified that "During the reading of the jury instructions, it was obvious that she was struggling to stay awake" (SEE: Evidentiary hearing trip.g.7 line 8). Even though the juror remained neutral on her statement that she was attentive, the mere questionable actions alone is suspect to the movants due process rights, therefore, the hearing court was in "plain error" by not releasing Movant to his liberty and letting judgement stand.

## IV

The trial judge abused its discretion when it failed to give the jury instructions as to a unanimous decision to the specific illegal action of the defendant, ① the jury <u>must</u> be properly instructed to achieve such unanimity ② had the jury been properly instructed they would have concluded that Movant couldn't have made an assessment to any act on Movants behalf since principle suspect testified Movant was not conspirer. (SEE: p.g 99 line 12-16, trial tr.). These actions demostrates trial courts prejudice to movants constitutional rights and undermines the judicial process.

Ground three (3)

I

Ineffective assistance of counsel, of pre-trial trial and post-trial proceedings.

I

Movant was convicted in Superior Court of felonies arising from alleged incidents deriving from alleged home invasion. Trial counsel's performance was deficient when she (Ms. Dean) failed to investigate the circumstances of states evidence supporting their contentions, especially when in critical stage of prosecution. ① The record suggest, testimony from police officer at trial that states, "no one took finger prints, blood samples or even had police line-up. (See: trial tr. p.g 37 line 16 – p.g 38 line 15.), and ② counselor may have found other possible witnesses whom may perhaps gave different accounts of what they may have seen or heard, or able to give different identification of perpetrator other than Movant. Movant's constitutional rights were deprived pursuant to 6th and 14th amendments, these actions were unreliable and unreasonable and staggered Movant's case. Movant's counselor was not consistant with (Rule 1.2 of A.B.A provisions), Rules of professional Conduct, and not at all convincing to the public's interest.

H

Trial counsel failed to object to and/or Challenge the admission of (Exhibit E). The Movant asserts that there's no evidence that he possessed a gun. (trial trans. p.g.34 line 7-15), in which testimony demostrates he did not fire any shot or had Knowledge of any shots being fired, or weapons in his possession being as though he was not there, Moreover, the record reflects that officer (Littlefield) tampered with evidence; in investigation of alleged home invasion. Officer Littlefield was not chief investigator and therefore, had no right Shifting evidence around; trial counsel had no objectinto this incident (see: trial trans-p.g.34 line 2-7). This transpired before lead investigator was on scene of alleged crime. Officer (C. Humphrey) was assigned as chief investigating officer (see: trial trans. p.g.31 line 21-23), and his duty is to conduct a fair investigation of all evidence at scene of alleged-crime as it is laid in (State), not staged. Officer Humphrey stated "he recovered an empty shell casing on a table which had been placed there by officer (Littlefield) (see: trial trans p.g.32 line 14-pg.33 line 2).
Movant's constitutional rights of the (6) Sixth and (14th) fourteenth amendment were violated because① Counsel should have objected to the admission, ② Challenged procedures at trial. Had counselor made proper defense, Movant would have had his liberty. Due to process violations, The public could not have confidence in judicial process, if these actions were to be freely used, any citizen could be subject to (placed) evidence by our own authorities and without —

(7)

proper objection or challenge to these issues,
an accused is open for this underminded scheme.
Counsels performance fell below the standard of reasonableness
consistant with 'strickland' and amounts to ineffective representa
which gave movant unfair opportunity to have effective
results and secured defense. The trial counselor should have
had this evidence (suppressed) for the admissibility of
this evidence, movants rights were deprived and the jurys
Minds were influenced because of counselor (MS. Deans)
Performance.

## III

With the exception of this ground of (ineffective
assistance), the remaining grounds (above) and (below) are
adequate and ripe for (direct review) and should have been raised
post-trial. The demostrations here, (above) and (below) gives obvious
evidence of "plain error." Trial counselor's performance was not in
the best interest of the movant, nor was her (Ms. Deans) tactical
decisions appropriately based on the nature of the movants
charges and Sentence he was facing. Rule 1.2(A) states 'A lawyer
Shall abide by a clients decisions concerning the objectives
of representation, subject to paragraphs (c), (d) and (E) depriving
the movant of his chance at his liberty.

(8)

IV

Moreover, The movant received a natural life sentence to (IK02-09-0234) Att Robbery 1st. During trial proceedings, defense witness- i.e. (Principle perpetrator), testified that during the assault on alleged-victim (Taylor), "he" decided to rob (Taylor) (SEE: trial trans. p.g. 88 line 4-8). Quickly stated from "We-decided" to "I decided," clearly showing his own intent, further, stating "to pay him back or whatever. But during the process decided "You got the money?" (SEE: Trial trans. p.g. 89 line 3-5). This testimony alone should have been Enough to challenge and make inference to (state of mind) of defense witness, not movant; Trial counselor was defient for not objecting to this charge from commencement of this case, let alone let go this far, at this stage of movants proceedings towards proving his innocence. State attorney was vindictive for even letting this charge stand, when they knew movants (alleged accomplice) testified (he) not movant, had intent. This is a severe deficiency and not at all permitted in U.S. Constitutional amendment of (6th) Sixth and 14th amend, to due process and equal protection of movant's rights. Moreover, counsel is in violation of standards of the lawyers A.B.A provision as well as prosecutors advocacy to their rules of professional conduct. Ineffective assistance is clearly demostrated here.

(9)

Ground (4) four

Double Jeopardy, Movant was
Subjected to double Jeopardy during prosecution.

I

On April 8, 2003 court records reflect, Movant
being acquitted of possesion of a firearm during the commission of a felony (PFDCF) deriving from an alleged first
degree Kidnap charge in Movant's first trial. However, in the
second trial Movant was found guilty of the same (PFDCF)
all part of same indictment all consistant with same incidents
allegely, (SEE: P.g.1 of Superior Court Crim. Docket). The clause of
double jeopardy prohibits being convicted for same offense after
acquittal. This being precedented through the U.S. Supreme Court;
in which, is in violation of the (5th) fifth amendment. These actions
prejudiced the movant to be free from unfair prosecution.
Movant request his conviction and sentences be eliminated
and justice restored. (SEE: Sentence order Attached).

(10)

Ground (5) five

Unlawful Confinement movant was illegally detained on charges resulting in his conviction and Sentence.

I

From commencement of case, Movant has maintained his innocence. Movant was arrested at another location from one in which he was charged. State authories apprehended Movant at a location at Liberty Court, because officers found gun at this location, and suspect who actually possessed gun, they automatically assumed Movant was involved with an alleged incident at another location about a mile away (Heritage Drive). The only connection they Movant was at scene is that of alleged-victim whose testimony was (inconsistant) at initial trial and Subsequent trial, and claimed he "maybe seen Movant in neighborhood before," not really sure, this alone should have been enough to have at the least a "police line up", by officers going their own assumption of Movant as Suspect, clearly indicates they had an agenda, and charged Movant, for reasons other than alleged-incident at hand, and Movant was and is presently confined illegally and/or unlawfully. These actions bring questions of the state authories procedures and integrity, Movant ask his release from confinement immediately. (As soon as officers realized there was no connection to the charges, movant should not have been charged).

(11)

Ground(6)six_.

Movant ask that all grounds and issues be addressed separately and distantly.

I

During movants trials, initial and subsequent he (movant) exercised his (5th) fifth amendment right to stay silent (not to testify), and because of the abuse of discretion, ineffective representation and the jury's influence by these parties, movant didn't receive fair trial or perfective defense. Clear evidence supports movants assertions and movant plans to show more demostrations of authorities in any reply. Movant ask court to please address these issues with a clear sense of justice. The interests of justice, in the publics view, is diminished.

(12)

......Conclusion............

Movant has catagorically denied any involvement, or any ill conduct pertaining to these charges, and States' contentions, despite their prevailed conviction and sentence, Movant believes he's demonstrated "Miscarriaged justice" unreasonable decisions, Malious abuse of judicial process illegal and/or unlawful conduct, these actions and proceedings were unfair, and the public could not have confidence in the judicial process.

Movant ask honorable court for immediate (Evidentiary hearing) to have these question answered and to vacate case at bar, of conviction and sentence.

(13)

Signed *Michael Durham.*

1       A.    Good afternoon.

2       Q.    Mr. Henry, where are you living or

3   residing at the present time?

4       A.    Right now?

5       Q.    Right now.

6       A.    Delaware Correctional Center.

7       Q.    All right.  Now, I would like to ask you

8   some questions about the evening of August 27, 2002.

9   On that evening were you at the home of Michael

10  Taylor in Dover?

11      A.    Yes, ma'am.

12      Q.    All right.  Who was there with you?

13      A.    It was me, Michael Davis, and a guy named

14  Peebo.

15      Q.    All right.  Now, was Mr. Durham, Michael

16  Durham, was he there?

17      A.    No, ma'am.

18      Q.    All right.  Now, Michael Davis, how long

19  before that night, how long had you known Michael

20  Davis?

21      A.    For about like a week and a half, couple

22  weeks.

23      Q.    Okay.  Where did you meet him, or how did

A·103

1  were there other officers there or just the one?

2      A.    There was other ones there.

3      Q.    All right.  Did you tell anyone --

4  before you got in the ambulance, did you tell

5  anyone who had done this?

6      A.    I can't recall.

7      Q.    Okay.  So you recall telling

8  Detective Humphrey when you got -- when he came to

9  see you at the hospital; was that your testimony?

10     A.    That's what I said, yes.

11     Q.    All right.  But you don't recall telling

12 anybody at the scene?

13     A.    (No response.)

14     Q.    Did Detective Humphrey tell you that

15 they had found Mr. Durham at some other location?

16     A.    I can't recall that.

17     Q.    You don't remember that?

18     A.    (No response.)

19     Q.    Okay.  You testified that you had been

20 convicted in the past of forgery in the second

21 degree?

22     A.    Yes.

23     Q.    Was that for signing somebody else's

Jennie L. Washington
Official Court Reporter

Ab4

 1   name to a ticket?

 2       A.    Yes.

 3       Q.    Okay.  I'd like to ask you a couple of

 4   other questions, Mr. Taylor, about the time.  I

 5   believe you testified, you said that it was about

 6   9 o'clock.  Do you always eat dinner that late?

 7       A.    Sometimes, yes.

 8       Q.    Sometimes?  Okay.  What time did you get

 9   home from work that day?

10       A.    That day I can't recall if I did go to

11   work.

12       Q.    You don't remember if you went to work

13   that day?

14       A.    I can't recall if I had worked that day

15   or not.

16       Q.    Okay.  Where were you working?

17       A.    For Ron's and Mag's Incorporated.

18       Q.    Did you tell the hospital that when you

19   checked in?

20       A.    I can't recall.

21       Q.    Okay.  So would it be fair to say that

22   there was quite of bit of stuff you didn't recall

23   about during this incident?  Would that be fair?

---

Jennie L. Washington
Official Court Reporter

A-65

Carl Humphrey - Redirect

1        A.    No.

2        Q.    You were asked about whether or not you

3    informed Mr. Taylor that you had made an arrest on

4    Mr. Durham.  Do you know whether or not you told

5    Mr. Taylor that you had arrested Mr. Durham before

6    he told you he was the assailant?

7        A.    No.  Actually, I heard it as soon as I

8    arrived on the scene.  Corporal Richardson informed

9    me that Mr. Taylor told him it was Mike Durham, so I

10   knew that upon initially arriving at the scene.

11       Q.    Okay.  My question I suppose is:  Did --

12   when you interviewed Mr. Taylor in the hospital, did

13   he tell you that it was Mr. Durham that assaulted

14   him?

15       A.    Yes.

16       Q.    And then is your testimony that you do not

17   recall whether or not you ever informed him later

18   that you in fact had made the arrest of Mr. Durham?

19       A.    That's correct.

20       Q.    Do you know whether or not you made him --

21   made the notification that an arrest had been made

22   prior to him telling you, notifying you personally

23   that Durham was the assailant?

                        $A.83$

SHEILA A. DOUGHERTY
Official Court Reporter

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL DURHAM, | ) | |
| | ) | No. 227, 2004 |
| Defendant Below, | ) | |
| Appellant, | ) | Court Below:  Superior Court |
| | ) | of the State of Delaware in |
| v. | ) | and for Kent County |
| | ) | |
| STATE OF DELAWARE, | ) | Cr. ID No. 0208019524A |
| | ) | |
| Plaintiff Below, | ) | |
| Appellee. | ) | |

RECEIVED
JAN 1 4 2005
BY:

Submitted:  December 1, 2004
Decided:  January 12, 2005

Before **STEELE**, Chief Justice, **HOLLAND** and **BERGER**, Justices.

Upon appeal from the Superior Court.  **AFFIRMED**.

Sandra W. Dean, Office of the Public Defender, Dover, Delaware, for appellant.

John Williams, Department of Justice, Dover, Delaware, for appellee.

**STEELE**, Chief Justice:

Michael Durham appeals his multiple felony convictions in the Superior Court, claiming the trial judge erred by denying his postverdict motion for a new trial. Durham argued in his motion that a sleeping juror denied him a fair trial. After conducting a hearing, the trial judge found no evidence that the juror actually fell asleep. Because the trial judge's findings are supported by competent evidence, we find no abuse of discretion. Accordingly, we affirm.

## I.

In August 2002, Durham and two others entered Michael Taylor's Dover home seeking money. The three physically accosted and chased Taylor throughout the house. One, carrying a handgun, fired at Taylor. Another punched him in the face. By the time police arrived, all three had fled. Suffering from various injuries, Taylor identified his assailants as Durham, Quentin Henry, and one he knew only as "Peebo." Durham was later tried before a jury in Superior Court and convicted of first-degree burglary, first-degree attempted robbery, and a variety of firearms and other charges.[1]

Following the initial afternoon of jury deliberations, Durham orally moved for a mistrial, contending for the first time that Juror Number Nine slept during parts of the trial. The trial judge reserved decision on the motion, the trial

---

[1]    *State v. Durham*, Del. Super., I.D. No. 00161286 (Dec. 4, 2003).

continued, and the jury ultimately returned its verdict. Durham then moved for a new trial. The trial judge conducted an evidentiary hearing in January 2004, taking testimony from a corrections officer, bailiff, and two members of the gallery present at trial. Juror Nine also testified.

In his March 2004 order, the trial judge recounted the evidence. He noted that although the two observers stated Juror Nine closed her eyes and put her head down at various times, neither thought she was actually asleep. The bailiff, present for the entire trial, testified that he "never saw her sleeping." Juror Nine also insisted she was attentive throughout the trial. Based on this evidence, the trial judge found that, even if Juror Nine was "fighting sleep," this fact alone neither proved that she slept or was otherwise inattentive during the proceedings. He therefore found that Juror Nine's conduct did not prejudice Durham and denied the motion for a new trial.[2]

## II.

It is well established in Delaware that the trier of fact is "the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony."[3] When supported by competent evidence, we will not disturb a trial

---

[2]    *State v. Durham*, 2004 Del. Super. LEXIS 59. The testimony and trial judge's findings are recounted in *id*. at *2-4.

[3]    *Tyre v. State*, 412 A.2d 326, 330 (Del. 1980).

judge's findings of fact.[4]  We review the grant or denial of a new trial for abuse of discretion.[5]

In criminal proceedings, "the truth of every accusation . . . should . . . be confirmed by the unanimous suffrage of twelve . . . equals and neighbors, indifferently chosen and superior to all suspicion."[6]  A violation of this right to a fair trial, codified in the Sixth Amendment, renders any finding of guilt void.[7]  In the juror misconduct context, however, a defendant is entitled to a new trial "only if the error complained of resulted in actual prejudice or so infringed upon defendant's fundamental right to a fair trial as to raise a presumption of prejudice."[8]  Thus, where a defendant can demonstrate a "reasonable probability of juror taint of an inherently prejudicial nature, a presumption of prejudice should arise that [a]

---

[4]      *See, e.g., Weedon v. State*, 788 A.2d 132 (Del. 2001); *Albury v. State*, 551 A.2d 53, 60 (Del. 1988); *cf. DeJesus v. State*, 655 A.2d 1180, 1191 (Del. 1995) (holding that trial judge's factual findings will be upheld unless "clearly erroneous").

[5]      *Barriocanal v. Gibbs*, 697 A.2d 1169, 1171 (Del. 1997).

[6]      *Flonnery v. State*, 778 A.2d 1044, 1050-1051 (Del. 2001), *quoting* 4 WILLIAM BLACKSTONE, COMMENTARIES *343.

[7]      *See, e.g., United States v. Freitag*, 230 F.3d 1019, 1023 (7th Cir. 2000).

[8]      *Hughes v. State*, 490 A.2d at 1034, 1043 (Del. 1985).

defendant's right to a fair trial has been infringed. . . ."[9]    The trial judge,

nonetheless, has "wide discretion in deciding how to handle a sleeping juror."[10]

### III.

Regardless of whether Juror Nine actually slept or simply struggled to stay

awake, Durham claims that a juror in either frame of mind cannot fully participate.

Because Juror Nine was "arguably" sleeping throughout most of the proceedings,

Durham contends he was deprived of the due-process and fair-trial guarantees

embedded in the Fifth and Sixth Amendments.

In *Bialach v. State*,[11] the defendant moved for postconviction relief, claiming

that a juror slept through closing arguments and jury instructions. The prosecutor

alluded to this fact in a post-instruction dialogue between counsel and the trial

judge, joking that he and defense counsel had put one of the jurors to sleep.

Bialach seized on this remark as evidence of a sleeping juror, and thus urged the

trial judge to reverse the jury's finding of guilt. The trial judge denied his motion.

---

[9]    *Massey v. State*, 541 A.2d 1254, 1257 (Del. 1988); *see generally* George L. Blum, Annotation, *Inattention of Juror from Sleepiness or Other Cause as Ground for Reversal or New Trial*, 59 A.L.R. 5th 1 (2003) (collecting cases).

[10]    *Bialach v. State*, 773 A.2d 383, 386 (Del. 2001), *citing Tanner v. United States*, 483 U.S. 107, 113-14, 127 (1987). *See also United States v. Springfield*, 829 F.2d 860, 864 (9th Cir. 1987) ("The [district court] had discretion to resolve the problem of the sleeping juror. It considered carefully the testimony missed during the nap and found that it was insubstantial. We find no abuse of discretion in the method used to remedy the situation.").

[11]    773 A.2d 383 (Del. 2001).

On appeal, we affirmed, noting that the remark was meant – and understood by the trial judge – to be facetious. We noted that there was "no record evidence at all to support Bialach's allegation that any juror was asleep."[12] Because of this lack of evidence, and other procedural defects in Bialach's claim, we had no occasion to discuss the constitutional ramifications of a sleeping juror.

Several federal courts, on the other hand, have encountered these claims, and have generally disallowed them.[13] To warrant a new trial, defendants must demonstrate the juror misconduct resulted in prejudice that deprived them of the right to a fair trial.[14] To prevail on a sleeping-juror claim, the defendant must show that prejudice resulted from the jury ignoring "essential portions of the trial."[15] Thus, some courts have held that a new trial is not warranted where a juror slept

---

[12]    *Bialach*, 773 A.2d at 386.

[13]    *See, e.g., United States v. Tierney,* 947 F.2d 854, 868-69 (8th Cir. 1991) (defendant's assertions that jurors slept through "critical" parts of defendant's case "too vague to establish prejudice"); *United States v. Springfield,* 829 F.2d 860, 864 (9th Cir. 1987) (defendant not deprived of right to fair trial and impartial jury where sleeping juror missed "insubstantial" testimony). *But cf. United States v. Bradley,* 173 F.3d 225, 230 (3d. Cir. 1999) (observation of snoring juror by trial judge and law clerk justified preverdict dismissal from jury panel).

[14]    *United States v. Clapps,* 732 F.2d 1148, 1152 (3d. Cir. 1984) (defendants had to show "likelihood of prejudice" to secure new trial).

[15]    *United States v. Ortiz,* 1993 U.S. Dist. LEXIS 10856 (E.D. Pa.), *citing United States v. Hendrix,* 549 F.2d 1225, 1229 (9th Cir. 1977).

through the jury charge,[16] or even the "critical presentation of [defendant's] evidence and the cross-examination of witnesses for the prosecution."[17]

Although trial judges have considerable latitude in dealing with a sleeping juror, the Ninth Circuit, for example, has issued guidelines to its district courts. In *United States v. Barrett*,[18] the Court remanded an appeal "with instructions that the trial judge conduct a hearing to determine whether the juror in fact was sleeping during trial and, if so, whether the juror's being asleep prejudiced [defendant] Barrett to the extent that he did not receive a fair trial."[19] Furthermore, several state appellate courts – consistent with *Barrett* – have reversed a trial judge's decision not to inquire into the extent of a juror's inattention, both when the judge knew of the sleeping juror,[20] or when such circumstances were brought to the court's attention during the proceedings.[21] Other federal circuits, however, have

---

[16]    *Ortiz*, 1993 U.S. Dist. LEXIS 10856.

[17]    *Tierney*, 947 F.2d 854, 869.

[18]    703 F.2d 1076 (9th Cir. 1982).

[19]    *Id.* at 1083.

[20]    *People v. Evans*, 710 P.2d 1167 (Colo. Ct. App. 1985).

[21]    *State v. Reevey*, 387 A.2d 381 (N.J. Super. Ct. App. Div. 1978); *People v. Valerio*, 141 A.D. 2d 585 (N.Y. App. Div. 1988).

remarked that trial judges may take judicial notice that a juror had not been sleeping without the necessity of an independent hearing.[22]

Finally, the United States Supreme Court, in *dicta*, has commented on the undesirability of exposing jury verdicts to judicial scrutiny:

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior. It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror . . . inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process.[23]

The Court also expressed concern about the ramifications of public scrutiny of verdicts.[24]

Although the Sixth Amendment right to a fair trial by an impartial jury is a cornerstone of the American criminal justice system, record examinations of jurors intrude upon the anonymity function central to the common-law system of factfinding by a group of one's peers. While in some instances a juror's thought process must be opened up to judicial scrutiny, such as in the face of allegations of

---

[22]    *United States v. Curry*, 471 F.2d 419, 421-22 (5th Cir. 1973), *cert. denied*, 411 U.S. 967 (1973); *United States v. Carter*, 433 F.2d 874, 876 (10th Cir. 1970) ("We have no basis for setting aside the finding of the trial judge. In any event counsel made no point to the court of the juror's condition or attitude during the trial. If [defense counsel] saw any misconduct it was his duty to call it to the attention of the court at the time.").

[23]    *Tanner*, 483 U.S. at 120.

[24]    *Id.* at 120-21 *citing* Note, *Public Disclosures of Jury Deliberations*, 96 HARV. L. REV. 886, 888-892 (1983).

bias, corruption, or, as here, inattention, the constitutional considerations of a fair trial must be balanced with those that implicate the fairness of the trial process as a whole.[25] Jury service is a civic duty common to all citizens; those who undertake this task should not fear revelation of their decision methodology. Only where a defendant has specifically demonstrated a compromise in the integrity of the verdict should protracted scrutiny, and a new trial, ensue.[26]

Durham alleges that Juror Nine slept intermittently through the jury charge, the prosecutor's closing argument, opening statements, and direct examination of two witnesses. He fails, however, to point to specific testimony that Juror Nine may have missed. Instead, the testimony presented indicates only that the juror's eyes would close and then reopen, or that she was "fighting sleep." Absent a particularized showing of inattention, there can be no "reasonable probability of juror taint" that is "inherently prejudicial." Moreover, in the face of only a general allegation of juror misconduct, the sanctity of the jury's deliberation process, emphasized in *Tanner*, weighs against an extensive, postverdict judicial investigation of Juror Nine. Finally, even if Durham had presented specific evidence of inattention, it is not clear how missing the prosecutor's closing

---

[25]    *See Fisher v. State*, 690 A.2d 917 (Del. 1996) (holding juror's racial bias during deliberations required a new trial).

[26]    *Id.*

statement, a discourse designed to convince the jury to return a guilty verdict, could be prejudicial to an effective defense presentation.

The factors for consideration thus revolve around the extent of Juror Nine's inattention, whether the trial judge or the parties were aware of the sleeping juror during trial, and Durham's ability to produce evidence demonstrating that the juror's lapse was so severe that he was denied a fair trial. Additional considerations are the interests in the finality of judgments and insulation of the decisionmaking process from scrutiny by either the government or the public. We commend the trial judge, faced with postverdict allegations of juror inattentiveness, for properly examining Juror Number Nine, promptly making a comprehensive factual inquiry into Durham's claim, and analyzing Durham's claim in an orderly, logical deductive-reasoning process. In the absence of testimony that Juror Number Nine actually missed portions of the trial, Durham could not have suffered any prejudice. Based on this record, we find no abuse of discretion.

## III.

For these reasons, the judgment of the Superior Court is affirmed.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | IK02-09-0233-R1 to |
| | ) | IK02-09-0235-R1 |
| v. | ) | |
| | ) | IK02-09-0237-R1 to |
| MICHAEL DURHAM | ) | IK02-09-0239-R1 |
| | ) | |
| Defendant | ) | IK02-09-0243-R1 |
| | ) | |
| ID. No. 0208019524A | ) | IK02-09-0245-R1 |
| | ) | |
| | ) | IK02-11-0100-R1 to |
| | ) | IK02-11-0103-R1 |
| | ) | |
| | ) | IK02-11-0106-R1 to |
| | ) | IK02-11-0107-R1 |
| | ) | |
| | ) | IK02-11-0118-R1 |

James Kriner, Esq., Deputy Attorney General, Wilmington, Delaware for the State of Delaware.

Michael Durham, *Pro se.*

## COMMISSIONER'S REPORT AND RECOMMENDATIONS

### Upon Defendant's Motion For Postconviction Relief Pursuant to Superior Court Criminal Rule 61

FREUD, Commissioner
November 30, 2005

*State v. Durham*
ID 0208019524A
November 30, 2005

On December 4, 2003, the Defendant, Michael Durham, ("Durham"), was found guilty by a jury on four counts of Possession of a Firearm During the Commission of a Felony, 11 *Del. C.* § 1447A; one count of Burglary in the First Degree, 11 *Del. C.* § 826; and one count each of Attempted Robbery in the First Degree, 11 *Del. C.* § 531; Reckless Endangering in the First Degree, 11 *Del. C.* § 604; Conspiracy in the Second Degree, *Del. C.* § 512; Terroristic Threatening, 11 *Del. C.* § 621; Assault in the Third Degree, 11 *Del. C.* § 613; Endangering the Welfare of a Child, 11 *Del. C.* § 1102; Criminal Mischief, 11 *Del. C.* § 811; and Aggravated Menacing, 11 *Del. C.* § 602. Durham had also been facing another count of Assault Third Degree that was *nolle prossed* by the State.[1] One count of Possession of a Deadly Weapon by a Person Prohibited was severed. A presentence investigation report was ordered.

On December 9, 2003, the State filed a motion to have Durham declared a Habitual Offender due to his past felony convictions. On December 11, 2003, Defense counsel filed a Motion for a New Trial alleging that Juror Number Nine was inattentive, dozing or sleeping during the trial. An evidentiary hearing was scheduled on the Motion for New Trial. The hearing was held on January 9, 2004. Following

---

[1] Durham was originally tried on these charges April 7 - 10, 2003. The trial resulted in conviction on Offensive Touching and Criminal Trespass Second and not guilty on two counts of Endangering the Welfare of a Child. A Motion for Judgment of Acquittal was granted as to Kidnapping First Degree and Possession of a Firearm During the Commission of a Felony and denied as to eleven other counts. The jury could not agree on the remaining counts.

*State v. Durham*
ID 0208019524A
November 30, 2005

the hearing and briefing the Court denied the motion on March 8, 2004.[2]

On March 9, 2004, following a hearing, the Court granted the State's motion to declare Durham a Habitual Offender and proceeded to sentence Durham to life imprisonment pursuant to 11 *Del. C.* § 4214(b) on the Attempted Robbery in the First Degree. On the remaining counts, Durham was given a total of 103 years incarceration, suspended after 100 years all of which was in addition to the Life sentence on the Attempted Robbery charge. On April 28, 2004, Defense Counsel filed a Motion for Resentencing in order to reset the time available to file an appeal with the Delaware Supreme Court. The Court granted Durham's request and he was resentenced on May 25, 2004.[3] A Notice of Appeal was then filed on May 28, 2004. The Delaware Supreme Court affirmed Durham's conviction and sentence.[4]

Next, Durham filed the pending Motion for Postconviction Relief in which he alleges several grounds for relief including ineffective assistance of counsel.

## FACTS

The following is a summary of the facts as noted by the Supreme Court in its opinion:

> In August 2002, Durham and two others entered Michael Taylor's Dover home seeking money. The three physically accosted and chased Taylor throughout the house. One, carrying a handgun, fired at Taylor. Another punched him in the face. By the time police

---

[2] *State v. Durham*, 2004 Del. Super. LEXIS 58.

[3] The sentence was identical to the prior sentence.

[4] *Durham v. State*, 867 A.2d 176 (Del. 2005).

*State v. Durham*
ID 0208019524A
November 30, 2005

arrived, all three had fled. Suffering from various injuries, Taylor identified his assailants as Durham, Quentin Henry, and one he knew only as 'Peebo.' Durham was later tried before a jury in Superior Court and convicted of first-degree burglary, first-degree attempted robbery, and a variety of firearms and other charges.

Following the initial afternoon of jury deliberations, Durham orally moved for a mistrial, contending for the first time that Juror Number Nine slept during parts of the trial. The trial judge reserved decision on the motion, the trial continued, and the jury ultimately returned its verdict. Durham then moved for a new trial. The trial judge conducted an evidentiary hearing in January 2004, taking testimony from a corrections officer, bailiff, and two members of the gallery present at trial. Juror Nine also testified.

In his March 2004 order, the trial judge recounted the evidence. He noted that although the two observers stated that Juror Nine closed her eyes and put her head down at various times, neither thought she was actually asleep. The bailiff, present for the entire trial, testified that he 'never saw her sleeping.' Juror Nine also insisted she was attentive throughout the trial. Based on this evidence, the trial judge found that even if Juror Nine was 'fighting sleep,' this fact alone neither proved that she slept or was otherwise inattentive during the proceedings. He therefore found that Juror Nine's conduct did not prejudice Durham and denied the motion for a new trial.[5]

## DURHAM'S CONTENTIONS

Durham filed the instant Motion for Postconviction Relief pursuant to Superior Court Rule 61. In his motion, he raises several grounds for relief and

---

[5] *Id.* at 178 (internal citations omitted).

incorporates by reference his lengthy Memorandum of Law. I have summarized the grounds for relief for ease of addressing Durham's claims:

Ground One: Vindictive Prosecution.
- Violation of right to fair trial by alleging Accomplice Liability;
- Allowing a defense witness to be placed in the same holding cell during trial; and
- Presenting perjured testimony.

Ground Two: Judicial Misconduct.
- Improper jury instruction on Accomplice Liability;
- "Improper bolstering of state's witnesses through testimony at trial;"
- Denied New Trial due to juror inattentiveness; and
- Trial Judge failed to give a specific unanimity instruction.

Ground Three: Ineffective Trial Counsel.
- "Counselor may have found other possible witnesses..."
- Failed to conduct investigation with respect to blood, fingerprints and photographic lineup; and
- Failed to object to admission of handgun and shell casing.

Ground Four: Double Jeopardy.

## PROCEDURAL CONSIDERATIONS

Under Delaware Law the Court must first determine whether Durham has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of the postconviction relief claims.[6] Under Rule 61, postconviction claims for relief must be brought within three years of the conviction becoming

---

[6]     *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991); *Younger v. State*, 580 A.2d 552, 554 (Del. 1990) (*citing Harris v. Reed*, 489 U.S. 255 (1989)); *See Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

*State v. Durham*
ID 0208019524A
November 30, 2005

final.[7] Durham's motion was filed in a timely fashion, thus the bar of Rule 61(i)(1) does not apply to the motion. As this is Durham's initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

Grounds for relief not asserted in the proceedings leading to judgment of conviction are thereafter barred unless the movant demonstrates: (1) cause for relief from the procedural fault and (2) prejudice from a violation of the movant's rights.[8] The bars to relief are inapplicable to a jurisdictional challenge or to a colorable claim that there was a miscarriage of justice stemming from a constitutional violation that "undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[9]

Each of Durham's claims are to some extent premised on allegations of ineffective assistance of counsel. These types of claims are not normally subject to the procedural default rule, in part because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal. For this reason, many defendants, including Durham, allege ineffective assistance of counsel in order to overcome the procedural default.

However, this path creates confusion if the defendant does not understand that the test for ineffective assistance of counsel and the test for cause and prejudice are

---

[7]    Super. Ct. Crim. R. 61(i)(1).

[8]    Super. Ct. Crim. R. 61(i)(3).

[9]    Super. Ct. Crim. R. 61(i)(5).

*State v. Durham*
ID 0208019524A
November 30, 2005

distinct, albeit similar, standards.[10]  The United States Supreme Court has held that:

> [i]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State, which may not "[conduct] trials at which persons who face incarceration must defend themselves without adequate legal assistance"[;] [i]neffective assistance of counsel, then, is cause for a procedural default.[11]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark.  Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two part analysis enunciated in *Strickland v. Washington*[12] and adopted by the Delaware Supreme Court in *Albury v. State*.[13]

The *Strickland* test requires the movant show that counsel's errors were so grievous that his performance fell below an objective standard of reasonableness.[14]  Second, under *Strickland* the movant must show there is a reasonable degree of probability that but for counsel's unprofessional error the outcome of the proceedings

---

[10]     *State v. Gattis*, 1995 Del. Super. LEXIS 399, at *11.

[11]     *Murray v. Carrier*, 477 U.S. 478, 488 (1986) quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).

[12]     466 U.S. 668 (1984).

[13]     551 A.2d 53, 58 (Del. 1988).

[14]     *Strickland*, 466 U.S. at 687-88; *see Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

*State v. Durham*
ID 0208019524A
November 30, 2005

would have been different, that is, actual prejudice.[15]  In setting forth a claim of
ineffective assistance of counsel, a defendant must make and substantiate concrete
allegations of actual prejudice or risk summary dismissal.[16]

Generally, a claim for ineffective assistance of counsel fails unless both prongs
of the test have been established.[17]  However, the showing of prejudice is so central
to this claim that the *Strickland* court stated "[i]f it is easier to dispose of an
ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect
will often be so, that course should be followed."[18]  In other words, if the Court finds
that there is no possibility of prejudice even if a defendant's allegations regarding
counsel's representation were true, the Court may dispose of the claim on this basis
alone.[19]  Furthermore, the defendant must rebut a "strong presumption" that trial
counsel's representation fell within the "wide range of reasonable professional

---

[15] *Strickland,* 466 U.S. at 694; *see Dawson,* 673 A.2d at 1190; *accord Zebroski v. State,*
822 A.2d 1038, 1043 (Del. 2003); *Ayers v. State,* 802 A.2d 278, 281 (Del. 2002); *Steckel v. State,*
795 A.2d 651, 652 (Del. 2002); *Johnson v. State,* 813 A.2d 161, 167 (Del. 2001); *Bialach v.
State,* 773 A.2d 383, 387 (Del. 2001); *Outten v. State,* 720 A.2d 547, 552 (Del. 1998); *Skinner v.
State,* 607 A.2d 1170, 1172 (Del. 1992); *Flamer v. State,* 585 A.2d 736, 753-54 (Del. 1990).

[16] See also *Outten v. State,* 720 A.2d 547, 552 (Del. 1998); *Righter v. State,* 704 A.2d
262, 263 (Del.1997); *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997); *Skinner v. State,* 1994
Del. LEXIS 84; *Brawley v. State,* 1992 Del. LEXIS 417; *Younger v. State,* 580 A.2d 552, 556
(Del. 1990); *Robinson v. State,* 562 A.2d 1184, 1185 (Del. 1989); *Wells v. Petsock,* 941 F.2d 253,
259-60 (3d Cir. 1991).

[17]    466 U.S. at 687.

[18]    *Id.* at 697.

[19]    *State v. Gattis,* 1995 Del. Super. LEXIS 399, at *13.

8

*State v. Durham*
ID 0208019524A
November 30, 2005

assistance,"[20] and this Court must eliminate from its consideration the "distorting effects of hindsight when viewing that representation."[21]

In the case at bar, Durham attempts to show cause for his procedural default by making merely conclusory assertions of ineffectiveness of counsel. In regard to prejudice, Durham simply claims that the failure of counsel to raise certain issues was prejudicial. Under the circumstances of the case, Durham's allegations are meritless. The Supreme Court found no error in the trial. The record indicates that Durham's trial attorney did in fact adequately prepare for the trial and called all appropriate witnesses at trial.[22] Durham has utterly failed to demonstrate prejudice as a result of his counsel's alleged failure. This failure is fatal to Durham's motion. His motion is therefore procedurally barred.[23] Notwithstanding the procedural bar, I will now address the merits of each of Durham's grounds for relief.

<u>Ground One: Vindictive Prosecution</u>

Durham alleges that the prosecutor violated his right to a fair trial by advancing a theory of accomplice liability, allowing a defense witness to be placed in the same holding cell during the trial, and presenting perjured testimony. The record is clear

---

[20] *Strickland,* 466 U.S. at 689.

[21] *Id.;* see also *Dawson,* 673 A.2d at 1190; *Wright v. State,* 671 A.2d 1353, 1356 (Del. 1996).

[22] See Affidavit of Counsel for a complete overview of counsel's preparation for trial.

[23] *See Wright,* 671 A.2d at 1356; *Wright v. State,* 1992 Del LEXIS 62; *Brawley v. State,* 1992 Del. LEXIS 417.

*State v. Durham*
ID 0208019524A
November 30, 2005

that there was no vindictive prosecution. Vindictive prosecution arises in situations where a defendant on retrial, following a successful appeal, was subjected to a harsher sentence by the court, or is charged with more serious charges.[24]

Concerning Durham's allegation that his rights were violated when the prosecutor advanced a theory of accomplice liability the law clearly contradicts Durham's assertions. A person may be held liable for the conduct of another when he "[a]ids, counsels or agrees or attempts to aid the other person in planning or committing it."[25] The evidence in this case supported a theory of accomplice liability.[26] This assertion is simply without merit.

Durham also alleges that his rights were violated when the Department of Correction placed his codefendant, Quentin Henry, in the same holding cell during trial. He implies that the prosecutor had something to do with that placement. This allegation is not supported by any evidence in the record. Moreover, there is no logical reason a prosecutor would knowingly allow a defense witness to share a cell with a defendant during trial. That situation allows for collaboration and intimidation, which does not benefit the state. Therefore, this claim is without merit.

Durham's last allegation regarding the alleged prosecutorial misconduct is that his rights were violated by permitting Detective Humphrey to give perjured

---

[24] *State v. Wharton*, 1991 WL 138417, at *10 (Del. Super. June 3, 1991).

[25] 11 *Del. C.* § 271.

[26] Not only did the victim repeatedly name Durham and his codefendants as the perpetrators, the gun used in the offense was seized from the location where Durham was arrested.

*State v. Durham*
ID 0208019524A
November 30, 2005

testimony. It is not clear what testimony is allegedly perjured or how the prosecutor knowingly permitted perjured testimony. There is no evidence that the witness gave perjured testimony and there in no evidence the prosecutor permitted any witness to give perjured testimony. Therefore, this claim is without merit.

<u>Ground Two: Judicial Misconduct</u>

Durham argues that he is entitled to postconviction relief because the trial judge engaged in misconduct and committed error. He alleges that the trial judge violated his rights by instructing the jury on accomplice liability. As noted above, an accomplice liability instruction was justified based on the facts of the case. The record evidence supported the instruction. A trial court should instruct a jury on accomplice liability provided the instruction is supported by the evidence and correctly states the law.[27] The trial judge appropriately instructed the jury on accomplice liability. Therefore, this claim is without merit.

Durham alleges that the trial judge "allowed improper bolstering of state's witnesses through testimony at trial." It is unclear what specific "improper bolstering" took place and how it violated his constitutional rights. Durham has failed to set forth a cognizable legal claim.

Durham also argues that he is entitled to postconviction relief because the trial judge erroneously denied him a new trial due to juror inattentiveness. This claim is procedurally barred because it was previously raised in Durham's Motion for New Trial and on appeal. Any ground for relief that was formerly adjudicated in an appeal

---

[27] *Zimmerman v. State*, 565 A.2d 887, 890 (Del 1989).

11

*State v. Durham*
ID 0208019524A
November 30, 2005

or postconviction proceeding is thereafter barred.[28]  The trial judge reviewed this claim in a motion for new trial and denied it.[29]  Durham appealed the conviction to the Delaware Supreme Court.[30]  The Supreme Court affirmed the decision and commended the trial judge for his action.[31] Durham has simply restated arguments he previously raised on direct appeal. Rule 61(i)(4) bars any ground for relief that was formerly adjudicated unless reconsideration of the claim is warranted in the interest of justice.[32]  Durham raised these claims before and the Supreme Court found them meritless.  He has made no attempt to argue why reconsideration of this claim is warranted in the interest of justice.  The interest of justice exception of Rule 61(i)(4) has been narrowly defined to require that the movant show that the "subsequent legal developments have  revealed that the trial court lacked the authority to convict or punish" him.[33]  Durham has made no attempt to demonstrate why his claims should be revisited.  This Court is not required to consider Durham's claims simply because

---

[28]  Superior Court Crim. R. 61(i)(4).

[29]  *State v. Durham*, 2004 Del. Super. LEXIS 59 (Mar. 8, 2004)

[30]  *Durham v. State,*  867 A.2d 176 (Del. 2005).

[31]  *Id.* at 181.

[32]  Superior Court Crim. R. 61(I)(4).

[33]  *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996) (quoting *Flamer v. State*, 585 A.2d 736, 746 (Del. 1990)).

12

*State v. Durham*
ID 0208019524A
November 30, 2005

they are "refined or restated."[34]  For this reason, this ground for relief should be dismissed as previously adjudicated under Rule 61(i)(4).

Durham's last assertion concerning judicial misconduct is that the trial judge erred in failing to give a specific unanimity instruction in this case.  It is not clear why Durham believes he was entitled to such an instruction.  A specific unanimity instruction is not required in every case where a defendant may be convicted as a principal or accomplice.[35]  The instruction is only required if one count encompasses two separate incidents either of which could support a defendant's conviction for a particular charge.[36]  In Durham's case, the evidence showed that there was a single incident that formed the basis of the charges.[37]  Therefore, a specific unanimity instruction was not warranted.

<u>Third Ground:  Ineffective Trial Counsel</u>

Durham argues that he is entitled to postconviction relief because trial counsel was ineffective.  He alleges that trial counsel failed to adequately conduct a pretrial investigation and failed to object to the admission of the handgun into evidence.  As stated above, Durham has not satisfied either prong of *Strickland*.

Durham's alleges that "counselor may have found other possible witnesses

---

[34] *Riley v. State*, 585 A.2d 719, 721 (Del. 1990).

[35] *Ayers v. State*, 844 A.2d 304, 309 (Del. 2004); *Liu v. State*, 628 A.2d 1376, 1386 (Del. 1993); *Probst v. State,* 547 A.2d 114, 122 (Del. 1988).

[36] *Ayers,* 844 A.2d at 309.

[37] *Cf. Probst v. State*, 547 A.2d 114 (Del. 1988).

*State v. Durham*
ID 0208019524A
November 30, 2005

whom may perhaps give different accounts ..." Crucially, Durham does not state who
the witnesses were or how they would have changed the outcome in the case.
Conclusory allegations of unprofessional conduct are insufficient to support a motion
for postconviction relief.[38] Moreover, in her affidavit, trial counsel provided a list of
witnesses she spoke to and the results of the interviews.

Durham also asserts that trial counsel failed to conduct an investigation with
respect to blood, fingerprints and a photographic lineup. Durham, however, does not
indicate how this was deficient, or how a proper investigation would have resulted
in his acquittal. The Dover Police did not collect blood evidence from the victim's
house. The police did not recover any latent fingerprints. The police did not create
a photo lineup with Durham because the victim knew him and identified him by
name. Trial counsel responds that if defense counsel attempted to obtain fingerprints
"there is likelihood that they would have incriminated Mr. Durham or they would
have been irrelevant if they belonged to an accomplice." Durham presents no
evidence that fingerprint or blood evidence recovered from the crime scene would
have exculpated him since he committed the crime with two other men, one of whom
was unknown to the police.

Durham's last allegation of ineffective assistance of counsel is that trial counsel
failed to object to the admission of a handgun and a shell casing. The handgun was
recovered from the apartment where Durham was arrested shortly after the home
invasion. A ballistics expert matched the gun to evidence recovered from the scene

---

[38] *Younger v. State*, 580 A.2d 552, 555 (Del. 1990).

14

*State v. Durham*
ID 0208019524A
November 30, 2005

of the home invasion. There was no legitimate basis to object to the admission of the gun. There was also no legitimate basis to object to the admission of the shell casing recovered from the crime scene. Sgt. Littlefield located the shell casing on the floor of the residence when he arrived. He testified he picked it up and placed it on a table so that it would not be lost. Durham presents no evidence that the casing was tampered with or that its evidentiary value was compromised. Durham's failure to show prejudice is fatal to his claim.

Durham clearly fails to satisfy his burden under *Strickland*. His allegations of unprofessional conduct are not grounded in fact or law. It is evident that trial counsel conducted a thorough pretrial investigation. Even Durham is unable to suggest what counsel could have done differently in her representation of him. It is also clear that there was no legal basis to object to the admission of the handgun or shell casing. Durham fails to state what legal basis counsel should have been used to object to the evidence; this is because no basis existed. The gun and the casing were properly seized and highly probative of Durham's guilt.

<u>Fourth Ground: Double Jeopardy</u>

Durham claims he is entitled to postconviction relief because he was convicted in violation of the Double Jeopardy clause. This claim is meritless in addition to being procedurally barred. Durham was indicted on four separate counts of Possession of a Firearm During the Commission of a Felony related to Robbery First, Burglary First, Reckless Endangering First and Kidnapping First. During the first

*State v. Durham*
ID 0208019524A
November 30, 2005

trial,[39] the defense successfully argued a Motion for Judgment of Acquittal on Kidnapping First.  Accordingly, the Court dismissed the related Possession of a Firearm During the Commission of a Felony charge.  However, the Court did not disturb the three remaining Possession of a Firearm During the Commission of a Felony charges.  These charges were separate and distinct from the charge that was dismissed.  Durham's claim that he was convicted of a crime for which he was previously acquitted is factually inaccurate and as such this claim is clearly meritless.

## CONCLUSION

After reviewing the record in this case, it is clear that Durham has failed to avoid the procedural bars of Rule 61(i).  Consequently, I recommend that Durham's postconviction motion be ***denied*** as procedurally barred by Rule 61(i)(3) for failure to prove cause and prejudice and Rule 61(i)(4) as previously adjudicated.

Commissioner Andrea M. Freud

oc:    Prothonotary
cc:    Honorable Robert B. Young
         Sandra W. Dean, Esq.

---

[39]  April 2003.

16

*State v. Durham*
ID 0208019524A
November 30, 2005

File

In The Superior Court of the State of Delaware in and for Kent County

State of Delaware : Case # 0208019524

:

v. :

:

Michael Durham :


Appeal from Commissioners findings of fact and Recommendations.


Movant, moves to oppose Commissioners report, and in hopes to prevail on his Colorable claims, in the interest of justice.

The state contends that Movant is not eligible for relief, simply because he didn't meet requirements of "Cause and prejudice". And that all his claims are based around the same (ineffective assistance). Movant offers the following Correspondence, to provide this honorable Court with authentic authorities to sustain his assertions; and apply liberty to correct unfairness he was subjected to.

Vindictive prosecution

I

The state contends, movant was never subjected to a harsher sentence for vindictive purposes. Movant relied on (U.S. v. Johnson, 221 f.3d 83, 94 2d cir. 2004) stating, presupposition of vindictiveness will arise if circumstances create realistic likelihood of vindictiveness).

A) Accomplice liability

The commissioner believes, as with state, that Movants (accomplice liability) claim is meritless. However, the commissioner hadn't done a thorough review of Movant's claims, had she conducted one, she would've found that the state, failed to prove that there were any agreements, planning committed by any alleged suspects, and the record is clear on these issues, and further, they didn't satisfy any elements therein, (SEE: Price, 858 A.2d 930), the Price Court, cited "direction" as proper issue for establishing (accomplice liability) to the jury. Case at bar, holds no such commands, and record doesn't suggest any for state authorities to justify in support of. Thus depriving movant of fair trial. (§271) was not properly exhausted by state at their induction, without valid reasoning. (14) and (6) amendment violation effective assistance, due process.

The Evidence (I.E. the testimony regarding alleged-victim naming Movant, and the gun seizure), is clearly not Suffient. Dispite the fact that Movant was arrested a mile away, and the gun was seized, the state still haven't proved that the Movant was actually at scene of alleged-crime, ① Police testified another man had gun, (SEE: P.g. 64 line 12-15). ② Since state believed Movant possessed gun, Why didn't they (officers) have him tested for powder burns to draw Evidence? Isn't it possible Movant was in that area under other circumstances?

When evaluating "accessibility", Movant cites the Element of "during the commission" of a felony, (crime). The clear legislative policy supporting the Enactment of Section §1447), was to reduce the probability of serious harm to the victim. Unlike, the court in Mack, Del. Supr. 312 A.2d 319 (1973) the court held, with "possession" of narcotic drugs with intent to sell, the record supported the finding that the loaded rifle and the handgun were physically available or, accessible to defendant during the commission of "that" continuing felony, both the weapons were located (25ft) from the place where the narcotics were discovered. Here, not only was the seized weapon found at location other than alleged-crime scene, alleged-victim can't recall if Movant was perpetrator, by his admission of inquiry before he made hospital visit (SEE: 62 line 3-19) Suspicious testimony and than him (alleged-victim) not-really knowing Movant (SEE: P.g 39 line 5-9). thus, putting these issues in question §1447 doesn't apply.

(2)

SO, the record doesn't support a finding that Movant was in any possession, during the commission of alleged crime at the scene alleged, questionably. (Gardner v. State, 567 A.2d 404).

B)          Placed in same cell

The Movant cited several logical reasons why the State prosecution should not have allowed testimony on this issue in Movants trial while his rights were at risk.

One, is the fact that the state seems ignore the rules in view of prejudice. Movant relied on Rule (8.8)(c), in which protects defendants when jury may hear arguments that calculate and inflame their passion or prejudices. Movant attacks here, the integrity of the state by applying <u>Criminal Law Key700(1)</u> "A prosecutor represents all the people including the defendant, and must seek justice, not merely convictions. Commissioner Freud, along with state, could not possibly believe that this allowance would protect Movant, let alone the fact that, the state contends they had no logical reason to benefit. Its very obvious their benefit, and it lies in the "Miscarriage Standard" here. The interest of justice applies for very simple reasons.

(3)

One being Rule 1.1(b)(c), in which the prosecution has a duty to uphold professional conduct, and the movant's (14) amendment due process rights should've been protected. Their explaination of "not knowing is unacceptable to these (rules). As movant inquired about in his opposition motion, and again here; The State is the holders of all parties Whereabouts prior to trial. This contention is very inadequate in the eyes of the public, and their action misled the jury, and had they practiced their integrity according to law, movant's trial would not have been unfair and outcome would've been different (6) and (14) amendment U.S. Constitutional provisions.

C)        Perjured testimony

Additionally, Commissioner Freud, clearly overlooked the testimony on (pg. 62 line 3-6) the alleged-victim (taylor) testified, he had not inquired or, could not "recall" about identification of an assailant (movant) prior to hospital visit. Det. humphrey stated "he became aware of an assailant (movant) when he reached scene of alleged crime. The question is, how, could these stories be possible, if (taylor) hadn't informed anyone prior to his hospital visit? Its most certain that (taylor) seems to recall everything surrounding the main issue here, insisting he doesn't recall the most important part.

The detectives motives are suggestive and should've came into question to the commission since the state cannot justify these questions, and they consistantly use detoured tactics (I.E. apply procedure bars) instead of honoring movant's claims in the interest of justice. Moreover, the det. stated at trial "he didn't remember informing alleged-victim (taylor)" before, after or, ever". (pg. 42 line 10-18), it seems that when the question of "did anyone inform anybody of who assailant was, or did you inform officers"? I cannot can recall, however, everything circumventing can be acknowledged. These lies misled jury, and ultimately led to movant's conviction. The det's professionalizm should've come into some degree of questioning by Commissioners in her reviewal. The state manipulated the judicial process, by the admission, the trial counselor was defient for not objecting or, vigorously attacking circumstances.

These issues should've clearly gave commission freud evidence, that movant was in fact deprived of his U.S. Constitutional rights to due process (14) amendment, and fair trial. Furthermore, the state committed "plain error" when they claimed they had no knowledge of perjury testimony and permitted it. By this admission, they are simply saying they were unaware of (Statutory disclosure duties), constitutional information that includes prosecution witnesses statements, criminal records, etc. the movant addressed these issues to commissioner in his (opposition motion) (Rules 16, 26.2 and 12.1), gives defendants their required rights, and

(5)

automatically provides prosecution of all testimony by "their" witnesses prior to the trial, so this is an intentional act by prosecution, whom was well aware of this and demonstrates their (bad faith) "plain error" Rule 52(b) in which tainted the jury and caused serious damage. Movant cited (U.S. v. Matta, 937 f. 2d 567 (C.A.11 (fla) 1991, Where state attorneys knowledge of the procedural rules, should be carried out in good-faith and diligent, in which this testimony caused Movant's imprisonment prohibited by federal Constitution (Mooney v. Holohan, 294 U.S. 103, 55 S. Ct. 340, 79 L Ed. 791, and when the state authorities, although not soliciting false evidence, allows it to go uncorrected when it appears (Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173. 3 L. Ed. 2d 1217). The Commissioner should not have let the interest of justice be out of reach, the record here

clearly show the state's intentions, and injury done to movant.

II          Judicial Misconduct

The interest of justice connected to the issues below entitles movant to relief sought, due to factual grounds presented.

A)          Accomplice liability instruction

The proper instruction to the jury here should have been based on assessment to the actions on Movant's behalf, and requires an increased

(6)

instruction so the jury has the ability to properly and intelligently perform it's duty, and insure the jury understands to unanimously agree to particular set of facts, and (Del. Cann. Const. Art I §4 Superior Court Criminal Rule 31(a) and Del. C. Ann U. S.C.A. Const. Amend Criminal Law Key 798(.5) provides the avenue to support the inquiries; Here, there's no evidence in the record to suggest any augmentation of the instructions (SEE: jury instructions in trial counsels affidavit) as was demonstrated to commissioner.

The record evidence that the commissioner inquires about, isn't an instruction preparing jury for an individualized determination, as explained in (Movant's opposition). The factors of (accomplice liability) 2.06 and 2.06(4) 11 Del. C §274 Section incorporates §271 by reference the provision in §274 states, when pursuant to §271 of Criminal Code(2) or more persons are criminally liable for an offense which is divided by degrees, each individual is guilty of an offense compatible with that persons "Own" Culpable mental state 11 Del. C §274. The consideration of this determination is required for the jury to analyze during deliberatings, ① The movant exercised his 5th amendment right not to incriminate himself. ② No evidence on record the state could rely on that could support a Command, direction or, planning by movant ③ def. witness testified Movant wasn't participant in alleged-act, with him.

(7)

Movant applied (Culpability test)
Commentary in Del. Criminal Code 52-53 (1973) to demonstrate the duties here, and movant stressed, he should be exonorated of all charges.

B)        The allowance of improper testimony (Bolstering) (I.E. Vouching for Credibility of alleged victim)

The unsure testimony of det. humphrey of (taylor) was clearly the testimony that was bolstered here; As movant made plain in his (opposition motion); det. humphrey stated "he learned of the assailant (movant) when he arrived at scene of alleged crime. Alleged victim (taylor) stated he didn't recall ever telling officers at scene about "Who" was assailant (I.E. movant), than it rolls back to det. humphrey suddenly couldn't recall informing (taylor) before or, ever, completely surfacing suspicion. The trial counselor wasn't performing her (6) amendment duty to represent effectively at this, and other portions of movants trial;

Additionally, testimony from alleged victims girlfriend (Taja jones) also, tainted movants proceedings. her entire testimony was completely irrelevant and had no basis whatsoever in connection to the circumstances of identification, or, factors of being eyewitness to the alleged crime. Her testimony was limited to coming from buying food, to (taylors) place of employment.

This admission was only a tactic to bolster (taylor's) credibility, and guide det. humphrey's testimony in direction of unlawful interference of jury's independant judgement in a manner contrary to the interest of the accused (Martin linen Supply Co. 430 U.S. 564, 573. 97 S. Ct. 1349 51 L. Ed 2d 642 (1977).

The integrity of the judicial process would've been ensuring that criminal conviction rests on appropriate considerations validly before jury and dettering future illegal conduct; and movants rights would've been preserved. (Mathews v. U.S. 485 U.S. 58. 63 108 S. Ct. 883, 99 L. Ed. 2d 54 (1988). These assertions were pointed out and demonstrated to state authorities as well as commissioner freund, it's very unclear why she believes these claims are meritless.

Detective humphrey sat through entire proceedings before his testimony, giving him unfair advantage to put together parts of testimony to coincide with the other witnesses, calling into question the integrity of the trial process, (Greer, 483 U.S. at 769, 107 S. Ct. 3102).

C)          Juror inattentiveness

An eye witness testified "that during the reading of the jury instructions, it was obvious she

(the juror) was struggling to stay awake (EV.tr.p.g.7 line 8-10), (p.g. 5 line 6-11). Moreover, the juror herself admitted she was inattentive, "Do you recall dozing at all during the trial?, the juror stated "that could have happened, but the juror next to me would have nudged me." Thus, demonstrating her limited ability to properly process information. The Movant believes the hearing judge committed serious errors here, and in hope, wants to pursuade this court to these errors. The law of the case "doctrine", is no absolute bar to reconsideration of a prior decision that is **clearly wrong**, produces an injustice or should be revisited because of changed circumstances. (106 Key 99(1)) (Kenton v. Kenton, 571 A.2d 778, 784 (Del. 1990).

As Explained previously to commissioner is that the testimony and actions by hearing judge during the evidentiary proceedings, the court committed misconduct and/or abused discretion, by recommencing another avenue to prejudice Movants substantial rights. The court, after the initial session was adjorned, admitted another witness to provide testimony on the record, opposing previous testimonials, that was in movants best interest.

Since the juror's attention was limited and obviously questionable, Why didn't court judge have the "juror" whom allegedly done the nudging testify?

(10)

The Delaware Supreme Court found that prior rulings regarding proper calculation of Hamilton's claim (Hamilton v. State, 831 A.2d 881), thus, clearly in error, and concluded, hamilton has demonstrated Why reconsideration of the claims is warranted, under the "Clearly erroneous" exception to the doctrine of law of the case, the Superior Court properly considered and granted Hamilton's, previously rejected claims.

      It's very obvious here, the court judges conduct comes into serious question, and he wrongfully overlooked the testimony of the witnesses, and never considered the testimony of the "juror" who actually sat next to (juror #9) to provide the court with positive outlook of the circumstances, since that juror was an eyewitness to the juror's actions. The Movant's claims are supported by competent evidence, and plain error does exist, The Movants liberty was deprived. Movant request to be released immediately of being accused of these alleged-crimes, as well as unfair actions by hearing judge and state authorities, in which compelled an innocent Man to suffer an unconstitutional loss of liberty. (Stone v. Powell, 428 U.S. at 492-493, 31, 96 S.Ct 3051. 31), (Schlup v. Delo, 115 S.Ct. 851, 513 U.S. 298 (U.S. MO 1995).

D)                    Unanimous Instruction

The identical response the commissioner produces here (with the state) doesn't tend to Mediate as to the facts that were produced by Movant. Rather, her views are consistant and mirror the state's contention, leaving Movant to resubmit exact same correspondence, but, advanced for this honorable court. The commissioner offers no justification to the Movant's claims just basically a (Carbon Copy) of state's Contentions, just adding fuel to whatever responses the state May have submitted.

The two Separate incidents Make clear to the state, as well as commissioner the purpose of a (Unanimous instruction). The courts cited on (p.g. 12 of opposition) demonstrates and comprehensively Surround the alleged incidents that took place at different locals, ① Heritage Dr ② Liberty court. The two parties (state and commissioner) believes in only one Single incident that formed the basis of the Charges, and also contends the evidence only show a Single incident. The record here, clearly demonstrate and proves both parties are incorrect (SEE: Police Report).

The exclusiveness of the instructions focus on it's task of determining the defendant's guilt or innocence.

(Cabrera v. State, 747A. 2d 543, 545 (Del. 2000).

Criminal Law Key 1038.1(2)

Whether the instructions were informative by standards and had not misled the jury, and whether they jeopardize the fairness and integrity of the trial press (Criminal Law Key 1030(1).

Thus, had commissioner simply taken previous assertions by Movant into consideration, she would've found these "errors", and concluded them to be meritorious, but instead the confidence of the public's interest was betrayed and U.S. Constitution (14) and (6) amendments violated, prejudicing Movant to fair proceedings.

III        Ineffectiveness

A)        Coinciding with the (state) commissioner freud insist Movant is out of touch with the standard required to satisfy adequate performance by trial counsel, Movant relys here on the record evidence supporting his assertions. As stated and supplied to both parties, Counselor (Dean) at critical stage, failed to subpoena witness, Movant used authority in (Wade v. Armontrout, 798 f.2d 304 (8th cir. 1986). Where counsel was granted opportunity to interview each witness before trial, and interrogate arresting officer, here, counsel didn't question one witness defensively, nor for prosecution. The record suggest, a witness whom came outside during the time the alleged-victim claims the suspects were outside the residence (pg. 49 line 6).

(13)

Thus, had counsel subpoened that witness, the outcome of the investigation would be definitely excluded movant as suspect, instead, movant suffered prejudice. (Cross v. U.S. 392 f. 2d 360 (8th Cir. 1968).

According to commissioner, movant failed to satisfy prongs of Strickland, Contrarily, movant's assertions state, as the record provides, counsel never even produced proper tactical strategy or, offered an alibi for movant at trial; showing plain inadequate performance and constitutional violations, prejudicing movant's rights to present jury with some area of his innocence, when they finally make their conclusions, for proper defense, well below the standard of reasonableness consistant with Strickland and not satisfying the (adversarial testing) process. (14) amendment and (6) U.S. Constitution resulted because of these inadequacies. (see; tr. trans).

Commissioner, in her review should have concluded that these claims were clear, and not at all complex, but movant suffered without a thorough view of the facts. The (6) amendment enables defendant's the protection a trial counsel should uphold consistantly, and if their performance is deficient the proper result should be a reversal of conviction and sentence. (Criminal Law Key 1166.11 (5), (6) U.S.C.A. Const. Amend (6). This is an avenue the commissioner should be considered when movant provided her with the following demonstrations above and below.

(14)

The state along with counsel (Dean) contended that there wasn't a photo line-up because the alleged-victim knew Movant and identified him by name. This constant issue keeps surfacing again and again. By the alleged-victims own testimony, he stated, "he maybe seen movant in the neighborhood," and also never noticed very clear scar on Movants upper lip along with, large tatoo logo on movants neck (p.g. 39 lines 5-8)(p.g. 68 line 21-23). With this very unsure "I.D." the movant could be prospered at a photo line-up, if alleged-victim carefully searched the panel, he may have concluded movant was in fact not participant, since he couldn't make "I.D" positively.

Furthermore, had trial counselor conducted interview of the witness (taylor) priorly, the outcome in all likelihood would've been different, because, she would've known of his non-knowledge of the noticeables, and know how to prepare proper defense for movant; Instead, counselor, was satisfied and made no attempt whatsoever, to have Movant in a line-up. These actions hardly qualifies as adequate performance reletive to U.S. Constitutional provision of (6) sixth amendment or A.B.A. Standards.

It is also evident that the commissioner chose not to add to her report, the finger-print and blood evidence issue, argued by the State, in Counselors affidivat. Trial counsel somehow was under the assumption that "not" producing these very important points, would

(15)

benefit the movant; However, the movant Would've gained everything from these tests. As explained to the commissioner and other party, ① def. witness testified movant was not participant in alleged-crime, and was acquitted in first trial connected to this same prosecution. ② Movant maintained his innocence throughout proceedings. How could not conducting these tests help movant? As the counselor suggested; And why would she state "that any recovered blood evidence or fingerprints would not exculpate movant? Father stating "since he (the movant) committed the crime"?

Why didn't trial counsel believe movant and fight vigorously to have him exonorated? Clearly the Commissioner saw the injustice here and chose not to acknowledge it to this court. (p.g. 16 movants opp. to comm.) (p.g. 7 Deans aff.). Counselor's functions as a professional fell below the standard of reasonableness demonstrated in Strickland by not exploring this very critical avenue for movant's liberty, the exposure here is obvious. (Stevens v. D.C.C., 152 f. Supp. 2d 561 (D. Del 2001).

"The duty to investigate, according to the (A.B.A. Standards 4-4.1) require a trial lawyer to conduct a prompt investigation of the circumstances of the case and to explore "all" avenues leading to facts relevant to the merits of the case.

As stated to commissioner previously, counselor Contends she, as did commissioner, that movant didn't satisfy either prong of (cause and prejudice). Its very clear here counsel had not investigated any def. Witnesses prior to trial. Not even the single witness (Henry), about what he was prepared to testify to. Neither party can produce such an interview. Counselor plainly failed to protect movants fundamental rights to a fair trial and bring such skill and knowledge as her duty, to render a reliable (adversaril testing) process, for purposes of strategic challenges into various avenues of investigation. (Strickland, 466 U.S. at 691, 104 S.Ct at 2066.67) Criminal Law Key 641.13 (1) U.S.C.A. amendment 6.

B)       Failure to object to evidence (gun, casings)
According to trial counsel, the issues below were not relevant for an objection.

The counselor used unreasonable performance when she failed to make objections to the gun and shell casings. For starters alleged victim testified someone else possessed gun. (p.g. 40 line 22 p.g. 41 line 1-4). Moreover, movant was dismissed from having to answer for any charge of possession of deadly weapons. (See: Docket, charge was severed). How could not objecting have no basis in this case? Trial counsel failed to abide by clients objections and concerns for tactical decisions A.B.A. Standards, Rule 1.2 (A).

The jury was influenced by the admissions after the burden was lifted of any possession of (§1448) I Del. The state relied upon the same possession connected to (§1447(A) Del. C.). The Delaware Supreme Court, Concluded in Barnett, Del. Supr. 691 A.2d 614 (1997), that there was in sufficient evidence to support his weapons convictions, as a matter of law, to establish that the firearm was possessed by "Barnett" during the commission of felony. Here, the element of "possession" was legally severed, so the state can't establish "possession" again for same weapon. (See: Sexton v. State, Del. Supr. 397 A.2d 540 (1979).

Thus, movant's liberty was deprived and his defense prejudiced, the possession should have never been issue since movant was cleared of it previously, however, jury was misled and movant suffered injurious trial, and (6)(14) amendments constitutional rights violated. Trial Counsel in her (affidavit), stated that there was no evidence linking the gun to movant (C-76). With knowing this, why would she not object to the issue at commencement. Movant was placed in danger of the jury automatically believing the gun was most likely in movant's possession, giving great weight to the assumption he was the guilty party. In view of counsel's non objection, from commencement, her performance amounted to inadequacy and is not consistent to the (6) amendments protection due, to movant's interest, and greatly decreased his chances of liberty in the interest of the public.

(18)

Trial counselor's inadequate performance continued. She never challenged the custody, or, preservation of the shell casing. Sgt. Littlefield (shifted evidence) at alleged crime scene, by placing shell casing from floor to counter (as he testified to) (p.g. 34 line 2-7). However, the Sergent wasn't lead investigator and therefore, the custody was warranted to show evidence was in substantially the same condition or, was actually from floor, to protect the interest of the accused (U.S. v. Wood, 695 f. 2d 459, 462) 10th Cir. 1982). There was definitely legal basis and the movant was further deprived of his rights and effective legal counsel.

Counsel should've made an effort to pursue the circumstances surrounding the preservation (U.S. Gay, 774 f.-2d 368) or, the integrity of the custody, (U.S. v. Zink, 612 f. 2d 511, 514 10th Cir. 1980).

These existing errors of constitutional

magnitude support movants assertions throughout his

efforts to obtain relief, and believed commissioner (fraud)

would've noticed the same. The record is very clear on

these matters, however, the commissioner decided otherwise,

and movants liberty remained stripped and deprived (6)(14) amendments to U.S. Constitution, A.B.A Standards.

IV                    Double Jeopardy

The provisions of the (5th) amendment to double jeopardy should've acted as barrier on Movant weapons charges connected to the same alleged incidents in initial trial and subsequent trial.

(SEE: Docket)

The prosecution tried Movant on the same possession he was previously acquitted and the other (PDWBPP) was secured, all connected to (one) single weapon, however, Movant was upgraded with four (4) more counts of (PFDCF). Had trial counsel challenged this, the jury would've been able to conclude another avenue, besides dominion of a subsequent prosecution for same offense (5) amendment U.S. Const. Del. Const. Trial counsel did nothing to assist Movant in removing this unfair proceeding, and the Movant was prejudiced because she had previous knowledge, and allowing prosecution continue. (14) amendment, Due process.

Additionally, Movant was sentenced to (4) four counts of (PFDCF), in addition to Robbery first degree, Aggravated menacing along with various other offenses connected to alleged incidents. (Separately). A Supreme Court decision required convictions for attempted first degree Robbery, aggravated menacing merges, and granted relief. (State v. Harris, 2004 WL 2827928 (Del. super).

Here, the trial courts sentences were cumulatively imposed on him, and the record suggest the same (SEE: EX: Sentencing order), as a matter of law, the court in (Poteat, 840A.2d599) argued and concluded that, question whether offenses arising out of the same occurrence, are subject to merger is one of statutory construction and is therefore, subject to de novo review. IIDel-C $206, it states an example of lesser-included offenses.

The "attempted menacing" and "attempted Robbery" would be included under crime of "Robbery" as would "menacing" itself. The intent of the legislature, as explained and demonstrated to the commissioner, is that when the (general assembly) before a statute was enacted, did not intend that statutes of same conduct be punished separately, Movant than relied on official commentary on the Del. Criminal code of 1973 §206) and authority in (Stigars, 674A.2d 477), Movant's separate sentences for these alleged-crimes required a merger and clearly were in violation of the protection against the double jeopardy clause of the (5th) amendment provided by Del. Const. and U.S. Const. (14) amendment.

SO, the sentencing and convictions for (all) (PFDCF), attempted Robbery first degree, aggravated menacing.

Should be vacated as a matter of law.

Moreover, Movant also argues, although different in circumstance, that the issue (double jeopardy) still exist when reviewing elements. As inquired to from movant, to Commissioner, the (accomplice instruction) focused on the facts regarding the same elements included in movants (conspiracy 2nd) charge. It secured in jury's minds as to an agreement and/or planning of movant "again", although the jury already had received the charges without including the (conspiracy 2nd) in it's instructions. This diversion was to automatically find movant guilty of being accomplice either way, prejudicing movant without any evidence on record to demonstrate any "commands" or, substantial "planning" or "direction" of alleged-accomplice or principle.

Trial court was abusive and should've "cured" to save unfair prosecution (14) amendment violation, due process. In (Barther, Del Supreme, 8-2305 (slip op), it was concluded that trial court erred by denying his motion in limine, that sought to limit the state from offering evidence that Barther "planned" a crime with another suspect. Thus, attempting to preclude the state from arguing a theory of (accomplice liability) to the jury, the trial judge used central element of (conspiracy) statute an "agreement" completely in violation of the protection of (double jeopardy). In the instant case, the (accomplice liability) operating as second prosecution and functional equivalent, when actually one alleged conspiracy was suppose exist,
Contaminating the public interest.
(U.S. v. Daniels, 857 f. 2d 1392, 1394 (10th Cir. 1988).

:Discussion:

Your honor, Movant, on a personal note; Wants to emphasize that, his claims above are Consistant to the requirements of the (14th) amendment protections, in which forbids discrimination or, unequal treatment that is unjustified.

Movant presented clear evidence here to prove state authorities, overrode legal procedures to gain conviction against him. Trial counsel had overwhelming inadequacies and failed functioning, to protect Movant from most certain danger of his defense. Movant pleads here that this honorable court has a clear conscience in deciding his fate. Anything other than to vacate, would just continue the prejudice that the Movant has already been suffering.

"          "          "          "          "

In concluding, Movant seeks positive

decision for the constitutional violation sufferings,

and stresses, that the errors caused him to

endure anxiety and prejudice, however, these

claims are not irreparable.

Respectfully

Signed: Michael Durham

———————— Date.

Michael Durham
D.C.C. SBI 161286
1181 Paddock Rd.
Smyrna, DE. 19977
M.H.U. 23 BL12

Commissioner Andrea Maybee freud
Kent County Courthouse
Superior Court Judges Chambers
38 The Green
Dover DE 19901


                    RE: State of Delaware v. Michael Durham
                    Case #0208019524


    Dear Commissioner freud, the following Correspondence
is in opposition to the State's Memorandum in Connection
with the Movant's Motion for Post-Conviction relief pursuant to
Rule 61.



Date: _____ .                    Michael Durham
                                       D.C.C. SBI #161286
                                       1181 Paddock Rd.
                                       Smyrna. DE 19977
                                       M.H.U. 23 BL12

10

In The Superior Court of the State of Delaware in and for Kent County

State of Delaware                :    Case # 0208019524
                                 :
                                 :
            v.                   :
                                 :
Michael Durham                   :
                                 :

Movant's reply pursuant to Rule 61 (f)(3).

Movant was subjected to unfair assistance by trial counsel, unlawful and/or illegal conduct by trial court and vindictive and/or prosecutorial misconduct. Thus, deprived of constitutional rights the U.S. Constitution guarantees. Movant attempts to move this court in the interest of justice.

Vindictive Prosecution
and/or Prosecutorial Misconduct    I

Although the state contends that movant
hasn't satisfied the issues below, (accomplice liability,
placed in same cell, and Perjured testimony), due to the fact
that it happens in situations, where, a defendant on
retrial, following a successful appeal, creating a harsher
sentence or charged with more serious charges subjected
him to prejudice didn't apply.

Movant counters here asserting, the
second trial presumed vindictiveness when they argued,
(A) (accomplice liability). (See: U.S. v. Johnson, 221 f.3d 83, 94 2d cir 200
(Presumption of vindictiveness will arise if circumstances create
realistic likelihood of vindictiveness).

The state violated movants rights with
their induction of a theory of accomplice liability, thus,
citing that trial counsel and trial judge agreed.
Del. Code Ann. 11 §271, Clearly gives an element of an agreement,
between principle and an alleged-accomplice. The record is
clear of and doesn't suggest any agreements between
alleged suspects, or, any planning committing it. (See: Bautherv.
State, Del. Supreme (slip OP). The states evidence hasn't established
Movant was participant, much less engaged in alleged acts.

(1)

Prosecution witness (alleged-victim taylor) admitted he "didn't really know of movant and stated that "maybe he seen him in neighborhood" and that was it.(Pg.39 lines-5) The identification of movant was suspicious, due to the fact that since alleged-victim made statements of movant at trial, he never mentioned the very noticeable scar on movant's (upper lip) and giant(tatoo)on his neck, before trial or, even hasn't ever seen the noticeable "logo", or scar.(SEE:Pg.68 line 21-23). And the testimony doesn't support their contentions, and statutory elements are not consistant; Thus, this is what the jury had to make their determinations under, clearly, producing "plain error", and trial Court failed to give instruction on "Matter of law";

(SEE: Price, 858 A2d 930)

depriving movant of fair trial and was given

stiffer sentence. Movant's counselor was deficient

for failing to object to these issues, during trial

and on direct review prejudicing Movant(14)and(6)

amendment right to due process and effective representation

(2)

(B)

## Placed in same cell

Dispite the states contention that they wouldn't benefit from this situation of collaborations and intimidation, the question still remains, why would they allow testimony on this issue to the movant's jury When the movant's right are at risk? Rule(5.8)(c) protects defendants when the jury may hear arguments that calculate and inflame their passion or prejudices, amounting to "plain Error." Criminal Law Key 700(1) states "a prosecutor represents all the people including the defendant, and must seek justice, not merely convictions."

Therefore, the state doesn't meet a logical explaination for allowing this testimony to prosper at trial. by this allowance the prosecutor let jury believe movant was involved in some type of scheme to plan testimony, misleading the jury. The trial counselor was ineffective for not objecting, and trial court was also using abusive discretion for standing neutral on testimony. At the least, the prosecutor should have arranged a separation, and their contention of "not knowing", is unacceptable in the interest of the public, the state are the holders of all parties whereabouts, prior to proceedings and has duty to uphold professional conduct Rule 6.1(b)(c). These events deprived movant of his due process rights and deficient performance by trial counsel as well as court misconduct. (6)(14) amendment Constitution provisions.

(3)

©        Perjured testimony

Testimony at trial amounted to perjured testimony by prosecution witnesses. (p.g. 62 line 3-6) makes clear on what testimony is perjured by witnesses. "When alleged-victim (taylor) testified that he had not inquired or could not "recall" about I.D. of who assailant was prior to hospital visit. Det. humphrey testified "he became aware of who assailant was when he reached the scene of the alleged-crime, before visiting hospital to interview (taylor)". Contrarily, could not have possibly known whom alleged-assailant was prior to any hospital visit.

Moreover, Det. humphrey was exposed at trial when he tried to cure the situation, by stating that he didn't remember informing alleged-victim of who assailant was before, after or, ever informing him", this is a question of most significance value, as a professional Det. humphrey is required to take notes of the interview and make specific report. (see trial t. 42 line 10-18), he surely drafted a police report, when he was not the arresting officer (see: police report), making the detective's conduct and testimony was "suggestive" and unnecessary, and movant's due process rights were violated, because these trumped-up lies misled jury, in violation of (14) amendment. equal protection and due process.

(4)

Next, the state contends that they didn't have knowledge of perjured testimony, and permitted it. By the state admitting their lack of knowledge in the instant case, is to say they were unaware of (Statutory disclosure duties), the constitutional information which includes prosecution witnesses statements, criminal record, etc. (Rules 16, 26.2, and 12.1) not only gives defendants their required rights, but automatically gives the prosecution all testimony by their witnesses prior to the trial, SO, this intentional admission of perjured testimony by prosecutor was well aware of and clearly demonstrates (bad-faith) and plain error. Rule 52(b), this error seriously tainted jury and caused tremendous damage to movant's defense.

(SEE: U.S. v. Matta, 937 f. 2d 567 (C.A.11(fla)1991.
Where it expresses, "states attorneys knowledge of the procedural rules should be carried out in good faith and diligent, and this testimony used by state, caused movant imprisonment prohibited by federal Constitution. (SEE: Mooney v. Holohan, 294 U.S. 103, 55 S. Ct. 340, 79 L. Ed. 791, and if proven would entitle movant to be released from his present custody. Thus, the state is to uphold judicial integrity and confidence of public interest, and when the state, although not soliciting false evidence, allows it to go uncorrected when it appears. (SEE: Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173. 3 L. Ed. 2d 1217. The record here, clearly show the state's intentions, and injury done to movant.

(5)

Furthermore, an individualized determination is required for the jury to consider during deliberation (1) The movant exercised his (5) amendment right not to incriminate himself, (2) There was evidence on record the can rely on that there were any commands, direction, or, planning by movant, (3) there was testimony that movant did not participate in alleged acts.

The proper test for personal mental state (culpability) commentary in Delaware Criminal Code 5253 (1973). Movant asks that conviction and sentences be vacated, these intentional errors stem from overiding of administrative misconduct, and the U.S. Constitional protects citizens from unfair treatment of administrative judicial behavior. (SEE: Fay v. Noia, 373 U.S. 391 (1963).

The confidence of the public is out of sight with these manipulative schemes. Thus, because of testimony of movant not being part of alleged-crime, Movant not only should be exonorated of first degree Burglary and Reckless Endangering, but all charges he was convicted and sentenced on.

(7)



# Improper Bolstering

The confidence of the publics interest was violated when the trial court allowed certain testimony to be heard by jury during movant's trial.(I.E. vouching for credibility of alleged-victim. Det. humphrey testified he learned of assailant when he arrived at SCENE of alleged-crime Alleged-victim (taylor) stated he didn't recall ever telling officers at SCENE about who was assailant. the record suggest these contary statements(P.g. 41-10) (P.g. 62 line 3-6) making the Detective's implication suspect. More, Det. humphrey gave questionable inquiry to court, (SEE: 42 line 10-18), designed to improperly bolster the alleged-victims credibility.

Additionally, testimony was heard by alleged-victims girlfriend (Taja jones) she testified to facts irrelevant from coming from buying food, to his place of employment, all of which had nothing to do with movant's identification, or, did she witness anything or, anybody at alleged-crime scene? this added testimony further bolstered states witness credibility along with the detective's. This admission interferred with the jury's independent judgement in a manner contary to the interest of the accused (SEE: Martin linen Supply Co. 430 U.S. 564, 573. 97 S. Ct. 1349 51 L. Ed 2d 642 (1977.)

(8)

Had trial judge not allowed such testimony from commencement, outcome of trial would have been different. Trial courts judicial integrity would've been ensuring that criminal conviction rests on appropriate considerations validly before jury, and dettering future illegal conduct, and movants rights would've been preserved. (SEE: Mathews v. U.S., 485 U.S. 58. 63 108 S.Ct. 883, 99 L.Ed.2d 54 (1988).

Det. humphrey sat through entire trial before testifying, giving him a chance to put together testimony and diminishing any fairness movant would've had in the jury conclusions, in violation of U.S. Constitution (14) equal protections;

Calling into question "the integrity of the trial process, (SEE: Greer, 483 U.S. at 769, 107 S.Ct 3102).

(9)

# Inattentive Juror

(C)

The interest of justice connected to Rule 61(i)(4) lies in various testimony and actions by hearing judge during an evidentiary proceeding of Movant. The movant was sentenced to a "life term" in prison, and obvious evidence here supports his assertions about the ability of the juror to perform her duties. The hearing court committed misconduct by, after all the testimony was heard, recommenced another avenue to prejudice Movant's substantial rights. The judge admitted another witness to provide testimony on the record, to assist the states case.

The initial testimony from Eyewitness is that "during the reading of the jury instructions, it was obvious that she was struggling to stay awake. (SEE: Ev. tr. Pg. 7 line 8-10). And even by her own testimony, she states, after being questioned by the court "Do you recall dozing at all during the trial? The juror stated, "that could have happened, but the juror next to me would nudge me". Thus, demonstrating her limited ability to properly process information.

Moreover, since the jurors actions were obviously questionable, Why didn't Court judge have the the juror who allegedly done the nudging testify? The Court judge's conduct comes into serious question when these errors are obvious and are ripe for **Rule 52(b)**. The state offers no authority in their response to support their contrary opinion, and even if they had it could not justify the trial courts "Miscarriage of justice". The hearing judge overode justice and his conduct is not mirrored with the judicial discretion consistant with the judges (cannons) of judicial administration.

The Movant's liberty was deprived and his due process rights violated because of this. The "plain error" implications demonstrated miscarriaged justice of phenomena proportions, the hearing judges conduct put the integrity and public reputation at risk, and the judicial proceedings were clearly unreliable in the eyes of the public's interest.

Movant request to be released immediately for his continuing denial of participating in these alleged acts, and the court's misconduct, to harrass, stress Movant, and compelled an innocent man to suffer an unconstitutional loss of liberty (SEE; Stone v. Powell, 428 U.S. at 492-493 n 31,96 S.Ct.3051.31. And still movant maintains his innocence. (Schlup v. Delo, 115 S.Ct. 851, 513 U.S. 298 (U.S.M.D.1995).

(11)

Unanimous Instruction

(D)

In the State's answer, they try to pursuade this court as to the trial court's integrity to proper jury instruction regarding (Unanimous instruction). The State feels the trial court wasn't in Error by not specifically instructing jury to proper instruction. The Movant demonstrates here, that counts (1,2,3,4,5,12,13,16,17,18,19) (PFdCF) Comprehensively surround the alleged incidents that took place at (Heritage Dr.) and (Liberty court). ① the Movant was to (allegedly) have forcefully entered alleged-victim's residence along with two other men and committed various acts of assault and battery with a deadly weapon. (SEE: Police Report) ② Movant was arrested about a mile away from scene of alleged-crime at different location along with another suspect (Warner henry) (Liberty court). A

Weapon was found at this location, although the weapon was not in Movant's possession, he was still charged. The gun was later discovered to have been part of separate incident at (Heritage Dr.) Thus, the two separate incidents clearly demonstrate and formed basis of Movant's charges, and totally disputing State's contention "that there was only one incident", and Either could Easily support Movant's convictions, for that and other charges. The instructions to a jury should focus exclusively on it's task of determining the defendant's guilt or innocence) (SEE: Cabrera v. State, 747 A.2d 543, 545 (Del. 2000).

(12)

And stated the law, whether the instructions were informative by standards and had not Misled the jury (Criminal Law Key 1038.1(2)) furthermore, the instruction amounted to plain Error Cause they jeopardized the fairness and integrity of the trial process (Criminal Law Key 1030(1). The record demonstrates these Error and "plain Error" Exist. Movant asserts his colorable claims are applicable and results in Miscarriaged justice pursuant to **U.S. Constitution** due process, the abusive conduct betrayed the public interest.

# Ineffective assistance III

Trial counsel failed to conduct sufficient investigation in pretrial stage, during trial or, on direct review, exercising ineffective performance.

Ⓐ

### Pretrial investigation

The state assists trial counsel in believing her (Dean) performance satisfied her position of establishing contentions of other possible witnesses. The standard in Strickland, provides for counselors to meet the required test, here counselor (Dean) did not exercise proper performance when in critical stage of movants pre-trial proceedings, she failed to subpoena witness in (Wade v. Armontrout, 798 f.2d 304 (8th cir. 1986),

the counselor was granted the opportunity to interview each witness before trial, and interrogate arresting officer, in the instant case, her affidavit did not suggest any kind of inquiry for preparation, and the record doesn't demonstrate nor secure a tactical strategy, and trial counselor hadn't produced any to this court to explain her proper performance, but only shows failed assistance necessary to protect movant's fundamental rights to conduct valid investigation and prepare for defensive trial.

(Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). Had counsel conducted proper leads for finding more witnesses, movant may have been exonorated, these ineffective holdings on the movant futher deprived him the protection a trial counselor should perform consistant to (6) amendment U.S. Constitution. And these actions should result in reversal of conviction and sentences. Criminal Law Key 1166.11(5) states, in order to reverse a conviction on the ground that he was denied effective assistance of counsel, a defendant must Show that counsels performance was deficient and the deficient performance prejudiced his defense U.S.C.A. const. Amend 6.

Moreover, the record also suggest, a witness whom came outside during the time the alleged-victim claims the suspects were outside the residence. (SEE: pig. 49 line 6), the (6) amendment guarantees thorough investigation as well as effective representation, and failure to subpence any witness, prejudices defendant, that witness was never subpenoed. (SEE: Cross v. U.S. 392 f. 2d 360 (8th Cir. 1968). The state contends also along with counselor (Dean) that there wasn't a photo line-up because the alleged victim knew him and identified him by name. This inquiry has been answered over and over again

(15)

The alleged victim did not know Movant by his own admission, he maybe seen Movant in the neighborhood, as well as never noticed very clear scar on Movants' upper-lip along with large tatoo logo on Movants neck (p.g. 39 line 58) (p.g. 68 line 21-23). this hardly qualifys as knowing a person by "maybe seeing them." Just by the questionable identification, trial counsel should have attacked this situation in pretrial to get positive I.D. on Movant. (6) amendment provision U.S. Constitution. A.B.A. Standards.

Somehow, the state and trial counselor (Dean) believe that taking fingerprint or blood evidence would not help Movant because it would've been irrelevant if they belonged to an accomplice, and a test wouldn't have exculpated Movant since they allege he committed the crime. The other alleged suspects were, ① unknown ② previously acquitted of these in first trial ③ testified at trial Movant was not there. Movant asserts he is innocence, how could not conducting these test help Movant? the states agenda is exposed here and trial counsel doesn't offer any authority to support these tests would have hurt Movant's chances at freedom, Why didn't trial counsel believe Movant and have these tests done? her performance deprived Movant seriously, Movant would have gained everything from the test.

had they been conducted. The record here demonstrates her deficient performance, her non-exercised practice, and unacceptable assistance, clearly lost focus for the public's confidence and standard of reasonableness. (SEE: STEVENS v. D.C.C. 152 f. Supp. 2d 561 (D. Del 2001). Movant asserts his liberty has been deprived and believes their agenda subjected him to incarceration. Trial counsel should have vigorously attacked the states actions along with police, Instead movant's case was injured and they can't justify there conduct in not protecting his rights (6) and (14) amendment Constitutional rights to effective assistance, and Equal protection Due process.

Additionally, the A.B.A. Standards for defense function, **Standard 4-4.1 Duty to Investigate.** It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore "all" avenues leading to facts relevant to the merits of the case and here her failure to interview the witnesses, especially that of the witness whom the alleged victim claimed came outside should have been number one on counselors list, however, she believes she conducted every possible route to satisfy elements of this standard and U.S. Constitution.

Its clear from the trial counselors own exhibits that she hadn't investigated any defense witnesses, not even the single witness (Henry), and did not present any evidence of Movant's alibi, and offered none at trial, failing to protect Movant's fundamental rights to a fair trial. **(684-85 104 S.Ct. at 2063).** Trial counselors performance is held to the standards of reasonable professional assistance, and she has a duty to bring such skill and knowledge as will render the trial a reliable **(Adversaril testing)** process. This process will not function properly unless defense counsel has done some investigation into the prosecutions case and into various defense strategies. **(Strickland, 466 U.S. at 691, 104 S.Ct. at 2066.67).** Criminal Law Key 641.13(1) U.S. C.A. amendment 6.

(18)

# Failure to Object to Evidence

(B)

Trial counsel was ineffective for failing to object to gun and shell casing admitted at trial. The state contends the movant has no legitimate basis for objecting, however, the movant asserts that the state couldn't prove he ever possessed, not only a gun, but any deadly weapon **(SEE: Docket, where the charge of possession of deadly weapon by person prohibited)** was "<u>Severed</u>" alleged-victim (taylor) testified someone else possessed gun **(SEE: pg. 40 line 22 pg. 41 line 1-4).** By the admittence alone suggest movant was not in possession after a legal clearence of the weapon, nonetheless, the movant was still charged and convicted of possession anyway producing **(double jeopardy issues below)** This manipulation of the judicial process surfaced "plain error" and counsel acted as "double agent" by letting this issue stand, practically rubber stamping unprofessional, deficient performance, and she never challenged adversial testing against state authories and undermined **A-B.A. Standards** by failing to abide by clients objections and concerns for tactical decisions. **Rule 1.2(A)**

Consistant with the '<u>Strickland</u>' standard. of performance below reasonableness. The jury was influenced by this admission after movant's burden was lifted of any deadly weapon possession. Therefore, his liberty was clearly deprived and it caused added injury towards conviction ultimately. (6) amendment U.S. Constitution.

(19)

Before lead investigator was on scene of alledged-crime, Sgt. Littlefield claims he placed shell casing from floor to counter (SEE: pg. 341 line 2-7) (Shifting Evidence). Thus, the legal basis is that, a proper Chain of custody was warranted to show evidence was in substantially the same condition or, was actually from floor (SEE: U.S. Wood, 695 f.2d 459, 462 (10th cir. 1982).

This unchallenged decision by counselor (DEAN) further deprived movant of fair trial. A different approach should have been attempted by counsel I.E. the the circumstances surrounding the preservation (U.S. v. Gay, 774 f.2d 368) or, the integrity of the custody, U.S. v. Zink, 612 f.2d 511.514 10th cir. 1980). These seen, but not challenged issues destroyed movants possible chances the jury would've believed movant didn't actually possess any weapon, instead the ineffectiveness, let jury consider the gun to be connected to movant, and that he committed the alleged-crime. Therefore, legal basis does exist and counselors tactical decision not to challenge these issues prejudiced movant and increased the possibility of conviction in the minds of the jury. Movants convictions and sentences should be reversed pursuant to (6) and (14) amendments. U.S. Const.

(20)

In concluding, Movant Catagorically denied he had any involvement in the alleged crime for which he was convicted. He believes, as the record demonstrates here, that trial counsel, State attorney and trial court, made unreasonable decisions, ineffective performance, illegal and/or Unlawful conduct, and Malicious abuse of the judicial process, to gain conviction, which was fundamentally unfair, and was not in good-faith in the eyes of the public's interest. Movant asks honorable court to vacate, and restore his liberty in the interest of justice

Michael Durham
D.C.C. SBI #161286
1181 Paddock Rd.
Smyrna- DE. 19977
M.H.U. 23 BL12

Date: _____

Signed: _____

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

# IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| **STATE OF DELAWARE,** | ) | **IK02-09-0233-R1 to** |
| | ) | **IK02-09-0235-R1** |
| **v.** | ) | |
| | ) | **IK02-09-0237-R1 to** |
| **MICHAEL DURHAM** | ) | **IK02-09-0239-R1** |
| | ) | |
| Defendant | ) | **IK02-09-0243-R1** |
| | ) | |
| ID. No. 0208019524A | ) | **IK02-09-0245-R1** |
| | ) | |
| | ) | **IK02-11-0100-R1 to** |
| | ) | **IK02-11-0103-R1** |
| | ) | |
| | ) | **IK02-11-0106-R1 to** |
| | ) | **IK02-11-0107-R1** |
| | ) | |
| | ) | **IK02-11-0118-R1** |

# O R D E R

On this 14th day of March, 2006, upon consideration of the Defendant's Motion for Postconviction Relief, the Commissioner's Report and Recommendation, and the record in this case, it appears that:

(1)    The defendant, Michael Durham ("Durham"), was found guilty by a jury on four counts of Possession of a Firearm During the Commission of a Felony, 11 *Del. C.* § 1447A; one count of Burglary in the First Degree, 11 *Del. C.* § 826; and one count each of Attempted Robbery in the First Degree, 11 *Del. C.* § 531; Reckless Endangering in the First Degree, 11 *Del. C.* § 604; Conspiracy in the Second Degree, *Del. C.* § 512; Terroristic Threatening, 11*Del. C.* § 621; Assault

three and six relating to prosecutorial misconduct on direct appeal.

_____
                    Judge

RBY/sal

oc:    Prothonotary
xc:    Hon. Andrea M. Freud
       James J. Kriner, Esquire
       Sandra W. Dean, Esquire
       Mr. Michael Durham
       Order Distribution (w/Report & Recommendation)
       File

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | IK02-09-0233-R1 to |
| | ) | IK02-09-0235-R1 |
| v. | ) | |
| | ) | IK02-09-0237-R1 to |
| MICHAEL DURHAM | ) | IK02-09-0239-R1 |
| | ) | |
| Defendant | ) | IK02-09-0243-R1 |
| | ) | |
| ID. No. 0208019524A | ) | IK02-09-0245-R1 |
| | ) | |
| | ) | IK02-11-0100-R1 to |
| | ) | IK02-11-0103-R1 |
| | ) | |
| | ) | IK02-11-0106-R1 to |
| | ) | IK02-11-0107-R1 |
| | ) | |
| | ) | IK02-11-0118-R1 |

James Kriner, Esq., Deputy Attorney General, Wilmington, Delaware for the State of Delaware.

Michael Durham, *Pro se.*

## COMMISSIONER'S REPORT AND RECOMMENDATIONS

### Upon Defendant's Motion For Postconviction Relief Pursuant to Superior Court Criminal Rule 61

FREUD, Commissioner
November 30, 2005

*State v. Durham*
ID 0208019524A
November 30, 2005

On December 4, 2003, the Defendant, Michael Durham, ("Durham"), was found guilty by a jury on four counts of Possession of a Firearm During the Commission of a Felony, 11 *Del. C.* § 1447A; one count of Burglary in the First Degree, 11 *Del. C.* § 826; and one count each of Attempted Robbery in the First Degree, 11 *Del. C.* § 531;   Reckless Endangering in the First Degree, 11 *Del. C.* § 604;  Conspiracy in the Second Degree, *Del. C.* § 512;   Terroristic Threatening, 11 *Del. C.* § 621;  Assault in the Third Degree, 11 *Del. C.* § 613;  Endangering the Welfare of a Child, 11 *Del. C.* § 1102;  Criminal Mischief, 11 *Del. C.* § 811; and Aggravated Menacing, 11 *Del. C.* § 602.  Durham had also been facing another count of Assault Third Degree that was *nolle prossed* by the State.[1]  One count of Possession of a Deadly Weapon by a Person Prohibited was severed. A presentence investigation report was ordered.

On December 9, 2003, the State filed a motion to have  Durham  declared a Habitual Offender due to his past felony convictions.  On December 11, 2003, Defense counsel filed a Motion for a New Trial alleging that Juror Number Nine was inattentive, dozing or sleeping during the trial.  An evidentiary hearing was scheduled on the Motion for New Trial.  The hearing was held on January 9, 2004.  Following

---

[1]  Durham was originally tried on these charges April 7 - 10, 2003.  The trial resulted in conviction on Offensive Touching and Criminal Trespass Second and not guilty on two counts of Endangering the Welfare of a Child. A Motion for Judgment of Acquittal was granted as to Kidnapping First Degree and Possession of a Firearm During the Commission of a Felony and denied as to eleven other counts.  The jury could not agree on the remaining counts.

*State v. Durham*
ID 0208019524A
November 30, 2005

the hearing and briefing the Court denied the motion on March 8, 2004.[2]

On March 9, 2004, following a hearing, the Court granted the State's motion to declare Durham a Habitual Offender and proceeded to sentence Durham to life imprisonment pursuant to 11 *Del. C.* § 4214(b) on the Attempted Robbery in the First Degree. On the remaining counts, Durham was given a total of 103 years incarceration, suspended after 100 years all of which was in addition to the Life sentence on the Attempted Robbery charge. On April 28, 2004, Defense Counsel filed a Motion for Resentencing in order to reset the time available to file an appeal with the Delaware Supreme Court. The Court granted Durham's request and he was resentenced on May 25, 2004.[3] A Notice of Appeal was then filed on May 28, 2004. The Delaware Supreme Court affirmed Durham's conviction and sentence.[4]

Next, Durham filed the pending Motion for Postconviction Relief in which he alleges several grounds for relief including ineffective assistance of counsel.

## FACTS

The following is a summary of the facts as noted by the Supreme Court in its opinion:

> In August 2002, Durham and two others entered Michael Taylor's Dover home seeking money. The three physically accosted and chased Taylor throughout the house. One, carrying a handgun, fired at Taylor. Another punched him in the face. By the time police

---

[2] *State v. Durham*, 2004 Del. Super. LEXIS 58.

[3] The sentence was identical to the prior sentence.

[4] *Durham v. State*, 867 A.2d 176 (Del. 2005).

3

*State v. Durham*
ID 0208019524A
November 30, 2005

arrived, all three had fled.  Suffering from various injuries, Taylor identified his assailants as Durham, Quentin Henry, and one he knew only as 'Peebo.' Durham was later tried before a jury in Superior Court and convicted of first-degree burglary, first-degree attempted robbery, and a variety of firearms and other charges.

Following the initial afternoon of jury deliberations, Durham orally moved for a mistrial, contending for the first time that Juror Number Nine slept during parts of the trial.  The trial judge reserved decision on the motion, the trial continued, and the jury ultimately returned its verdict.  Durham then moved for a new trial.  The trial judge conducted an evidentiary hearing in January 2004, taking testimony from a corrections officer, bailiff, and two members of the gallery present at trial.  Juror Nine also testified.

In his March 2004 order, the trial judge recounted the evidence.  He noted that although the two observers stated that Juror Nine closed her eyes and put her head down at various times, neither thought she was actually asleep.  The bailiff, present for the entire trial, testified that he 'never saw her sleeping.'  Juror Nine also insisted she was attentive throughout the trial.  Based on this evidence, the trial judge found that even if Juror Nine was 'fighting sleep,' this fact alone neither proved that she slept or was otherwise inattentive during the proceedings.  He therefore found that Juror Nine's conduct did not prejudice Durham and denied the motion for a new trial.[5]

### DURHAM'S CONTENTIONS

Durham filed the instant Motion for Postconviction Relief pursuant to Superior Court Rule 61.  In his motion, he raises several grounds for relief and

---

[5] *Id.* at 178 (internal citations omitted).

4

incorporates by reference his lengthy Memorandum of Law. I have summarized the grounds for relief for ease of addressing Durham's claims:

Ground One:  Vindictive Prosecution.
- Violation of right to fair trial by alleging Accomplice Liability;
- Allowing a defense witness to be placed in the same holding cell during trial; and
- Presenting perjured testimony.

Ground Two:  Judicial Misconduct.
- Improper jury instruction on Accomplice Liability;
- "Improper bolstering of state's witnesses through testimony at trial;"
- Denied New Trial due to juror inattentiveness; and
- Trial Judge failed to give a specific unanimity instruction.

Ground Three:  Ineffective Trial Counsel.
- "Counselor may have found other possible witnesses..."
- Failed to conduct investigation with respect to blood, fingerprints and photographic lineup; and
- Failed to object to admission of handgun and shell casing.

Ground Four:  Double Jeopardy.

## PROCEDURAL CONSIDERATIONS

Under Delaware Law the Court must first determine whether Durham has met the procedural requirements of Superior Court Criminal Rule 61(i) before it may consider the merits of the postconviction relief claims.[6] Under Rule 61, postconviction claims for relief must be brought within three years of the conviction becoming

---

[6]    *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991); *Younger v. State*, 580 A.2d 552, 554 (Del. 1990) (*citing Harris v. Reed,* 489 U.S. 255 (1989)); *See Dawson v. State,* 673 A.2d 1186, 1190 (Del. 1996).

*State v. Durham*
ID 0208019524A
November 30, 2005

final.[7] Durham's motion was filed in a timely fashion, thus the bar of Rule 61(i)(1) does not apply to the motion. As this is Durham's initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

Grounds for relief not asserted in the proceedings leading to judgment of conviction are thereafter barred unless the movant demonstrates: (1) cause for relief from the procedural fault and (2) prejudice from a violation of the movant's rights.[8] The bars to relief are inapplicable to a jurisdictional challenge or to a colorable claim that there was a miscarriage of justice stemming from a constitutional violation that "undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction."[9]

Each of Durham's claims are to some extent premised on allegations of ineffective assistance of counsel. These types of claims are not normally subject to the procedural default rule, in part because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal. For this reason, many defendants, including Durham, allege ineffective assistance of counsel in order to overcome the procedural default.

However, this path creates confusion if the defendant does not understand that the test for ineffective assistance of counsel and the test for cause and prejudice are

---

[7]     Super. Ct. Crim. R. 61(i)(1).

[8]     Super. Ct. Crim. R. 61(i)(3).

[9]     Super. Ct. Crim. R. 61(i)(5).

6

*State v. Durham*
ID 0208019524A
November 30, 2005

distinct, albeit similar, standards.[10]  The United States Supreme Court has held that:

> [i]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State, which may not "[conduct] trials at which persons who face incarceration must defend themselves without adequate legal assistance"[;] [i]neffective assistance of counsel, then, is cause for a procedural default.[11]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark.  Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two part analysis enunciated in *Strickland v. Washington*[12] and adopted by the Delaware Supreme Court in *Albury v. State*.[13]

The *Strickland* test requires the movant show that counsel's errors were so grievous that his performance fell below an objective standard of reasonableness.[14] Second, under *Strickland* the movant must show there is a reasonable degree of probability that but for counsel's unprofessional error the outcome of the proceedings

---

[10]    *State v. Gattis*, 1995 Del. Super. LEXIS 399, at *11.

[11]    *Murray v. Carrier,* 477 U.S. 478, 488 (1986) quoting *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980).

[12]    466 U.S. 668 (1984).

[13]    551 A.2d 53, 58 (Del. 1988).

[14]    *Strickland*, 466 U.S. at 687-88; *see Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

7

*State v. Durham*
ID 0208019524A
November 30, 2005

would have been different, that is, actual prejudice.[15]  In setting forth a claim of ineffective assistance of counsel, a defendant must make and substantiate concrete allegations of actual prejudice or risk summary dismissal.[16]

Generally, a claim for ineffective assistance of counsel fails unless both prongs of the test have been established.[17]  However, the showing of prejudice is so central to this claim that the *Strickland* court stated "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[18]  In other words, if the Court finds that there is no possibility of prejudice even if a defendant's allegations regarding counsel's representation were true, the Court may dispose of the claim on this basis alone.[19]  Furthermore, the defendant must rebut a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional

---

[15] *Strickland,* 466 U.S. at 694; *see Dawson,* 673 A.2d at 1190; *accord Zebroski v. State,* 822 A.2d 1038, 1043 (Del. 2003); *Ayers v. State,* 802 A.2d 278, 281 (Del. 2002); *Steckel v. State,* 795 A.2d 651, 652 (Del. 2002); *Johnson v. State,* 813 A.2d 161, 167 (Del. 2001); *Bialach v. State,* 773 A.2d 383, 387 (Del. 2001); *Outten v. State,* 720 A.2d 547, 552 (Del. 1998); *Skinner v. State,* 607 A.2d 1170, 1172 (Del. 1992); *Flamer v. State,* 585 A.2d 736, 753-54 (Del. 1990).

[16] See also *Outten v. State,* 720 A.2d 547, 552 (Del. 1998); *Righter v. State,* 704 A.2d 262, 263 (Del.1997); *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997); *Skinner v. State,* 1994 Del. LEXIS 84; *Brawley v. State,* 1992 Del. LEXIS 417; *Younger v. State,* 580 A.2d 552, 556 (Del. 1990); *Robinson v. State,* 562 A.2d 1184, 1185 (Del. 1989); *Wells v. Petsock,* 941 F.2d 253, 259-60 (3d Cir. 1991).

[17]     466 U.S. at 687.

[18]     *Id.* at 697.

[19]     *State v. Gattis,* 1995 Del. Super. LEXIS 399, at *13.

8

*State v. Durham*
ID 0208019524A
November 30, 2005

assistance,"[20] and this Court must eliminate from its consideration the "distorting effects of hindsight when viewing that representation."[21]

In the case at bar, Durham attempts to show cause for his procedural default by making merely conclusory assertions of ineffectiveness of counsel. In regard to prejudice, Durham simply claims that the failure of counsel to raise certain issues was prejudicial. Under the circumstances of the case, Durham's allegations are meritless. The Supreme Court found no error in the trial. The record indicates that Durham's trial attorney did in fact adequately prepare for the trial and called all appropriate witnesses at trial.[22] Durham has utterly failed to demonstrate prejudice as a result of his counsel's alleged failure. This failure is fatal to Durham's motion. His motion is therefore procedurally barred.[23] Notwithstanding the procedural bar, I will now address the merits of each of Durham's grounds for relief.

### Ground One:  Vindictive Prosecution

Durham alleges that the prosecutor violated his right to a fair trial by advancing a theory of accomplice liability, allowing a defense witness to be placed in the same holding cell during the trial, and presenting perjured testimony. The record is clear

---

[20] *Strickland,* 466 U.S. at 689.

[21] *Id.;* see also *Dawson,* 673 A.2d at 1190; *Wright v. State,* 671 A.2d 1353, 1356 (Del. 1996).

[22] See Affidavit of Counsel for a complete overview of counsel's preparation for trial.

[23] *See Wright,* 671 A.2d at 1356; *Wright v. State,* 1992 Del LEXIS 62; *Brawley v. State,* 1992 Del. LEXIS 417.

*State v. Durham*
ID 0208019524A
November 30, 2005

that there was no vindictive prosecution.  Vindictive prosecution arises in situations where a defendant on retrial, following a successful appeal, was subjected to a harsher sentence by the court, or is charged with more serious charges.[24]

Concerning Durham's allegation that his rights were violated when the prosecutor advanced a theory of accomplice liability the law clearly contradicts Durham's assertions.  A person may be held liable for the conduct of another when he "[a]ids, counsels or agrees or attempts to aid the other person in planning or committing it."[25]  The evidence in this case supported a theory of accomplice liability.[26]  This assertion is simply without merit.

Durham also alleges that his rights were violated when the Department of Correction placed his codefendant, Quentin Henry, in the same holding cell during trial.  He implies that the prosecutor had something to do with that placement.  This allegation is not supported by any evidence in the record.  Moreover, there is no logical reason a prosecutor would knowingly allow a defense witness to share a cell with a defendant during trial.  That situation allows for collaboration and intimidation, which does not benefit the state.  Therefore, this claim is without merit.

Durham's last allegation regarding the alleged prosecutorial misconduct is that his rights were violated by permitting Detective Humphrey to give perjured

---

[24] *State v. Wharton*, 1991 WL 138417, at *10 (Del. Super. June 3, 1991).

[25] 11 *Del. C.* § 271.

[26] Not only did the victim repeatedly name Durham and his codefendants as the perpetrators, the gun used in the offense was seized from the location where Durham was arrested.

10

*State v. Durham*
ID 0208019524A
November 30, 2005

testimony. It is not clear what testimony is allegedly perjured or how the prosecutor knowingly permitted perjured testimony. There is no evidence that the witness gave perjured testimony and there in no evidence the prosecutor permitted any witness to give perjured testimony. Therefore, this claim is without merit.

Ground Two: Judicial Misconduct

Durham argues that he is entitled to postconviction relief because the trial judge engaged in misconduct and committed error. He alleges that the trial judge violated his rights by instructing the jury on accomplice liability. As noted above, an accomplice liability instruction was justified based on the facts of the case. The record evidence supported the instruction. A trial court should instruct a jury on accomplice liability provided the instruction is supported by the evidence and correctly states the law.[27] The trial judge appropriately instructed the jury on accomplice liability. Therefore, this claim is without merit.

Durham alleges that the trial judge "allowed improper bolstering of state's witnesses through testimony at trial." It is unclear what specific "improper bolstering" took place and how it violated his constitutional rights. Durham has failed to set forth a cognizable legal claim.

Durham also argues that he is entitled to postconviction relief because the trial judge erroneously denied him a new trial due to juror inattentiveness. This claim is procedurally barred because it was previously raised in Durham's Motion for New Trial and on appeal. Any ground for relief that was formerly adjudicated in an appeal

---

[27] *Zimmerman v. State*, 565 A.2d 887, 890 (Del 1989).

*State v. Durham*
ID 0208019524A
November 30, 2005

or postconviction proceeding is thereafter barred.[28]  The trial judge reviewed this claim in a motion for new trial and denied it.[29]  Durham appealed the conviction to the Delaware Supreme Court.[30]  The Supreme Court affirmed the decision and commended the trial judge for his action.[31] Durham has simply restated arguments he previously raised on direct appeal. Rule 61(i)(4) bars any ground for relief that was formerly adjudicated unless reconsideration of the claim is warranted in the interest of justice.[32]  Durham raised these claims before and the Supreme Court found them meritless.  He has made no attempt to argue why reconsideration of this claim is warranted in the interest of justice.  The interest of justice exception of Rule 61(i)(4) has been narrowly defined to require that the movant show that the "subsequent legal developments have  revealed that the trial court lacked the authority to convict or punish" him.[33]  Durham has made no attempt to demonstrate why his claims should be revisited.  This Court is not required to consider Durham's claims simply because

---

[28]  Superior Court Crim. R. 61(i)(4).

[29]  *State v. Durham*, 2004 Del. Super. LEXIS 59 (Mar. 8, 2004)

[30]  *Durham v. State,* 867 A.2d 176 (Del. 2005).

[31]  *Id.* at 181.

[32]  Superior Court Crim. R. 61(I)(4).

[33]  *Maxion v. State*, 686 A.2d 148, 150 (Del. 1996) (quoting *Flamer v. State*, 585 A.2d 736, 746 (Del. 1990)).

*State v. Durham*
ID 0208019524A
November 30, 2005

they are "refined or restated."[34]  For this reason, this ground for relief should be dismissed as previously adjudicated under Rule 61(i)(4).

Durham's last assertion concerning judicial misconduct is that the trial judge erred in failing to give a specific unanimity instruction in this case.  It is not clear why Durham believes he was entitled to such an instruction.  A specific unanimity instruction is not required in every case where a defendant may be convicted as a principal or accomplice.[35]  The instruction is only required if one count encompasses two separate incidents either of which could support a defendant's conviction for a particular charge.[36]  In Durham's case, the evidence showed that there was a single incident that formed the basis of the charges.[37]  Therefore, a specific unanimity instruction was not warranted.

<u>Third Ground:  Ineffective Trial Counsel</u>

Durham argues that he is entitled to postconviction relief because trial counsel was ineffective.  He alleges that trial counsel failed to adequately conduct a pretrial investigation and failed to object to the admission of the handgun into evidence.  As stated above, Durham has not satisfied either prong of *Strickland*.

Durham's alleges that "counsel may have found other possible witnesses

---

[34] *Riley v. State*, 585 A.2d 719, 721 (Del. 1990).

[35] *Ayers v. State*, 844 A.2d 304, 309 (Del. 2004); *Liu v. State*, 628 A.2d 1376, 1386 (Del. 1993); *Probst v. State,* 547 A.2d 114, 122 (Del. 1988).

[36] *Ayers,* 844 A.2d at 309.

[37] *Cf. Probst v. State*, 547 A.2d 114 (Del. 1988).

13

*State v. Durham*
ID 0208019524A
November 30, 2005

whom may perhaps give different accounts ..." Crucially, Durham does not state who the witnesses were or how they would have changed the outcome in the case. Conclusory allegations of unprofessional conduct are insufficient to support a motion for postconviction relief.[38] Moreover, in her affidavit, trial counsel provided a list of witnesses she spoke to and the results of the interviews.

Durham also asserts that trial counsel failed to conduct an investigation with respect to blood, fingerprints and a photographic lineup. Durham, however, does not indicate how this was deficient, or how a proper investigation would have resulted in his acquittal. The Dover Police did not collect blood evidence from the victim's house. The police did not recover any latent fingerprints. The police did not create a photo lineup with Durham because the victim knew him and identified him by name. Trial counsel responds that if defense counsel attempted to obtain fingerprints "there is likelihood that they would have incriminated Mr. Durham or they would have been irrelevant if they belonged to an accomplice." Durham presents no evidence that fingerprint or blood evidence recovered from the crime scene would have exculpated him since he committed the crime with two other men, one of whom was unknown to the police.

Durham's last allegation of ineffective assistance of counsel is that trial counsel failed to object to the admission of a handgun and a shell casing. The handgun was recovered from the apartment where Durham was arrested shortly after the home invasion. A ballistics expert matched the gun to evidence recovered from the scene

---

[38] *Younger v. State*, 580 A.2d 552, 555 (Del. 1990).

14

*State v. Durham*
ID 0208019524A
November 30, 2005

of the home invasion. There was no legitimate basis to object to the admission of the gun. There was also no legitimate basis to object to the admission of the shell casing recovered from the crime scene. Sgt. Littlefield located the shell casing on the floor of the residence when he arrived. He testified he picked it up and placed it on a table so that it would not be lost. Durham presents no evidence that the casing was tampered with or that its evidentiary value was compromised. Durham's failure to show prejudice is fatal to his claim.

Durham clearly fails to satisfy his burden under *Strickland*. His allegations of unprofessional conduct are not grounded in fact or law. It is evident that trial counsel conducted a thorough pretrial investigation. Even Durham is unable to suggest what counsel could have done differently in her representation of him. It is also clear that there was no legal basis to object to the admission of the handgun or shell casing. Durham fails to state what legal basis counsel should have been used to object to the evidence; this is because no basis existed. The gun and the casing were properly seized and highly probative of Durham's guilt.

<u>Fourth Ground: Double Jeopardy</u>

Durham claims he is entitled to postconviction relief because he was convicted in violation of the Double Jeopardy clause. This claim is meritless in addition to being procedurally barred. Durham was indicted on four separate counts of Possession of a Firearm During the Commission of a Felony related to Robbery First, Burglary First, Reckless Endangering First and Kidnapping First. During the first

*State v. Durham*
ID 0208019524A
November 30, 2005

trial,[39] the defense successfully argued a Motion for Judgment of Acquittal on Kidnapping First. Accordingly, the Court dismissed the related Possession of a Firearm During the Commission of a Felony charge. However, the Court did not disturb the three remaining Possession of a Firearm During the Commission-of a Felony charges. These charges were separate and distinct from the charge that was dismissed. Durham's claim that he was convicted of a crime for which he was previously acquitted is factually inaccurate and as such this claim is clearly meritless.

## CONCLUSION

After reviewing the record in this case, it is clear that Durham has failed to avoid the procedural bars of Rule 61(i). Consequently, I recommend that Durham's postconviction motion be ***denied*** as procedurally barred by Rule 61(i)(3) for failure to prove cause and prejudice and Rule 61(i)(4) as previously adjudicated.

Commissioner Andrea M. Freud

oc:    Prothonotary
cc:    Honorable Robert B. Young
        Sandra W. Dean, Esq.

---

[39] April 2003.

*State v. Durham*
ID 0208019524A
November 30, 2005

File

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| MICHAEL DURHAM, | § | |
| | § | No. 176, 2006 |
| Defendant Below, | § | |
| Appellant, | § | Court Below--Superior Court |
| | § | of the State of Delaware, in and |
| v. | § | for Kent County |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | Cr. ID No. 0208019524A |
| Appellee. | § | |

Submitted:  June 28, 2006
Decided:    September 28, 2006

Before **STEELE**, Chief Justice, **BERGER** and **JACOBS**, Justices.

## O R D E R

This 28th day of September 2006, upon consideration of the appellant's opening brief and the appellee's motion to affirm, it appears to the Court that:

(1)    The appellant, Michael Durham, has filed an appeal from the Superior Court's denial of his motion for postconviction relief pursuant to Superior Court Criminal Rule 61 ("Rule 61"). The appellee, State of Delaware, has moved to affirm the judgment of the Superior Court on the ground that it is manifest on the face of Durham's opening brief that the appeal is without merit.[1] We agree and affirm.

---

[1] Del. Supr. Ct. R. 25(a) (2006).

(2)    In 2003, a Superior Court jury convicted Durham of numerous felony offenses, including Possession of a Firearm During the Commission of a Felony and Attempted Robbery in the First Degree. Durham filed a motion for new trial. After an evidentiary hearing, the Superior Court denied the motion. At sentencing, the Superior Court declared Durham a habitual offender and sentenced him to life in prison.[2]

(3)    On direct appeal, Durham argued that the Superior Court abused its discretion when denying the motion for new trial. This Court held otherwise and affirmed the Superior Court's judgment.[3]

(4)    In May 2005, Durham filed a motion for postconviction relief. The Superior Court referred Durham's motion to a Commissioner for proposed findings and recommendations.[4] The Commissioner directed that the State file a memorandum in response to the postconviction motion and that Durham's trial counsel file an affidavit in response to allegations of ineffective assistance of counsel. Durham filed a reply to each of those submissions.

---

[2]Del. Code Ann. tit. 11, § 4214(a) (2001) (amended 2004).

[3]*Durham v. State*, 867 A.2d 176 (Del. 2005).

[4]Del. Code Ann. tit. 10, § 512(b)(1)b (1999); Del. Super. Ct. Crim. R. 62(a)(5) (2006).

2

(5)    By report and recommendations dated November 30, 2005, the Commissioner found that Durham had failed to establish that he was prejudiced as a result of the alleged ineffectiveness of his counsel.[5] The Commissioner recommended that the Superior Court deny Durham's postconviction motion as procedurally barred pursuant to Rule 61(i)(3) and (4).[6]

(6)    Durham filed extensive written objections to the Commissioner's findings and recommendations. The Superior Court considered the objections and reviewed the Commissioner's report *de novo*, as required.[7] Ultimately, however, the Superior Court adopted the Commissioner's report and recommendations and denied Durham's motion for postconviction relief.[8]

(7)    In his opening brief on appeal, Durham argues, as he did in his postconviction motion: (i) ineffective assistance of counsel, (ii) prosecutorial

---

[5]*See Strickland v. Washington*, 466 U.S. 668, 688. 694 (1984) (holding that a defendant claiming ineffective assistance of counsel must show that counsel's representation fell below an objective standard of reasonableness and was prejudicial).

[6]*See* Del. Super. Ct. Crim. R. 61(i)(3) (2006) (barring postconviction claim not previously raised, absent cause for relief and prejudice; (i)(4) (barring formerly adjudicated postconviction claim unless reconsideration is warranted in the interest of justice).

[7]Del. Super. Ct. Crim. R. 62(a)(5)(iv) (2006).

[8]*Id.*

misconduct,[9] and (iii) abuse of discretion in denial of new trial motion.[10] Durham also argues that the Superior Court abused its discretion when it decided his postconviction motion without conducting an evidentiary hearing.

(8)    Notwithstanding his arguments to the contrary, Durham has not demonstrated on appeal that reconsideration of the Superior Court's denial of his motion for new trial is warranted in the interest of justice under Rule 61(i)(4).   Nor has Durham demonstrated that his claims of prosecutorial misconduct should be considered under the exception to the procedural bar of Rule 61(i)(3) that is found in Rule 61(i)(5).[11]  Finally, to the extent Durham has argued ineffective assistance of counsel, we agree with the Superior Court that Durham has not demonstrated that any claimed error on the part of his counsel resulted in prejudice to him.

---

[9]Durham claims that the prosecutor (i) arranged for the Department of Correction transportation officer to place Durham in the same courthouse holding cell as a defense witness and (ii) solicited perjured testimony from a prosecution witness.

[10]To the extent Durham has not argued on appeal other claims that he raised in his postconviction motion, those claims are deemed waived. *See Somerville v. State*, 703 A.2d 629, 631 (Del. 1997) (citing *Murphy v. State*, 632 A.2d 1150, 1152-53 (Del. 1993)). 

[11]*See* Del. Super. Ct. Crim. R 61(i)(5) (2006) (providing in pertinent part that the procedural bar in Rule 61(i)(3) shall not apply to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction).

4

(9)    Having thus carefully considered the parties' submissions on appeal and the Superior Court record, we conclude that the judgment of the Superior Court should be affirmed on the basis of the Superior Court's order dated March 14, 2006, that adopted the Commissioner's well-reasoned report and recommendations dated November 30, 2005. The Superior Court did not abuse its discretion when it decided Durham's postconviction motion without an evidentiary hearing.[12]

(10)   It is manifest on the face of Durham's opening brief that this appeal is without merit. The issues raised on appeal are clearly controlled by settled principles of law, and there was no error of law in the Superior Court. To the extent the appeal presents issues of judicial discretion, there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

BY THE COURT:

_Jack B. Jacobs_

Justice

---

[12]*See* Del. Super. Ct. Crim. R. 61(d)(4) (2006) (providing that the Superior Court may summarily dismiss a postconviction motion if it "plainly appears from the motion and the record of prior proceedings" that the defendant is not entitled to relief).

I/M Michael Gibson

SBI# 00161286 UNIT C

DELAWARE CORRECTIONAL CENTER

1181 PADDOCK ROAD

SMYRNA, DELAWARE 19977





*Legal mail*

District Court Clerk
J. Caleb Boggs building
844 King st, locker box 18
Wilmington, Delaware
19801

*Legal mail*