IN THE United States District Court
For THE District of Delaware

Michael Durham
     Petitioner,

    V.

Thomas Carroll,
    Respondent,

C.R. No. 0208019524

07-370

FILED

JUN 11 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

BD scanned

ON Appeal From THE Supreme Court of THE
STATE of Delaware IN and For Delaware

THis is Respondent Appendix to his opening
Brief In Appeal of THE Supreme Court order

THis is APPELLANTs Appendix to his opening brief
In Appeal of THE Supreme Court

Date 5-30-07

Michael Durham
Michael Durham
S.B.I # 161286,
Del. Corr. Center
1181 Paddock Rd
Smyrna, De. 19977

TABLE OF CONTENTS TO APPENDIX         Page. O.#

Superior Court criminal docket sheet in
case durham v. State, as of 9-24-04.         A- 1.         #

Superior Court Indictment, in case
State v. Durham, ~~case number~~         A- 7.         #

= Record and letter, by counsel to defendant
of "all" information given by counsel.         A- 15.         #

Police Report in case, Durham v. State, by
detective humphrey.         A- 16.         #

Arrest warrant from J.P. court 7.# in
case, Durham v. State.         A- 18.         #

Affidavit of Prior Counsel, in response to
defendants, Superior. Ct. R. 61. motion.         A- 21.         #

The States, Memorandum of law in response
to defendants, Superior. Ct. R. 61. motion.         A- 36.         #

Response of Disciplinary Complaint, filed by
the defendant against prior counsel.         A- 47.         #

The Motion for a new trial, filed by prior counsel
in the superior court, do to juror 9. error.         A- 48.         #

The States, Memorandum of law in Opposition
to the motion for a new trial, filed do to juror 9.# error.    A- 52.    #

CONTINUED • TABLE OF CONTENTS TO APPENDIX.

Page O.#

Defendants exculpatory witness,
Trial Testimony of Quentin henry, witness.                          A-62.#

Perjured Testimony, and Trial testimony of
Detective carl Humphrey.                                            A-77.#

— Hearing on motion for a new trial, testimony
of juror 9# "Shirley Riley" whom was asleep.                        A-85.#

Hearing on motion for a new trial, testimony
of witness to juror 9# error, "Beth Savitz".                       A-97.#

Hearing on motion for a new trial testimony
of correctional officer "Leroy Poore".                             A-103.#

Hearing on motion for a new trial testimony
of witness to juror 9# error, "William Mizell".                    A-109.#

Hearing on motion for a new trial, testimony
of bailiff, after hearing closed and reopened, "Joseph sanchez"   A-114.#

All of prior counsels grounds raised on defendants
direct appeal, which is cause to excuse Any bar.    A-115.#

Trial testimony of trial testimony of states witness
taylor. Identification.                                A-116.#

SUPERIOR COURT CRIMINAL DOCKET                    Page    1
( as of   09/02/2004 )

S~ ~te of Delaware v.  MICHAEL DURHAM                          DOB: 10/13/1965
~ ~te's Atty: JAMES J KRINER , Esq.          AKA: MICHAEL D DURHAM
Defense Atty: SANDRA W DEAN , Esq.                MICHAEL D DURHAM


Co-Defendants:  QUINTON HENRY , MICHAEL DURHAM
Co-Defendants:  QUINTON HENRY , QUINTON HENRY

Assigned Judge:

Charges:

| Count | DUC# | Crim.Action# | Description | Dispo. | Dispo. Date |
|-------|------|--------------|-------------|--------|-------------|
| 001 | 0208019524A | IK02090233 | PFDCF | TG | 12/04/2003 |
| 002 | 0208019524A | IK02090234 | ATT ROBBERY 1ST | TG | 12/04/2003 |
| 003 | 0208019524A | IK02090235 | BURGLARY 1ST | TG | 12/04/2003 |
| 004 | 0208019524A | IK02090236 | PDWBPP | SEV | 12/04/2003 |
| 005 | 0208019524A | IK02090237 | RECK END 1ST | TG | 12/04/2003 |
| 006 | 9208019524A | IK02090238 | CONSP 2ND | TG | 12/04/2003 |
| 007 | 0208019524A | IK02090239 | TERROR THREAT | TG | 12/04/2003 |
| 008 | 0208019524A | IK02090240 | ASSAULT 3RD | NOLP | 01/07/2004 |
| 009 | 0208019524A | IK02090241 | ENDANG WLF CHLD | TNG | 04/10/2003 |
| 010 | 0208019524A | IK02090242 | ENDANG WLF CHLD | TNG | 04/10/2003 |
| 011 | 0208019524A | IK02090243 | CRIM MISC <1000 | TG | 12/04/2003 |
| 012 | 0208019524A | IK02110100 | PFDCF | TG | 12/04/2003 |
| 013 | 0208019524A | IK02110101 | PFDCF | TG | 12/04/2003 |
| 4 | 0208019524A | IK02110102 | ASSAULT 3RD | TGLI | 12/04/2003 |
| 015 | 0208019524A | IK02110103 | END WELF CHILD | TG | 12/04/2003 |
| 016 | 0208019524A | IK02110104 | KIDNAP 1ST | ACQT | 04/08/2003 |
| 017 | 0208019524A | IK02110105 | PFDCF | ACQT | 04/08/2003 |
| 018 | 0208019524A | IK02110106 | AGGR MENACING | TG | 12/04/2003 |
| 019 | 0208019524A | IK02110107 | PFDCF | TG | 12/04/2003 |
| 020 | 0208019524A | IK02090245 | OFF TOUCHING | TG | 04/10/2003 |
| 021 | 0208019524A | IK02110118 | CRIM TRES 2ND | TG | 04/10/2003 |

| No. | Event Date | Event | Judge |
|-----|------------|-------|-------|
| 1 | 09/09/2002 | CASE ACCEPTED IN SUPERIOR COURT. ARREST DATE: 08/28/2002 PRELIMINARY HEARING DATE: 09/06/2002 BAIL:  SECURED BAIL-HELD          25,000.00 | |
| 2 | 11/04/2002 | INDICTMENT, TRUE BILL FILED. | |
| 3 | 11/06/2002 | CASE CONSOLIDATED WITH: 0208019537 | |
| 4 | 11/07/2002 | SUMMONS MAILED TO DEFENDANT AND BONDSPERSON FOR APPEARANCE IN COURT ON | |

A-1

SUPERIOR COURT CRIMINAL DOCKET                    Page    2
( as of  09/02/2004 )

State of Delaware v.  MICHAEL DURHAM                              DOB: 10/13/1965
State's Atty: JAMES J KRINER , Esq.        AKA: MICHAEL D DURHAM
Defense Atty: SANDRA W DEAN , Esq.              MICHAEL D DURHAM

|      | Event      |            |            |
|------|------------|------------|------------|
| No.  | Date       | Event      | Judge      |

--------------------------------------------------------------------------
11/14/2002 FOR ARRAIGNMENT.
5    11/14/2002                               FREUD ANDREA MAYBEE
     ARRAIGNMENT CALENDAR - 10-B BY VIDEO - DEFENDANT WAIVED READING, PLEAD
     NOT GUILTY, JURY TRIAL DEMANDED
6    11/25/2002                               VAUGHN JAMES T. JR.
     CASE REVIEW CALENDAR:  SET FOR FINAL CASE REVIEW 1/2 & TRIAL 1/6/03.
7    12/03/2002
     MOTION TO SEVER FILED. (DEAN)
8    12/06/2002                               RIDGELY HENRY DUPONT
     MOTION TO SEVER GRANTED. IK02-09-0236 IS SEVERED.
9    12/11/2002
     SUBPOENA(S) ISSUED.
10   12/26/2002
     SUBPOENA(S) ISSUED.
11   12/31/2002                               WITHAM WILLIAM L. JR.
     CONTINUANCE REQUEST FILED BY JAMES KRINER, ESQ.; GRANTED BY JUDGE
     WITHAM; REMAIN ON FOR FCR AND ADDRESS TRIAL DATE AT FCR.
12   01/02/2003                               WITHAM WILLIAM L. JR.
     CASE REVIEW CALENDAR FINAL CASE REV. CONT. 2/12/03, TRIAL 2/18/03
     PROSECUTION REQUEST - AWAITING LAB RESULTS.
13   01/03/2003
     NOTICE OF SERVICE - DISCOVERY RESPONSE.
14   01/14/2003                               WITHAM WILLIAM L. JR.
     CONTINUANCE REQUEST FILED BY SANDRA DEAN, ESQ.; GRANTED BY JUDGE
     WITHAM; REMAIN ON FCR: 2/12/03 CON'T TRIAL 1 DAY 2/19/03
     ATTY VACATION
15   02/06/2003
     SUBPOENA(S) ISSUED.
16   02/12/2003                               VAUGHN JAMES T. JR.
     FINAL CASE REVIEW CALENDAR: SET FOR CONTROL 021803
     FCR 031203
     TR 031703
17   02/19/2003                               VAUGHN JAMES T. JR.
     TRIAL CALENDAR/CONTROL:  DEFENDANT SCHEDULED FOR FCR 03/12/03;
     TRIAL 03/17/03
18   02/21/2003
     NOTICE OF SERVICE - DISCOVERY RESPONSE.
19   03/10/2003
     NOTICE OF SERVICE - DISCOVERY RESPONSE.
20   03/11/2003
     SUBPOENA(S) ISSUED.
21   03/12/2003                               RIDGELY HENRY DUPONT

A-2

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    3
                      ( as of  09/02/2004 )
```

State of Delaware v.  MICHAEL DURHAM                          DOB: 10/13/1965
State's Atty: JAMES J KRINER , Esq.         AKA: MICHAEL D DURHAM
Defense Atty: SANDRA W DEAN , Esq.               MICHAEL D DURHAM


```
        Event
No.     Date          Event                            Judge
-----------------------------------------------------------------------------
        FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL 03/17/03.
22      03/17/2003                             VAUGHN JAMES T. JR.
        TRIAL CALENDAR-JURY TRIAL-CONTINUED TO FCR 04/02/03; TRIAL 04/07/03.
        COURT'S REQUEST-LACK OF JUDGES.
23      03/20/2003
        SUBPOENA(S) ISSUED.
24      03/20/2003                             WITHAM WILLIAM L. JR.
        LETTER FROM SANDRA DEAN, ESQ TO JUDGE WITHAM RE: THAT THIS CASE BE THE
        HIGHEST PRIORITY FOR TRIAL ON APRIL 7, 2003.
        APPROVED.
25      04/02/2003                             RIDGELY HENRY DUPONT
        FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL 4/7/03
26      04/07/2003                             WITHAM WILLIAM L. JR.
        TRIAL CALENDAR- WENT TO TRIAL JURY
27      04/10/2003                             RIDGELY HENRY DUPONT
        JURY TRIAL HELD 4/7, 4/8, 4/9, 4/10/03. JURY FOUND THE DEFENDANT NOT
        GUILTY ON IK02-09-0241; 0242. JURY FOUND THE DEFENDANT GUILTY ON
        IK02-11-0118 AND IK02-09-0245. MOTION FOR JUDGMENT OF ACQUITTAL ON
        COUNTS 1,2,3,4,6,7,10,11,12,19 & 20 WERE DENIED. ON COUNTS 14 & 15 THE
        MOTION FOR JUDGMENT OF ACQUITTAL WAS GRANTED.  JURY COULD NOT AGREE ON
        THE REST OF THE CHARGES STILL OPEN. THESE CHARGES ARE RESCHEDULED FOR
        FCR 5/28, TRIAL 6/2/03.  S/J. KRINER  D/S. DEAN  CR/S. DOUGHERTY 4/7
        AND 4/10, CR/V. CLINE 4/8, 4/9 CC/B. HOLCOMB 4/7, 4/8, 4/9, 4/10
        JOSEPH SANCHEZ (BALIFF) SWORN BY CC/B.HOLCOMB ON 4/10/03. HE REPLACED
        MICHAEL NOBLE (BALIFF).
28      04/16/2003                             FREUD ANDREA MAYBEE
        MOTION FOR REDUCTION OF BAIL FILED. FILED BY SANDRA DEAN.
29      04/22/2003
        TRANSCRIPT OF TRIAL FILED.
        APRIL 8, 2003
        VENDITA CLINE, OFFICIAL COURT REPORTER
30      04/24/2003                             FREUD ANDREA MAYBEE
        MOTION FOR REDUCTION OF BAIL DENIED.
31      05/12/2003                             VAUGHN JAMES T. JR.
        CONTINUANCE REQUEST FILED BY SANDRA DEAN, ESQ.; GRANTED BY JUDGE
        VAUGHN; COUNSEL NEEDS TIME TO PREPARE PLOOF; MOVE FCR TO 5/14/03.
        ADDRESS TRIAL DATE AT FCR.
32      05/15/2003
        TRANSCRIPT OF EXCERPT OF TRIAL FILED. (VOL A) (DOUGHERTY)
        (THIS TRANSCRIPT ORIGINALLY DOCKETED UNDER "B" IN ERROR)
33      06/20/2003                             VAUGHN JAMES T. JR.
        CONTINUANCE REQUEST GRANTED BY JUDGE VAUGHN IN OFFICE CONFERENCE DUE
```

A-3

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    4
                        ( as of  09/02/2004 )
```

State of Delaware v.  MICHAEL DURHAM                          DOB: 10/13/1965
State's Atty: JAMES J KRINER , Esq.          AKA: MICHAEL D DURHAM
Defense Atty: SANDRA W DEAN , Esq.                MICHAEL D DURHAM

```
        Event
No.     Date          Event                              Judge
-------------------------------------------------------------------------------
        TO AG BEING IN MURDER TRIAL. NEW DATES: FCR 9/10 TRIAL 9/15/03
34      06/25/2003
        SUBPOENA(S) ISSUED.
35      08/11/2003
        LETTER FROM PARALEGAL OFFICE TO SANDRA W. DEAN, ESQUIRE
        RE:ATTACHED IS A CORRESPONDENCE FROM DEFENDANT.
36      08/29/2003
        SUBPOENA(S) ISSUED.
37      09/10/2003                              RIDGELY HENRY DUPONT
        CASE REVIEW CALENDAR FINAL CASE REVIEW CONTINUED.
        COURT'S REQUEST-SIDEBAR DECISION.
        FCR 10/29, TRIAL 11/04/03.
38      10/16/2003
        SUBPOENA(S) ISSUED.
39      10/29/2003                              VAUGHN JAMES T. JR.
        FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL 11/04/03.
40      11/04/2003                              VAUGHN JAMES T. JR.
        TRIAL CALENDAR-JURY TRIAL-CONTINUED. PROSECUTION REQUEST.
        DAG IN TRIAL.
        FCR 112603
        TR 120103
41      11/14/2003
        SUBPOENA(S) ISSUED.
42      11/26/2003                              VAUGHN JAMES T. JR.
        FINAL CASE REVIEW:  NO PLEA/SET FOR TRIAL
43      12/01/2003                              RIDGELY HENRY DUPONT
        TRIAL CALENDAR- WENT TO TRIAL JURY
44      12/03/2003                              RIDGELY HENRY DUPONT
        CHARGE TO THE JURY FILED.
45      12/04/2003                              RIDGELY HENRY DUPONT
        JURY TRIAL HELD.120103 THROUGH 120403. STATE-J. KRINER, DEFENSE-S.
        DEAN, CR-12-01 J. WASHINGTON,12-02 S. DOUGHERTY, 12-03 C. QUINN, 12-04
        J. WASHINGTON & C. QUINN (VERDICT), CC-M. JORDAN
        JURY FOUND THE DEF GUILTY AS CHARGED EXCEPT ASSAULT 2ND THEY FOUND
        THE DEFENDANT GUILTY OF THE LESSER INCLUDED ASSAULT 3RD.  VERDICT
        TAKEN BY JUDGE VAUGHN AND SENTENCING WAS DEFERRED TO JUDGE RIDGELY.
        DEFENDANT'S BAIL IS REVOKED.
46      12/05/2003                              RIDGELY HENRY DUPONT
        ORDER:A PRESENTENCE INVESTIGATION IS ORDERED IN THIS CASE.  SENTENCING
        IS SCHEDULED FOR FEBRUARY 24, 2004.
47      12/09/2003
        MOTION TO DECLARE DEFENDANT AN HABITUAL OFFENDER FILED BY JAMES KRINER
```

A-4

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page   5
                       ( as of  09/02/2004 )
```

State of Delaware v.  MICHAEL DURHAM                        DOB: 10/13/1965
State's Atty: JAMES J KRINER , Esq.         AKA: MICHAEL D DURHAM
Defense Atty: SANDRA W DEAN , Esq.               MICHAEL D DURHAM

|     | Event |       |       |
|-----|-------|-------|-------|
| No. | Date  | Event | Judge |

--------------------------------------------------------------------------

48  12/11/2003
       MOTION FOR A NEW TRIAL FILED BY SANDRA DEAN, ESQ.
49  12/30/2003                          RIDGELY HENRY DUPONT
       OFFICE CONFERENCE PROCEEDING HELD. EVIDENTIARY HEARING SCHEDULED
       1/9/04 AT 2:30 P.M. SUBPOENAS TO BE ISSUED FOR HEARING TO BETH SAVITZ
       LEROY POORE, WILLIAM MIZELL, JUROR #9, AND DEFENDANT, MICHAEL DURHAM.
       PRESENT AT THE OFFICE CONFERENCE WERE JAMES KRINER/AG  SANDRA DEAN/PD
       SHEILA DOUGHERTY/CR   B. HOLCOMB/CC
50  01/07/2004
       NOLLE PROSEQUI FILED BY ATTORNEY GENERAL, J. KRINER ON IK02-09-0240.
51  01/09/2004                          RIDGELY HENRY DUPONT
       EVIDENTIARY HEARING HELD. DEFENSE AND STATE TO SUBMIT WRITTEN
       ARGUMENTS. DEFENSE BY JAN. 16, 2004, STATE TO RESPONSE BY JAN. 30,
       2004, DEFENSE REPLY BY FEB. 6, 2004.
52  01/14/2004
       DEFENDANT'S LETTER MEMORANDUM FILED IN SUPPORT OF HIS MOTION FOR A
       NEW TRIAL.
53  01/28/2004                          RIDGELY HENRY DUPONT
       TRANSCRIPT FILED OF EVIDENTIARY HEARING - FRIDAY, JANUARY 9, 2004
       BY WASHINGTON
54  01/30/2004
       STATE'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION FOR
       NEW TRIAL. (J. KRINER)
55  03/08/2004                          RIDGELY HENRY DUPONT
       MOTION FOR NEW TRIAL DENIED.
56  03/09/2004                          RIDGELY HENRY DUPONT
       SENTENCING CALENDAR: DEFENDANT SENTENCED.
57  04/28/2004
       MOTION FOR RESENTENCING FILED (S. DEAN).
58  05/13/2004                          RIDGELY HENRY DUPONT
       ORDER: IT IS SO ORDERED THAT THE DEFENDANT MICHAEL DURHAM, BE
       SCHEDULED FOR A RESENTENCING OF HIS CASE.
       NOTE: SCHEDULED FOR 5/25/2004.
59  05/25/2004                          RIDGELY HENRY DUPONT
       SENTENCING CALENDAR: DEFENDANT SENTENCED.
60  05/28/2004
       NOTICE OF APPEAL 227, 2004
61  05/28/2004
       DIRECTIONS TO COURT REPORTER FOR TRANSCRIPT DUE NO LATER THAN 7/8/04.
62  07/02/2004
       TRANSCRIPT OF TRIAL FILED.(VOL B) (S. DOUGHERTY)
63  07/02/2004
```

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    5
                       ( as of  09/02/2004 )

  State of Delaware v.  MICHAEL DURHAM                         DOB: 10/13/1965
  State's Atty: JAMES J KRINER , Esq.        AKA: MICHAEL D DURHAM
  Defense Atty: SANDRA W DEAN , Esq.              MICHAEL D DURHAM


        Event
  No.   Date         Event                              Judge
  --------------------------------------------------------------------------
  48    12/11/2003
        MOTION FOR A NEW TRIAL FILED BY SANDRA DEAN, ESQ.
  49    12/30/2003                           RIDGELY HENRY DUPONT
        OFFICE CONFERENCE PROCEEDING HELD. EVIDENTIARY HEARING SCHEDULED
        1/9/04 AT 2:30 P.M. SUBPOENAS TO BE ISSUED FOR HEARING TO BETH SAVITZ
        LEROY POORE, WILLIAM MIZELL, JUROR #9, AND DEFENDANT, MICHAEL DURHAM.
        PRESENT AT THE OFFICE CONFERENCE WERE JAMES KRINER/AG  SANDRA DEAN/PD
        SHEILA DOUGHERTY/CR   B. HOLCOMB/CC
  50    01/07/2004
        NOLLE PROSEQUI FILED BY ATTORNEY GENERAL, J. KRINER ON IK02-09-0240.
  51    01/09/2004                           RIDGELY HENRY DUPONT
        EVIDENTIARY HEARING HELD. DEFENSE AND STATE TO SUBMIT WRITTEN
        ARGUMENTS. DEFENSE BY JAN. 16, 2004, STATE TO RESPONSE BY JAN. 30,
        2004, DEFENSE REPLY BY FEB. 6, 2004.
  52    01/14/2004
        DEFENDANT'S LETTER MEMORANDUM FILED IN SUPPORT OF HIS MOTION FOR A
        NEW TRIAL.
  53    01/28/2004                           RIDGELY HENRY DUPONT
        TRANSCRIPT FILED OF EVIDENTIARY HEARING - FRIDAY, JANUARY 9, 2004
        BY WASHINGTON
  54    01/30/2004
        STATE'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION FOR
        NEW TRIAL. (J. KRINER)
  55    03/08/2004                           RIDGELY HENRY DUPONT
        MOTION FOR NEW TRIAL DENIED.
  56    03/09/2004                           RIDGELY HENRY DUPONT
        SENTENCING CALENDAR: DEFENDANT SENTENCED.
  57    04/28/2004
        MOTION FOR RESENTENCING FILED (S. DEAN).
  58    05/13/2004                           RIDGELY HENRY DUPONT
        ORDER: IT IS SO ORDERED THAT THE DEFENDANT MICHAEL DURHAM, BE
        SCHEDULED FOR A RESENTENCING OF HIS CASE.
        NOTE: SCHEDULED FOR 5/25/2004.
  59    05/25/2004                           RIDGELY HENRY DUPONT
        SENTENCING CALENDAR: DEFENDANT SENTENCED.
  60    05/28/2004
        NOTICE OF APPEAL 227, 2004
  61    05/28/2004
        DIRECTIONS TO COURT REPORTER FOR TRANSCRIPT DUE NO LATER THAN 7/8/04.
  62    07/02/2004
        TRANSCRIPT OF TRIAL FILED.(VOL B) (S. DOUGHERTY)
  63    07/02/2004
```

A-5

SUPERIOR COURT CRIMINAL DOCKET                    Page    6
( as of  09/02/2004 )

State of Delaware v.  MICHAEL DURHAM                       DOB: 10/13/1965
State's Atty: JAMES J KRINER , Esq.         AKA: MICHAEL D DURHAM
Defense Atty: SANDRA W DEAN , Esq.               MICHAEL D DURHAM

|  No. | Event Date | Event | Judge |
|------|------------|-------|-------|

MOTION FOR APPOINTMENT OF COUNSEL FILED (PRO SE).
64    07/02/2004
- MOTION FOR POSTCONVICTION RELIEF FILED (PRO SE).
65    07/09/2004
LETTER FROM CHRISTINE L. QUINN, COURT REPORTER TO CATHY HOWARD,
SUPREME COURT  RE: EXTENSION TO FILE TRANSCRIPT
66    07/13/2004
LETTER FROM SUPREME COURT TO CHRISTINE L. QUINN
RE: REQUEST FOR EXTENSION GRANTED - TRANSCRIPT IS DUE TO BE FILED NO
LATER THAN AUGUST 9, 2004.●
67    08/06/2004
LETTER FROM CATHY HOWARD, SUPREME COURT, TO JENNIE WASHINGTON, COURT
REPORTER RE: YOUR REQUEST FOR AN EXTENSION OF TIME IS GRANTED.
TRANSCRIPT IS DUE NO LATER THAN SEPTEMBER 8, 2004.
68    08/06/2004
TRANSCRIPT OF VERDICT FILED. VOLUME DD  (C. QUINN)
69    08/06/2004
TRANSCRIPT OF TRIAL FILED - VOLUME C  (C. QUINN)
70    08/06/2004
TRANSCRIPT OF SENTENCING FILED. (C. QUINN)
71    08/09/2004
LETTER FROM JENNIE WASHINGTON, CHIEF COURT REPORTER TO SUPREME COURT
RE: REQUESTING EXTENSION FOR 30 DAYS
72    08/09/2004
LETTER FROM SUPREME COURT TO JENNIE WASHINGTON
RE: EXTENSION OF TIME TO FILE TRANSCRIPT IS GRANTED. TRANSCRIPT DUE
TO BE FILED NO LATER THAN SEPTEMBER 8, 2004.
73    08/16/2004                        VAUGHN JAMES T. JR.
NOTICE OF NON-COMPLIANCE TO RULE 61 (MOTION FOR POSTCONVICTION RELIEF)
SENT TO DEFENDANT. IT IS SO ORDERED 8/13/2004.
74    08/26/2004
TRANSCRIPT OF TRIAL FILED. (VOL A) (WASHINGTON)
75    08/26/2004
TRANSCRIPT OF TRIAL FILED. (VOL D) (WASHINGTON)
76    09/02/2004
LETTER FROM SUPREME COURT STATING RECORD IS DUE NO LATER THAN 9/7/04.

*** END OF DOCKET LISTING AS OF  09/02/2004 ***
PRINTED BY: CSCRMAN

CERTIFIED
AS A TRUE COPY  9/2/04
ATTEST LISA M. LOWMAN, PROTHONOTARY
BY: *Rebecca S. Manchester*

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    6
                        ( as of  09/02/2004 )
```

te of Delaware v.  MICHAEL DURHAM                              DOB: 10/13/1965
te's Atty: JAMES J KRINER , Esq.          AKA: MICHAEL D DURHAM
Defense Atty: SANDRA W DEAN , Esq.             MICHAEL D DURHAM

```
        Event
No.   Date           Event                              Judge
---------------------------------------------------------------------------
      MOTION FOR APPOINTMENT OF COUNSEL FILED (PRO SE).
64    07/02/2004
      MOTION FOR POSTCONVICTION RELIEF FILED (PRO SE).
65    07/09/2004
      LETTER FROM CHRISTINE L. QUINN, COURT REPORTER TO CATHY HOWARD,
      SUPREME COURT  RE: EXTENSION TO FILE TRANSCRIPT
66    07/13/2004
      LETTER FROM SUPREME COURT TO CHRISTINE L. QUINN
      RE: REQUEST FOR EXTENSION GRANTED - TRANSCRIPT IS DUE TO BE FILED NO
      LATER THAN AUGUST 9, 2004.
67    08/06/2004
      LETTER FROM CATHY HOWARD, SUPREME COURT, TO JENNIE WASHINGTON, COURT
      REPORTER RE: YOUR REQUEST FOR AN EXTENSION OF TIME IS GRANTED.
      TRANSCRIPT IS DUE NO LATER THAN SEPTEMBER 8, 2004.
68    08/06/2004
      TRANSCRIPT OF VERDICT FILED. VOLUME DD  (C. QUINN)
69    08/06/2004
      TRANSCRIPT OF TRIAL FILED - VOLUME C  (C. QUINN)
70    08/06/2004
      TRANSCRIPT OF SENTENCING FILED. (C. QUINN)
71    08/09/2004
      LETTER FROM JENNIE WASHINGTON, CHIEF COURT REPORTER TO SUPREME COURT
      RE: REQUESTING EXTENSION FOR 30 DAYS
72    08/09/2004
      LETTER FROM SUPREME COURT TO JENNIE WASHINGTON
      RE: EXTENSION OF TIME TO FILE TRANSCRIPT IS GRANTED. TRANSCRIPT DUE
      TO BE FILED NO LATER THAN SEPTEMBER 8, 2004.
73    08/16/2004                                    VAUGHN JAMES T. JR.
      NOTICE OF NON-COMPLIANCE TO RULE 61 (MOTION FOR POSTCONVICTION RELIEF)
      SENT TO DEFENDANT. IT IS SO ORDERED 8/13/2004.
74    08/26/2004
      TRANSCRIPT OF TRIAL FILED. (VOL A) (WASHINGTON)
75    08/26/2004
      TRANSCRIPT OF TRIAL FILED. (VOL D) (WASHINGTON)
76    09/02/2004
      LETTER FROM SUPREME COURT STATING RECORD IS DUE NO LATER THAN 9/7/04.

           *** END OF DOCKET LISTING AS OF  09/02/2004 ***
                PRINTED BY: CSCRMAN
```

CERTIFIED
AS A TRUE COPY 9/2/04
ATTEST: LISA M. LOWMAN, PROTHONOTARY
BY: Rebecca S. Marchbinle

Ale

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

THE STATE OF DELAWARE              :        ID NO 0208019524(Durham)
                                                    0208019537(Durham)
                                                    ~0208019532(Henry)

        vs.                                :        INDICTMENT BY THE

MICHAEL DURHAM and
QUINTON HENRY                       :        GRAND JURY

        The Grand Jury charges  MICHAEL DURHAM and QUINTON HENRY with the

following offenses:

        COUNT 1                                    IK-02-09-0233(Durham)
                                                    I K-02-10-0196 (Henry)

        POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, a

felony, in violation of Title 11, Section 1447 A of the Delaware Code of 1974, as

amended.

        MICHAEL DURHAM and Quinton Henry on or about the 27th day of August,

2002, in the County of Kent, State of Delaware, did knowingly possess a firearm during

the commission of a felony by possessing a firearm during the commission of Burglary

First Degree as set forth in Count 2 of the Indictment which is herein incorporated by

reference.

A-7

COUNT 2                                    I K-02-09-0235 (Durham)
                                           K-02-10-0194 (Henry)

BURGLARY FIRST DEGREE, a felony, in violation of Title 11, Section 826 of the

Delaware Code of 1974, as amended.

MICHAEL DURHAM and QUINTON HENRY on or about the 27th day of August,

2002, in the County of Kent, State of Delaware, did, knowingly and unlawfully enter

and/or remain in a dwelling at night, located at 34 Heritage Drive, Dover, Delaware, with

the intent to commit the crime of Theft therein, and was armed with a deadly weapon

and did cause physical injury to a person not a participant in the crime.

COUNT 3                                    I K-02-11- 0100 (Durham)
                                           K-02-11- 0112 (Henry)

POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, a

felony, in violation of Title 11, Section 1447 A of the Delaware Code of 1974, as

amended.

MICHAEL DURHAM and Quinton Henry on or about the 27th day of August,

2002, in the County of Kent, State of Delaware, did knowingly possess a firearm during

the commission of a felony by possessing a firearm during the commission of

Attempted Robbery First Degree as set forth in Count 4 of the Indictment which is

herein incorporated by reference.

COUNT 4                                        ΣK-02-09-0234 (Durham)
                                               ζ K-02-10-0195 (Henry)

ATTEMPTED ROBBERY FIRST DEGREE, a felony, in violation of Title 11,

Section 0531 of the Delaware Code of 1974, as amended.

MICHAEL DURHAM and QUINTON HENRY on or about the 27th day of August,

2002, in the County of Kent, State of Delaware, in an attempt to commit theft, did use

force or did threaten to use immediate force upon Michael Taylor to compel him to

deliver up property and when in the course of the commission of the crime he did

display what appeared to be a deadly weapon and did cause physical injury to another

who was not a participant in the crime; and did those acts which, under circumstances

as he believed them to be, was a substantial step in a course of conduct planned to

culminate in the commission of the crime by him.

COUNT 5                                        ΤK-02-09-0236 (Durham)

POSSESSION OF A DEADLY WEAPON BY A PERSON PROHIBITED, a

felony, in violation of Title 11, Section 1448 of the Delaware Code of 1974 as amended.

MICHAEL DURHAM on or about the 27th day of August, 2002, in the County of

Kent, State of Delaware, did knowingly have in his possession a handgun, a deadly

weapon, as defined under 11 Del. C. §222(5) after having pled guilty of the felony of

Carrying a Concealed Deadly Weapon in Cr A .No. 9910024844 in the Superior Court

of the State of Delaware in and for Kent County on December 28, 1999.

A-9

COUNT 6                              I K-02-09-0237(Durham)
                                     I K-02-10-0192 (Henry)

RECKLESS ENDANGERING IN THE FIRST DEGREE, a felony, in violation of

Title 11, Section 0604 of the Delaware Code of 1974, as amended.

MICHAEL DURHAM and QUINTON HENRY on or about the 27th day of August,

2002, in the County of Kent, State of Delaware, did recklessly engage in conduct which

created a substantial risk of death to Michael Taylor by discharging a firearm in his

residence.

COUNT 7                              I K-02-11- 0101  (Durham)
                                     I K-02-11- 0113  (Henry)

POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, a

felony, in violation of Title 11, Section 1447 A of the Delaware Code of 1974, as

amended.

MICHAEL DURHAM and Quinton Henry on or about the 27th day of August,

2002, in the County of Kent, State of Delaware, did knowingly possess a firearm during

the commission of a felony by possessing a firearm during the crime of Reckless

Endangering in the First Degree as set forth in Count 7, incorporated by reference

herein.

A-10

COUNT 8                                IK-02-09-0238 (Durham)
                                       K-02-10-0191 (Henry)

CONSPIRACY SECOND DEGREE, a felony, in violation of Title 11, Section

0512 of the Delaware Code of 1974, as amended.

MICHAEL DURHAM and QUINTON HENRY on or about the 27th day of August,

2002, in the County of Kent, State of Delaware, when intending to promote the

commission of a felony, did agree with each other, to engage in conduct constituting the

felony of Burglary First, and at least one of the conspirators did commit an overt act in

furtherance of said conspiracy, by committing Burglary First as set forth in Count 2 of

this Indictment which is herein incorporated by reference.

COUNT 9                                IK-02-09-0239 (Durham)
                                       I K-02-10-0190 (Henry)

TERRORISTIC THREATENING, a misdemeanor, in violation of Title 11, Section

621 of the Delaware Code of 1974 as amended.

MICHAEL DURHAM and QUINTON HENRY on or about the 27th day of August,

2002, in the County of Kent, State of Delaware, did threaten to commit a crime likely to

result in death or injury to Michael Taylor.

COUNT 10                               IK-02-11-0102 (Durham)
                                       I K-02-11-0101 (Henry)

ASSAULT SECOND DEGREE, a felony, in violation of Title 11, Section 612 of

the Delaware Code of 1974 as amended.

MICHAEL DURHAM and QUINTON HENRY on or about the 27th day of August,

2002, in the County of Kent, State of Delaware, did intentionally or recklessly cause

physical injury to Michael Taylor by striking him about his head with an unknown metal

object.

A11

COUNT 11                              K-02-09-0241(Durham)
                                     K-02-10-0188(Henry)

ENDANGERING THE WELFARE OF A CHILD, a misdemeanor, in violation of

Title 11, Section 1102 of the Delaware Code of 1974 as amended.

MICHAEL DURHAM and QUINTON HENRY on or about the 27th day of August,

2002, in the County of Kent, State of Delaware, did commit the crime of Assault Third

Degree knowing a child less than 18 years of age, was present in the dwelling at the

time.

COUNT 12                             K-02-09-0242 (Durham)
                                     K-02-10-0197 (Henry)

ENDANGERING THE WELFARE OF A CHILD, a misdemeanor, in violation of

Title 11, Section 1102 of the Delaware Code of 1974 as amended.

MICHAEL DURHAM and QUINTON HENRY on or about the 27th day of August,

2002, in the County of Kent, State of Delaware, did commit the crime of Assault Third

Degree knowing a child less than 18 years of age, was present in the dwelling at the

time.

COUNT 13                             K-02-11- 0103 (Durham)
                                     K-02-11- 0115 (Henry)


ENDANGERING THE WELFARE OF A CHILD, a misdemeanor, in violation of

Title 11, Section 1102 of the Delaware Code of 1974 as amended.

MICHAEL DURHAM and QUINTON HENRY on or about the 27th day of August,

2002, in the County of Kent, State of Delaware, did commit the crime of Assault Second

Degree knowing a child less than 18 years of age, was present in the dwelling at the

time.

A-12

COUNT 14

ɪ K-02-11-*꙲* (Durham)
ɪ K-02-11-꙲*7 (Henry)

KIDNAPPING FIRST DEGREE, a felony, in violation of Title 11, Section 783(A), of the Delaware Code of 1974, as amended.

MICHAEL DURHAM and QUINTON HENRY on or about the 27th day of August, 2002, in the County of Kent, State of Delaware, did unlawfully restrain another person to facilitate the commission of a felony, Burglary First Degree, and/or to inflict physical injury upon the victim and did not voluntarily release the victim unharmed prior to trial.

COUNT 15

ɪ K-02-11-*ᵒ105* (Durham)
ɪ K-02-11-*ᵒ116* (Henry)

POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, a felony, in violation of Title 11, Section 1447 A of the Delaware Code of 1974, as amended.

MICHAEL DURHAM and QUINTON HENRY on or about the 27th day of August, 2002, in the County of Kent, State of Delaware, did knowingly possess a firearm during the commission of a felony by possessing a firearm during the of Kidnapping in the First Degree as set forth in Count 15, incorporated by reference herein.

COUNT 16

ɪ K-02-09-0243(Durham)
ɪ K-02-10-0198 (Henry)

CRIMINAL MISCHIEF, a misdemeanor, in violation of Title 11, Section 811 of the Delaware Code of 1974 as amended.,

MICHAEL DURHAM and QUINTON HENRY on or about the 27th day of August, 2002, in the County of Kent, State of Delaware, did intentionally cause damage in an amount less than $1,000.00 to property consisting of a door, lock and jam belonging to another.

A-13

COUNT 17                    ⊏ K-02-11-ᴺᵘⁱ⁸ (Durham)

CRIMINAL TRESPASS IN THE SECOND DEGREE, a misdemeanor, in violation of Title 11, Section0822 of the Delaware Code of 1974, as amended.

MICHAEL DURHAM on or about the 27th day of August, 2002, in the County of Kent, State of Delaware, did, at night, knowingly and unlawfully enter and/or remain in a dwelling, located at 1289 Walker Road, Dover, Delaware.

COUNT 18                    ⊏ K-02-09-0245 (Durham)

OFFENSIVE TOUCHING, a misdemeanor, in violation of Title 11, Section 0601 of the Delaware Code of 1974 as amended.

MICHAEL DURHAM on or about the 27th day of August, 2002, in the County of Kent, State of Delaware, did intentionally touch Felicia Batson either with a member of his body or with any instrument knowing that he was thereby likely to cause offense or alarm to her.

COUNT 19                    ⊐ K-02-11- 0106   (Durham)

AGGRAVATED MENACING, a felony, in violation of Title 11, Section 0602 of the Delaware Code of 1974, as amended.

MICHAEL DURHAM on or about the 27th day of August, 2002, in the County of Kent, State of Delaware, by displaying what appeared to be a deadly weapon, did intentionally place Michael Taylor in fear or imminent physical injury.

A·14



## PUBLIC DEFENDER OF THE STATE OF DELAWARE
### THE SYKES BUILDING
### 45 THE GREEN
### DOVER, DELAWARE 19901

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

SANDRA DEAN
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 739-4476

March 10, 2004

Michael Durham
SBI# 00161286
Delaware Correctional Center
1181 Smyrna Landing Road
Smyrna, DE 19977

RE: State v. Michael Durham ID# 0208019524A

Dear Mr. Durham:

Enclosed please find copies of the following:

1. Your sentencing order.
2. The Judge's Order in the *Motion for New Trial.*
3. Police Report from your case.

A *Notice of Appeal/Directions to the Court Reporter* will be filed with the Delaware Supreme Court sometime in the next few weeks. The Appeal process can take a very long time, however, I will keep you informed along the way.

Very truly yours,

*Sandra W. Dean*

SANDRA W. DEAN, ESQUIRE
Assistant Public Defender

SWD/msc

enc.

A - 15 #

Report 004    08/27/2002    Agency    Dover PD    50-02-020688

## Victim - Suspect/Defendant Relationships (Cont'd)

| Victim 004 TAYLOR, MICHAEL | Suspect/Defendant 001 DURHAM, MICHAEL | Victim Offender Relationship Relationship Undetermined |
| TAYLOR, MICHAEL | Suspect/Defendant 002 HENRY, QUINTON | Victim Offender Relationship Relationship Undetermined |

## Witness Information

| Sequence | Type | Name | | Sex | Race | Age | D.O.B. |
|---|---|---|---|---|---|---|---|
| 01 | Witness | RICHARDSON, CPL | | Unknown | | | |
| Address | | | Employer/School | | | | Work Telephone |
| 02 | Witness | BERNAT, CHAD | | Unknown | | | |
| Address | | | Employer/School | | | | Work Telephone |
| 03 | Witness | TURNER, MARKEE | | Male | Black | | |
| Address | | Home Telephone | Employer/School | | | | Work Telephone |
| 04 | Witness | BERNA, PFC | | Unknown | | | |
| Address | | Home Telephone | Employer/School | | | | Work Telephone |
| 05 | Witness | KNIGHT, PFC | | Unknown | | | |
| Address | | Home Telephone | Employer/School | | | | Work Telephone |
| 06 | Witness | TOLSON, KEENA | | Female | Black | | |
| Address | | Home Telephone | Employer/School | | | | Work Telephone |
| 007 | Witness | BATSON, FELICIA | | Female | Black | | |
| Address | | | Employer/School | | | | Work Telephone |
| 008 | Witness | BECK, NECIA | | Female | White | | |
| Address | | | Employer/School | | | | Work Telephone |

## Investigative Narrative

ON 08/27/2002 WRITER RESPONDED TO THE ABOVE LOCATION TO INVESTIGATE A REPORTED BURGLARY. WRITER LEARNED THAT AT APPROXIMATELY 2130 HRS THE VIC WAS WALKING FROM THE KITCHEN IN HIS RESIDENCE WHEN THE DEFENDANTS DURHAM, HENRY, AND A THIRD UNKNOWN MALE KICKED OPEN HIS FRONT DOOR AND ENTERED HIS RESIDENCE. THE VICTIM STATED THAT THE MEN WERE ARMED WITH A HANDGUN. ONCE INSIDE THE RESIDENCE, THE SUBJECTS CHASED THE VICTIM THROUGH THE KITCHEN, THROUGH THE DINING ROOM, AND UP THE STAIRS TO THE SECOND FLOOR. AS THE VICTIM WAS CLIMBING THE STAIRS, ONE OF THE SUBJECTS FIRED A SHOT AT HIM, BUT MISSED. W 8 BECK WHO LIVES NEXT DOOR TO THE VICTIM HEARD THE SHOT AND REPORTED IT TO DOVER PD. THE ROUND STRUCK ONE OF THE SPINDALS IN THE STAIR CASE, AND LODGED INTO THE WALL OPPOSITE THE BANNISTER. THE SUBJECTS FOLLOWED THE VICTIM TO THE SECOND FLOOR AND INTO THE BEDROOM OF HIS TWO. VICTIMS SONS ALONG WITH THEIR COUSIN MARKEE TURNER WERE HIDING IN THE ROOM . THE SUBJECTS POINTED THE HANDGUN AT THE VICTIMS HEAD AND DEMANDED MONEY. WHEN THE VICTIM DID NOT RESPOND, THE SUBJECTS BEGAN TO STRIKE HIM ABOUT THE HEAD WITH THE PISTOL. THE THREE BOYS MICHAEL TAYLOR 4 YOA AND AJMERE MATHEWS 10 YOA AND MARKEE TURNED 13 YOA WERE PRESENT IN THE ROOM AT THE TIME AND WITNESSED THE INCIDENT. THE VICTIM STATED THAT HE PLEADED WITH THE SUBJECTS NOT TO DO THIS IF FRONT OF HIS KIDS BUT THEY DID NOT STOP. THE VICTIM STATED THAT WHILE THE SUBJECTS WERE BEATING HIM, THEY WERE TELLING HIM THAT THEY WERE GOING TO SHOOT HIM AND KILL HIM. THE VICTIM WENT ON TO STATE THAT HE MANAGED TO FREE HIMSELF AND RUN DOWN THE STAIRS, AND OUT THROUGH THE FRONT DOOR. HE STATED THAT HE WAS YELLING FOR HELP AND HOPED THAT HIS NEIGHBORS WOULD HEAR HIM. WHILE THE VICTIM WAS OUTSIDE THE SUBJECTS EXITED THE HOUSE AND FLED EAST BOUND FROM THE RESIDENCE. OFFICERS ARRIVED ON THE SCENE SHORTLY

Reporting Officer DET HUMPHREY - 33641    Supervisor Approval LESTER D BONEY OJDVLDB Date 09/03/2002 0919

08/28/2002          Dover PD                                    50-02-920688

### Investigative Narrative - Continued

TER THE SUBJECTS LEFT. THE VICTIM IDENTIFIED THE MICHAEL DURHAM AS AS ONE OF HIS ASSAILANTS.
.D PICKED QUINTON HENRY WHO THE VICTIM KNEW AS NUGGET, FROM A PHOTO LINE UP (## 20688-A). THE
.CTIM SUFFERED A CUT TO HIS HEAD AND CONTUSIONS ON HIS SHOULDERS AS A RESULT OF THE BEATING.
.PPROXIMATELY TEN MINUTES AFTER THE SUBJECTS THE SUBJECTS FLED FROM 34 HERITAGE DR. DOVER PD
.CEIVED A REPORT OF SUBJECTS FIGHTING IN LIBERTY COURT. PFC BERNA WAS ONE OF THE FIRST
.FFICERS TO ARRIVE ON THE SCENE. UPON HIS ARRIVAL HE OBSERVED A SUBJECT CARRYING WHAT HE
.LIEVED TO BE A HANDGUN FLEE ALONG THE FIRE LANE IN FRONT OF E BUILDING IN LIBERTY COURT. PFC
.IGHT ALSO OBSERVED THAT SUBJECT WHO WAS ACCOMPANIED BY ANOTHER MALE FORCE THEIR WAY INTO
.-24 LIBERTY COURT. THE TWO SUBJECTS KNOCKED W6 WHO WAS BABY SITTING AT E-24 AND W7 OUT OF
.HEIR WAS AS THEY ENTERED. OFFICERS PURSUED THE SUBJECTS INTO E-24 AND TOOK WARNER HENRY BM 16
.NTO CUSTODY. THEY CONTINUED TO CHECK THE RESIDENCE AND LOCATED MICHAEL DURHAM HIDING IN A
.EDROOM. PFC BERNA LOCATED A 9MM SEMIAUTOMATIC PISTOL IN THE KITCHEN OF E-24. THE WEAPON WAS
.OUND TO BE LOADED AND COCKED. THE WEAPON WAS CLEARED AND ONE 9MM ROUND WAS RECOVERED FROM IT.
.RITER AND DET BERNAT PHOTOGRAPHED THE SCENE AT 34 HERITAGE DR. WRITER RECOVERED 9MM SHELL
.ASING, AND A SPENT ROUND FROM 34 HERITAGE DR. THE SHELL CASING WAS THE SAME MAKE AS THE ROUND
.ECOVERED FROM THE WEAPON FROM E-24. THE PISTOL, THE ROUND RECOVERED FROM IT, THE EMPTY SHELL
.ASING AND THE SPENT ROUND, WERE COLLECTED AND TOT DET VIRDIN FOR COMPARISON BY THE ATF.
.URHAM WAS PROCESSED AND ARRAIGNED AT JP 7. WARRANTS WERE OBTAINED FO R QUINTON HENRY, AND
.ARNER HENRY GAVE A FALSE NAME AND WAS ARRESTED UNDER HIS BROTHERS NAME BRUCHETTE HENRY.
.ARNER HENRY WHO IS 16 YEARS OLD WAS COMMITTED TO DCC AS AN ADULT UNDER THE FALSE NAME WHICH
.E PROVIDED. ON 08 28/02, SBI RAN THE PRINTS AND DISCOVERED THAT THE FINGER PRINTS DID NOT
.ATCH THE NAME THAT THE DEFENDANT PROVIDED. SBI NOTIFIED DOVER PD OF THE IMPERSONATION AND
.RITER NOTIFIED DCC. WARNER HENRY WAS IMMEDIATELY REMOVED FROM DCC AND TRANSPORTED BACK TO
.OVER PD WHERE HE WAS TOT DSP TROOP 3 FOR PENDING CHARGES.  HE WAS COMMITTED TO STEVENSON
.OUSE IN MILFORD IN DEFAULT OF SECURED BOND. HE WAS CHARGED BY WRITER UNDER HIS OWN NAME. FOR
.DDITIONAL INFORMATION ON THE LIBERTY COURT INCIDENT, REFER TO DOVER PD COMPLAINT NUNBER
.0-02-20690.

| Recording Officer DET HUMPHREY - 3864 1 | Supervisor Approval LESTER D BONEY OJDVLDB Date 09/03/2002 0919 | | | |
|---|---|---|---|---|
| Detective Notified | Referred To Dover PD - Victim Services | | | |
| Someone by Factors | Witness | M. O. | Trace Stolen Property | Suspect Named |
| | Suspect Located | Suspect Described | Suspect Identified | Suspect Vehicle Identified | Status Closed |

A-17.#

State of Delaware vs. MICHAEL DURHAM                    Case: 02 08 019524

## Exhibit B

SBI Number: 00161286                           Also Known As: MICHAEL DURHAM
Date of Birth/Age: Oct 13, 1965 36             Sex: Male
Eye Color:                    Hair Color:                Height:        Weight:                Race: Black

Date and Times of Offense: 8/27/2002 at 2140
Location of Offense: 34 Heritage DR - Dover, 19904


Your affiant DET HUMPHREY can truly state that: ON 08/27/2002 WRITER RESPONDED TO THE ABOVE
LOCATION TO INVESTIGATE A REPORTED BURGLARY. WRITER LEARNED THAT AT APPROXIMATELY 2130
HRS THE VIC WAS WALKING FROM HIS KITCHEN IN HIS RESIDENCE WHEN THE DEFENDANTS DURHAM,
HENRY, AND A THIRD UNKNOWN MALE KICKED OPEN HID FRONT DOOR AND ENTERED HIS RESIDENCE
ARMED WITH A HANDGUN. ONCE INSIDE, THE SUBJECTS CHASED HIM THROUGH THE HOUSE AND HE
FLED TO THE SECOND FLOOR. AS THE VICTIM WAS CLIMBING THE STAIRS, THE SUBJECTS FIRED A
SHOT AT HID, BUT MISSED. THE SUBJECTS FOLLOWED THE VICTIM TO THE SECOND FLOOR AND INTO
THE BEDROOM OF HIS TWO SONS. THE SUBJECTS POINTED THE HANDGUN AT THE VICTIMS HEAD AND
DEMANDED MONEY. WHEN THE VIC DID NOT RESPOND, THE SUBJECTS BEGAN TO STRIKE HIM ABOUT
THE HEAD WITH THE PISTOL. THE VICTIMS SONS MICHAEL TAYLOR 4 YOA AND AJMERE MATHEWS 10
YOA WERE PRESENT IN THE ROOM AT THE TIME. THE VICTIM SUFFERED A CUT TO HIS HEAD AND
CONTUSIONS ON HIS SHOULDERS AS A RESULT OF THE BEATING. WHILE THE SUBJECTS WERE
BEATING THE VICTIM, THEY WERE TELLING HIM THAT THEY WERE GOING TO SHOOT HIM AND KILL
HIM. THE SUBJECT DURHAM PLED GUILTY TO CARRYING A CONCEALED DEADLY WEAPON IN THE KENT
COUNTY DELAWARE SUPERIOR COURT ON 12/28/1999, AND THE SUBJECT HENRY PLED GUILTY TO
FORGERY SECOND DEGREE IN THE KENT COUNTY DELAWARE SUPERIOR COURT ON 04/10/2000.

Affiant: DET HUMPHREY (3864) of DOVER PD

| Victims: | Date of Birth | Relationship Victim to Defendant |
| --- | --- | --- |
| MICHAEL TAYLOR 2 | 05/21/1998 | Acquaintance |
| AJMERE MATHEWS | 02/28/1992 | Relationship Undetermined |
| SOCIETY/PUBLIC | | Relationship Undetermined |

*who had the gun? A denies any involvement CO-D Quinton Harris*

*Apprehended next day See other file*

Sworn and subscribed before me this 28th day of August A.D. 2002

Justice/Magistrate/Commissioner/Court Official

A-18 #

NO-CONTACT PROVISIONS/CONDITIONS OF RELEASE/ORDER DURING COMMITMENT
IN LIEU OF BAIL

Case Number: 0208019537

You are ordered to have no contact, direct or indirect with ASHLEY GREEN
FELICIA BATSON (hereinafter the "Alleged Victim"), or with the alleged
victim's property, residence, place of employment, school, church, or at any
other place.

No direct or indirect contact means that you are not to be in the
physical presence of the alleged victim. Also, you cannot send letters,
messages or notes to the alleged victim by mail, other person or otherwise.
You cannot send messages to, or communicate with, the alleged victim by fax,
telephone, or other electronic medium. You cannot send presents, gifts, or
any other object to the alleged victim. You are not to contact the alleged
victim in ANY way. It is a violation of this order if you have anyone, except
your attorney, contact the alleged victim for you.

You will at all times stay 100 or more yards away from the alleged
victim, the alleged victim's residence ., and workplace.

Other: DEF IS NOT TO HAVE CONTACT WITH ANYONE WHO LIVES AT 34 HERITAGE DRIVE
OR ANYONE WHO LIVES AT 1289 WALKER RD.

You understand that, because this is an order of the Court, you cannot
violate this order even if the alleged victim requests, agrees, or contacts
you in violation of this order.

You also understand that if you accidentally come in contact with the
alleged victim in a public place or other setting, it is your duty not to have
any contact and to leave that place immediately.

You also understand that this order must be followed whether you post
bail or are in jail.

This order must be followed until it is changed or withdrawn by this
Court or another Court having jurisdiction, or until the case is ended. If
this order causes you undue hardship, or you wish to modify this order, you
may file a request with the appropriate Court to change or withdraw this
order.

It is so ORDERED.

_____
Justice of the Peace AGNES E PENNELL          August 28, 2002
                                              Date

I CERTIFY THAT I HAVE READ AND UNDERSTOOD THE ABOVE ORDER.

Unable to sign
_____
Defendant MICHAEL DURHAM                      082802
                                              Date

NO-CONTACT PROVISIONS/CONDITIONS OF RELEASE/ORDER DURING COMMITMENT
IN LIEU OF BAIL

Case Number: 0208019524
    You are ordered to have no contact, direct or indirect with MICHAEL
TAYLOR 2 FELICIA BATSON (hereinafter the "Alleged Victim"), or with the
alleged victim's property, residence, place of employment, school, church, or
at any other place.
    No direct or indirect contact means that you are not to be in the
physical presence of the alleged victim. Also, you cannot send letters,
messages or notes to the alleged victim by mail, other person or otherwise.
You cannot send messages to, or communicate with, the alleged victim by fax,
telephone, or other electronic medium. You cannot send presents, gifts, or
any other object to the alleged victim. You are not to contact the alleged
victim in ANY way. It is a violation of this order if you have anyone, except
your attorney, contact the alleged victim for you.

    You will at all times stay 100 or more yards away from the alleged
victim, the alleged victim's residence ., and workplace.

Other: NO CONTACT WITH ANYONE WHO LIVES AT 34 HERITAGE DRIVE OR 1289 WALKER
RD.

    You understand that, because this is an order of the Court, you cannot
violate this order even if the alleged victim requests, agrees, or contacts
you in violation of this order.
    You also understand that if you accidentally come in contact with the
alleged victim in a public place or other setting, it is your duty not to have
any contact and to leave that place immediately.
    You also understand that this order must be followed whether you post
bail or are in jail.
    This order must be followed until it is changed or withdrawn by this
Court or another Court having jurisdiction, or until the case is ended. If
this order causes you undue hardship, or you wish to modify this order, you
may file a request with the appropriate Court to change or withdraw this
order.

It is so ORDERED.

_____          August 28, 2002
Justice of the Peace AGNES E PENNELL             Date

    I CERTIFY THAT I HAVE READ AND UNDERSTAND THE ABOVE ORDER.

unable to sign                            _____
Defendant MICHAEL DURHAM                         Date

CC D

A-20 #

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | * | |
| | * | |
| Plaintiff, | * | IK 02-09-0234 R1, IK 02-11-0100 R1, |
| | * | IK 02-09-0235 R1, IK 02-09-0233 R1, |
| V. | * | IK 02-11-0101R1, IK 02-11-0106 R1, |
| | * | IK 02-11-0102R1, IK 02-09-0238R1, |
| | * | IK 02-11-0103R1, IK 02-09-0243R1, |
| MICHAEL DURHAM, | * | IK 02-09-0245R1, IK 02-11-0118R1 |
| | * | |
| Defendant. | * | |

AFFIDAVIT OF SANDRA W. DEAN, ESQUIRE, IN ANSWER TO:

<u>MOTION FOR POSTCONVICTION RELIEF</u>

1. I am a member of the Delaware Bar, having been admitted on December 13, 1990.

2. This affidavit is being filed pursuant to an Order of Commissioner Andrea Maybee Freud dated May 16, 2005 that I respond to the Defendant's allegations on or before June 22, 2005.

3. The Defendant alleges the following grounds for his assertion of ineffective assistance of Counsel. (It is noted that the Defendant alleges that I was ineffective due to failure to raise objections to "Ground One - Vindictive Prosecution and/or Misconduct" and "Ground Two - Judicial Misconduct and/or Abuse of discretion." Therefore I will answer regarding Grounds One and Two in this Affidavit).

**Ground One:**

In summary, the Defendant asserts that the prosecutor

(a) improperly argued accomplice liability;

(b) "allowed the Defendant and a defense witness to be put in the same cell"; and

(c) permitted "perjured testimony".

A-21 #

DENIED.

(a) The case was largely, based on the allegation that Mr. Durham acted as an accomplice to Quentin Henry and another uncharged person ("Peebo") in committing the crimes charged. An accomplice theory was factually a part of the state's case; the facts were properly presented by the state and disputed by the defense.

(b) Quentin Henry was acquitted in an earlier trial. In this trial, he testified for the defense, admitting his own actions in committing the crimes and testifying that Mr. Durham was not present nor a participant in any way. Unfortunately for Mr. Durham, the jury did not find Mr. Henry credible. (In the trial where Henry was acquitted, one of the police officers was confused in his testimony between Henry and Henry's brother.

Correctional staff in the Courthouse cellblock placed Durham and Henry in the same cell for a brief time. There was no evidence that the prosecutor knew of this before it happened or "allowed it". The correctional officer testified that he did not hear any threats, promises or discussion about testimony between Durham and Henry.

(c) The State presented evidence and testimony which supported their prosecution, and the defense vigorously contested it. The jury made their decision on the truthfulness of the witnesses after hearing both sides and arguments.


Ground Two:

In summary, the Defendant asserts that the Court erred in:

(a) failing to give an unanimity instruction on accomplice liability;

(b) allowing Detective Humphrey to improperly bolster the victim's testimony; and

(c) denying a mistrial due to an inattentive juror.


A-22 #

DENIED.

(a) The Jury was correctly instructed on accomplice liability (jury instructions, pp. 10-11). A specific unanimity instruction is required if one count encompasses two separate incidents, either of which could support a Defendant's conviction for a particular charge. Liu v. State, 628 A.2d 1376 (1993). In the seminal case on this issue, Probst v. State, 547 A.2d 114 (1988), there was an issue as to whether the Defendant's shots or her brother's shots supported the verdict. In Mr. Durham's case, there were no facts which required a unanimity instruction. The Delaware Supreme Court has held that a unanimity instruction is not required in every accomplice case. Probst at 122, and Liu at 1386.

(b) Improper bolstering generally refers to a case where an arresting officer testifies as both a fact and expert witness, potentially increasing the risk that the jury will overestimate the probative value of his own factual testimony. [See: Hardin v. State, 844 A.2d 982 (2004)]. In this case, Detective Humphrey testified regarding his contacts with the victim, Michael Taylor. (Transcript, Vol. B pp 30-43). Humphrey could not remember exactly when he told Taylor that Durham had been arrested. This did not bolster Taylor's testimony. In fact, in closing argument (Vol. C, pp. 73-74) I pointed out to the jury that it was possible that Taylor had learned about Durham's arrest from police and therefore decided to falsely implicate Durham.

(c) The issue of the inattentive juror was the subject of a Defense Motion for a New Trial and it was an issue on appeal to the Delaware Supreme Court.

**Ground Three:**

In summary, the Defendant asserts that I was ineffective due to:

(a) Failure to investigate, take fingerprints, blood samples, or have a police line-up.

A-23 #

(b) Failure to "find other possible witnesses".

(c) Failure to object to admission of the gun into evidence.

DENIED.

(a) The burden is on the State, not the defense, to prove the charges. In closing argument I pointed out to the jury (C-175) that there had been no photo identification whatsoever of Mr. Durham. I also noted (C-175) that the State did not explain or identify blood found on a curtain, nor did the State (C-76) take any fingerprints.

If the defense had attempted to obtain fingerprints or blood testing, there is a likelihood that they would have incriminated Mr. Durham, or that they would have been irrelevant if they belonged to an accomplice. Throughout two trials, the victim positively and steadfastly identified Mr. Durham, whom he knew previously, as one of the perpetrators.

(b) In regard to possible witnesses, attached are:

(1) 09.26.02 interview with Jacqueline Henry, mother of Warner, Bruchette and Quentin. Also interview with Warner Henry.

(2) 04.03.03, State's interview with Warner Henry, related to Warner's plea in an unrelated case.

(3) 06.04.03 interview with Quinton Henry, who later changed his story.

(4) 09.02.03 investigation regarding employment of victim Michael Taylor.

(c) Mr. Durham was arrested in the bedroom of a house where the robbery weapon was found (in the kitchen) otherwise, there were no fingerprints or other evidence linking the gun to Mr. Durham, as I pointed out to the jury. There was no basis to object to the introduction of the gun or bullet fragments or casings found at the scene. Officer Littlefield did not tamper with evidence. He found a bullet fragment or casing on the floor and placed it on a table for Detective Humphrey to


A-24 #

## ACCOMPLICE LIABILITY

A person indicted for committing an offense may be convicted either as a principal for acts which he committed himself or as an accomplice to another person guilty of committing the offense. With respect to the charges of Possession of a Firearm During the Commission of a Felony, four counts, Burglary First Degree, Attempted Robbery First Degree, Reckless Endangering in the First Degree, Terroristic Threatening, Assault Second Degree, Endangering the Welfare of a Child, Criminal Mischief and Aggravated Menacing, the State contends that the defendant may be found guilty either as a principal for acts he committed or as an accomplice if he intended to aid another person in committing some or all of the acts necessary for the commission of the offense. The pertinent section of our Criminal Code is as follows:

> A person is guilty of an offense committed by another person when, intending to promote or facilitate the commission of the offense, the person aids, counsels, or agrees, or attempts to aid the other person in planning or committing it.

So, in order to find the defendant guilty of an offense committed by another person, you must find that all three of the following elements have been proved to your satisfaction beyond a reasonable doubt:

1. Another person committed the offenses charged; namely, Possession of a Firearm During the Commission of a Felony, Burglary First Degree, Attempted Robbery First Degree, Reckless Endangering in the First Degree, Terroristic Threatening, Assault Second Degree, Endangering the Welfare of a Child, Criminal Mischief and Aggravated Menacing as I will explain theses offenses to you.


A - 26 #

2.    The defendant intended to promote or facilitate the commission of the offense. In other words, it was his conscious object or purpose to further or assist the commission of the offense.

3.    The defendant aided, counseled, or agreed or attempted to aid the other person in planning or committing the offense.

It is the law that all persons who join together with a common intent and purpose to commit an unlawful act which, in itself, makes it foreseeable that a crime not specifically agreed upon in advance might be committed, are responsible equally as principals for the commission of such an incidental or consequential crime, whenever the second crime is one in furtherance of or in aid to the originally contemplated unlawful act.

Mere presence at the scene of the crime, without proof beyond a reasonable doubt of these three elements that I have outlined for you, does not support a finding of guilt under this section. You may find the defendant guilty of offenses committed by another person only if you are satisfied beyond a reasonable doubt that the offenses were within the scope of the agreed activity or were reasonably to be expected as incidental to that activity. If you find the defendant was merely present at the scene of the crime and nothing more, you must find that defendant not guilty.

Your verdict must be unanimous. However, should you return a verdict of "guilty" on a charge or a lesser included offense under that charge, your verdict need not be unanimous as to a specific theory of liability as a principal or as an accomplice so long as you unanimously agree as to the defendant's guilt.

11



1    they see him.  It's not something, even in a moment

2    of stress, that a person would not normally notice.

3         Also, in the investigation of the case, we

4    never heard any evidence whatsoever about any photo

5    identification or any photo line-up that was done

6    showing Mr. Taylor photographs with Mr. Durham in

7    there or anything like that.  There was no procedure

8    like that followed at all.

9         Mr. Taylor testified that he knocked on a

10    neighbor's door.  One neighbor testified.  She said

11    he didn't knock on her door.

12         How did blood get on the curtain at the back

13    door?  Mr. Taylor's testimony did not include any

14    reference at all to going out the back door.  He said

15    he ran out the front door, called for help.  He

16    didn't say anything about going near the back door,

17    but yet there was blood on the inside of the curtain

18    at the back sliding door, and it would be reasonable

19    for you to infer, therefore, that Mr. Taylor has not

20    told us the complete story about what happened there

21    that night.

22         For some reason, there is a maroon car.  He

23    never went to the back door.  Michael Durham is

CHRISTINE L. QUINN
OFFICIAL COURT REPORTER

A-28 #



# Memorandum

| | |
|---|---|
| To: | Sandra W. Dean, Esquire |
| CC: | file |
| From: | Robert B. Truitt, Sr., Investigator |
| Date: | September 30, 2002 |
| Subject: | State v. Michael Durham |

ON THURSDAY, 09/26/02, AT 1455 HRS, WRITER CONTACTED JACQUELINE A. HENRY, DOB 09/09/62, 235 S. GOVERNORS BLVD. DOVER, DEL. 19901, 302-734-9905. CONTACT MADE BY PHONE.

JACQUELINE STATES HER SON, BRUCHETTE HENRY, WAS NOT PRESENT WHEN THE POLICE ARRESTED CLIENT. IT WAS HER OTHER SON, WARNER HENRY, DOB 06/03/86. STATES WARNER WAS AWARE THERE WAS WARRANTS FOR HIS ARREST AND HE USED HIS BROTHER'S NAME WHEN THE CLIENT WAS ARRESTED. WARNER WAS ALSO TAKEN INTO CUSTODY AND ARRESTED ON OTHER CHARGES. STATES WARNER IS CURRENTLY IN STEVENSON HOME.

ON MONDAY, 09/30/02, AT 1412 HRS, WRITER INTERVIEWED, WARNER HENRY, DOB 06/03/86. INTERVIEWED BY VIDEO AT STEVENSON HOME.

WARNER STATES HE WAS AT LIBERTY COURT WHEN THE CLIENT WAS ARRESTED. STATES HE WAS OUTSIDE WALKING AROUND WHEN HE OBSERVED CLIENT RUN INTO THE RESIDENCE OF ASHLEY GREEN. STATES HE OBSERVED THE POLICE AND KNEW HE WAS ALSO WANTED AND HE FOLLOWED CLIENT INTO ASHLEY'S RESIDENCE.

STATES THE CLIENT WAS ACTING VERY NERVOUS AND MADE THE STATEMENT THE POLICE ARE COMING TO THE DOOR. THE POLICE CAME AND IDENTIFIED THE CLIENT. STATES HE GAVE THE POLICE THE NAME OF HIS BROTHER, BRUCHETTE, BECAUSE HE KNEW HE WOULD GET ARRESTED.

STATES HE DID NOT SEE THE ROBBERY TAKE PLACE AND HAS NO IDEA WHO WAS PRESENT WHEN THE ROBBERY WAS COMMITTED. STATES CLIENT AND HIS OTHER BROTHER, QUINTON HENRY WERE ARRESTED FOR THE ROBBERY. STATES HE HAS NO KNOWLEDGE IF THEY DID IN FACT COMMIT THE ROBBERY.

A-29. #



M. JANE BRADY
ATTORNEY GENERAL

**STATE OF DELAWARE**
DEPARTMENT OF JUSTICE

NEW CASTLE COUNTY
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

KENT COUNTY
102 West Water Street
Dover, DE 19901
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

SUSSEX COUNTY
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-2500

KENT COUNTY

PLEASE REPLY TO:

April 3, 2003

Sandra Dean, Esq.
Assistant Public Defender's Office
45 The Green
Dover, DE 19904

Thomas Donovan, Esq.
313 S. State Street
Dover, DE 19904

    RE:   State v. Michael Durham   I.D. No.  0208019524
           State v. Quinton Henry     I.D. No.  0208019532

Dear Sandy and Tom:

    On Friday, April 4, 2003, Detective Glenn Virdin and I interviewed the above captioned witness. In summary, the witness advised us that he was present in the Liberty Court in front of "E" building. He observed Michael Durham in the parking lot with a gun. He observed Durham point the gun at the person and then strike that person in the head. When the police arrived he told Durham to follow him into an apartment. The witness also advised that he spoke to his brother and corresponded with his brother during the pendency of the charges.

    I am attaching hereto a copy of the plea agreement between the witness and the State.

                        Sincerely,

                        JAMES KRINER
                        Deputy Attorney General

JK/sb

c: file

A-30 #

Superior Court of the State of Delaware, _____Kent_____ County

## PLEA AGREEMENT

State of Delaware v. _Warner A. Henry_
0208021182
Case No(s): _0207014583_   Cr.A.#s:   _IN02-09-0724 +$$$ 0727_
_IN02-09-0728 +$$ 0731_

☐ Title 11HAB. OFFENDER _____     ☐ BOOT CAMP ELIGIBLE    ☒ INELIGIBLE
☐ RULE 11(e)(1)(C) — If out of guideline, reason is as follows: _____
☐ Title 11, § 4336, sex offender notification required    ☐ Title 11, §9019(e), forensic fine ☐ $100(F), ☐ $50(M)

Defendant will plead guilty to:

| Count | Cr.A.# | Charge | [LIO if applicable] |
|---|---|---|---|
| 1 | IN02-09-0728 | Trafficking (cocaine (5-50 grams) | |
| 2 | IN02-09-0730 | Conspiracy 2° | |
| 3 | IN02-09-0724 | Crim. of Trespass 1° (LIO) | |

12/17/02 Upon the sentencing of the defendant, a **noile prosequi** is entered on ☐ the following charges/☒ all remaining
PG.   charges on this indictment:
J. with
Event.

| Count | Cr.A# | Charge |
|---|---|---|
| | | |
| | | |
| | | |

SW

Sentence Recommendation/Agreement:    ☐ PSI    ☒ Immediate Sentencing
1. L-X 10 yrs., susp. afte 5 yrs. for 2 yrs. L-III  1 yr. L-II - 0728
2. L-X, 2 yrs., susp for 1 yr L-I Conspiracy to above - 0730
3. L-I, 1 yr., susp for 1 yr L-I comprehve to above - 0724
The parties stipulate that D is returnable to prosecution in Family Court, a will be prosecuted as an adult in Superior Court.
State and Defendant agree to the following:
☒ Restitution: To victims of all charged offer prosi amount to be submitted by AG w/in 60 days.
☐ No _____ contact w/ _____
☒ Other Conditions:
- The S. the will NP pending charges in Family Court (Case no. 0110004641). The D will make pro-rata restitution (if any) to the owner of the car theft case.
- The D will give a truthful statement comprising the circumstances of these offenses and will testify truthfully @ the trial(s) of his co-D's. If D provides substantial assistance in the conviction of co-D's, the 1st L'ted there a motion seeking to have D's prison sentence reduced to 2 years. The decision whether to file their motion is solely within the discretion of the State

DAG: _Steve Welch_                 DEF. COUNSEL: _BEN SCHWARTZ_
_____PRINT NAME_____            _____PRINT NAME_____
_____SIGNATURE_____             _____SIGNATURE_____

DEFENDANT: _Warner Henry_

Date: _12/17/02_

A-31.#

XC: Attorney for Defendant, Defendant                    Page _1_ of _1_

```
To:          Sandra W. Dean@Kent@Pub_Defender
From:        Robert B. Truitt@Kent@Pub_Defender
Certify:     Y
Priority:    Normal
Subject:     Client Michael Durham
Date:        Wednesday, June 4, 2003 at 11:58:00 am EDT
Attached:    None
```

Sandy,

On Wednesday, 06/04/03, at 0915 hrs, I interviewed Quinton Henry, via videophone at DCC. Quinton stated he would talk to me without Tom Donovan being present.  Quinton states he was not at Michael's residence on August 27th, 2002, and he does not know if Michael was there.

Bob


CONFIDENTIALITY NOTICE
THIS ELECTRONIC MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL AND IS
INTENDED ONLY FOR THE REVIEW OF THE PARTY TO WHOM IT IS ADDRESSED.  IF YOU
HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY RETURN IT TO THE
SENDER.  UNINTENDED TRANSMISSION SHALL NOT CONSTITUTE WAIVER OF THE
ATTORNEY-CLIENT OR ANY OTHER PRIVILEGE.

Robert B. Truitt
via HappyMail!

A-32 #

```
To:          Sandra W. Dean@Kent@Pub_Defender
From:        Robert B. Truitt@Kent@Pub_Defender
Certify:     Y
Priority:    Normal
Subject:     re: Michael Durham
Date:        Wednesday, September 3, 2003 at 3:36:00 pm EDT
Attached:    None
```

Sandy,

On Tuesday, 09/02/03, at 1315 hrs, writer called Tanya, 302-736-0727. A message was left in th voice mail for Tanya to call writer.
On Tuesday, 09/02/03, at 1345 hrs, writer called Dover PD to obtain the address of Reflections located on Lockerman St. Writer was advised the business name Reflections did not appear in thier data base.
On Tuesday, 09/02/03, at 1435 hrs, writer responded to Jarid's Barber Shop located at the intersection of Lockerman and Queen Sts. Writer requested to speak with the owner and was directed to go to the second floor shop and ask for Jimmy. Writer responded to the second floor and asked for Jimmy. Jimmy was not know in that shop. Writer did speak with one of the barbers and learned that Mark Williams owned the barber shop. Writer was given cell# 302-339-7011 for Mark Williams. On Tuesday, 09/02/03, at 1445 hrs, writer visited a clothing store next to Jarid's Barber Shop. Writer was advsied this shop used to be Reflections and was owned by Mark Williams at that time. Writer was advised Reflections had been out of business for several months. On Tuesday, 09/02/03, at 1510 hrs, writer spoke with Mark Williams. Mark advised he used to own Reflections and sold the business to his cousin a few months ago. Mark advised his brother, Mike Taylor, used to work for him at Reflections, six days a week, from 1700 to 2200 hrs. Mark advised when Mike was working at Reflections during the evenings, Mike was also doing construction work in the daytime. Mark does not know the name of the construction company and was not familiar with the name Ron and Maags. Mark states Reflections was closed for approximately one month in the fall of 2002. States he thinks it was in November because it was cold outside. Mark states that Abdul Karim (Jarid) owns Jarid's Barber Shop, ph#302-736-0508. On Tuesday, 09/02/03, at 1600 hrs, writer phoned Jarid's Shop and spoke with Jarid. Jarid was reluctant to talk with writer and stated he did not know very much about Mike Taylor and knew very little about the business Reflections and does not remember when it was closed. Jarid is not familiar with the construction company Ron and Maags. On Wednesday, 09/03/03, at 1420 hrs, writer checked Deljis nickname file for the nickname Peebo. No match found for this name.


Bob
- - - - - - - - - - - - - - - - Original Message - - - - - - - - - - - - - - - -
At the first trial, victim Michael Taylor testified that in August 2002 he was working for his brother at brother's store, "Reflections" on Loockerman Street, and that in April 2003 he was working for "Ron and Maags Incorporated" renovating houses. Taylor's credibility is the issue in a retrial scheduled for September 15. Please contact Reflections and ask them for the dates in summer of 2002 when they were closed - we know it was for a month or more. Also ask if Taylor was employed there. Also, please visit the barber shop next door (owned by Durham's cousin) and ask them the same questions about Reflections. Finally, call Durham's niece, Tanya, 736-0727 she has been "investigating" the Reflections question. Can we locate Ron and Maags, and verify Taylor's employment? Finally, a participant in the robbery was an unknown black male, nickname "Peebo". Please check the list of street names for this individual? Thanks !
Sandra W. Dean
via HappyMail!CONFIDENTIALITY NOTICE
THIS ELECTRONIC MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL AND IS INTENDED ONLY FOR THE REVIEW OF THE PARTY TO WHOM IT IS ADDRESSED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY RETURN IT TO THE SENDER. UNINTENDED TRANSMISSION SHALL NOT CONSTITUTE WAIVER OF THE ATTORNEY-CLIENT OR ANY OTHER PRIVILEGE.
CONFIDENTIALITY NOTICE
THIS ELECTRONIC MAIL TRANSMISSION IS PRIVILEGED AND CONFIDENTIAL AND IS IN
- - - - - - - - - - - - - - End of Original Message - - - - - - - - - - - - - -



IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | * | |
| | * | |
| Plaintiff, | * | IK 02-09-0234 R1, IK 02-11-0100 R1, |
| | * | IK 02-09-0235 R1, IK 02-09-0233 R1, |
| V. | * | IK 02-11-0101R1, IK 02-11-0106 R1, |
| | * | IK 02-11-0102R1, IK 02-09-0238R1, |
| | * | IK 02-11-0103R1, IK 02-09-0243R1, |
| MICHAEL DURHAM, | * | IK 02-09-0245R1, IK 02-11-0118R1 |
| | * | |
| Defendant. | * | |

## CERTIFICATE OF SERVICE

BE IT REMEMBERED that on this __9__ day of June, 2005, personally appeared before me,

a Notary Public for the State of Delaware, County of Kent, Marla S. Carter, a Paralegal, employed

in the Office of the Public Defender, The Sykes Building, 45 The Green, Dover, Delaware 19901,

who being by me duly sworn did depose and state as follows:

1.  That she caused to be placed in the United States Mail, two (2) copies of the Affidavit of

Sandra W. Dean, Esquire in Answer to: Motion For Postconviction Relief, in the above-captioned

matter to Michael Durham, Delaware Correctional Center, Smyrna, Delaware.

Marla S. Carter

SWORN TO AND SUBSCRIBED by me the date and year aforesaid.

Sandra W. Dean

Notary Public/ Attorney At Law

ATTORNEY AT LAW
WITH POWER TO ACT
AS NOTARY PUBLIC
PER 29 DEL C 4323 (a) (3)

A-34. #

M. JANE BRADY
ATTORNEY GENERAL



# STATE OF DELAWARE
## DEPARTMENT OF JUSTICE

**NEW CASTLE COUNTY**
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630
TTY: (302) 577-5783

**KENT COUNTY**
102 West Water Street
Dover, DE 19901
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652
TTY: (302) 739-1545

**SUSSEX COUNTY**
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369
TTY: (302) 856-4698

PLEASE REPLY TO :          New Castle County - Criminal Division

September 1, 2005

Commissioner Andrea Maybee Freud
Kent County Courthouse
Superior Court Judges Chambers
38 The Green
Dover DE 19901

> **RE:   State of Delaware v. Michael Durham**
> **Case #0208019524**

Dear Commissioner Freud:

I am enclosing herewith a copy of the State's Memorandum of Law in Opposition to Motion for Post Conviction Relief Pursuant to Rule 61 in the above captioned case.

Sincerely yours,

James Kriner

-- James Kriner
Deputy Attorney General

:sas
cc:    Michael Durham
Sandra Dean, Esquire

A -36 #

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| V. | ) | ID # 0208019524 |
| | ) | |
| MICHAEL DURHAM | ) | |

## *STATE'S MEMORANDUM OF LAW IN OPPPOSITION TO MOTION FOR POST CONVICTION RELIEF PURSUANT TO RULE 61*

### *STATEMENT OF FACTS*

On August 27, 2002, Michael Taylor was at home with three young children when three men forced their way into his home. The men chased and assaulted him. Taylor attempted to escape by running to the second floor. As Taylor ascended the steps, one of the men shot at him. The three men followed him to a second floor bedroom where they struck him in the head with a pistol and demanded money from him. Taylor managed to escape from the men by running out of his house. Police were summoned to the residence but the three men fled before the police arrived.

Taylor suffered multiple abrasions and contusions. However, he was able to identify his attackers as Michael Durham, Quentin Henry and a man he knew only as "Peebo." Police noticed that Taylor's front door had been forced open and the frame was damaged. The police recovered a bullet lodged in the wall of Taylor's residence and a shell casing on the floor.

A-37.#

Michael Durham (the "Movant") was arrested less than an hour after the incident less than a half mile away. Police located a semi-automatic handgun in close proximity to the Movant. A ballistics expert examined the handgun and matched it to the ballistics evidence recovered from Taylor's residence.

## *STANDARD OF REVIEW*

In reviewing a Motion for Post Conviction Relief pursuant to Superior Court Criminal Rule 61, the Court must first determine whether the claim is procedurally barred under Rule 61(i). Under certain circumstances, however, claims that may otherwise be procedurally barred may be still considered by the Court. See Superior Court Criminal Rule 61. An allegation of ineffective assistance of counsel is generally not subject to procedural default rule. See State v. Denston. No. IN99-05-1368, 2003 W.L. 22293651 at *3 (Del. Super. Oct. 2, 2003.). In cases alleging ineffective assistance of counsel, a Movant must show that counsel's conduct fell below an objective standard of reasonableness and that, but for counsel's unprofessional conduct, the result at trial would have been different. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Conclusory allegations of unprofessional conduct are insufficient to support a motion for post conviction relief. Younger v. State, 580 A.2d 552, 555 (Del. 1990). A defendant must support his claim of ineffective assistance with concrete allegations of prejudice. Id. at 556. "[I]t is the defendant's burden to show, under the totality of the circumstances, that counsel was so incompetent that the accused was not afforded genuine and effective legal representation." Denston, 2003 W.L. 22293651, at *4. This burden is not easily met since there is a strong presumption that an attorney's conduct was professionally reasonable. Strickland, 466 U.S. at

2

A-38.

689. It is under this framework that a court must evaluate the Movant's motion for post conviction relief in this case.

## *ANALYSIS*

## I.    **VINDICTIVE PROSECUTION OR PROSECUTORIAL MISCONDUCT**

The Movant urges the Court to grant post-conviction relief because he claims the prosecutor engaged in vindictive prosecution or prosecutorial misconduct.  He alleges that the prosecutor violated his right to a fair trial by advancing a theory of accomplice liability; allowing a defense witness to be placed in the same holding cell during the trial; and presenting perjured testimony.  It is clear that there was no vindictive prosecution.  Vindictive prosecution arises in situations where a defendant on retrial, following a successful appeal, was subjected to a harsher sentence by the court, or is charged with more serious charges.  State v. Wharton, 1991 W.L. 138417, at *10 (Del. Super. June 3, 1991).   The claim of prosecutorial misconduct is procedurally barred because Movant failed to raise the claim prior to conviction or on appeal.  See Superior Court Criminal Rule 61(i)(2) and (3).  The Movant requested a mistrial prior to the verdict, filed a motion for a new trial after the verdict, and appealed the verdict to the Delaware Supreme Court.  Movant fails to demonstrate any cause for relief from the procedural default. Accordingly, the claims are procedurally barred and must be denied.

Even assuming the claims are not procedurally barred, the claims lack merit.

### A.    Accomplice Liability

Movant alleges that his rights were violated when the prosecutor advanced a theory of accomplice liability.  A person may be held liable for the conduct of another when he [a]ids,

3

A-39.

counsels or agrees or attempts to aid the other person in planning or committing it." Del Code Ann. tit. 11 §271. The evidence supported a theory of accomplice liability. Trial counsel agrees. The trial judge agreed and instructed the jury on accomplice liability. The Movant's assertion is simply without merit.

### B.    Defendant and Defense Witness Were Placed In Same Holding Cell

The Movant alleges that his rights were violated when the Department of Correction placed his co-defendant, Quentin Henry, in the same holding cell during trial. He implies that the prosecutor had something to do with the placement. The allegation is not supported by any evidence in the record. Moreover, there is no logical reason a prosecutor would knowingly allow a defense witness to share a cell with a defendant during a trial. The situation allows for collaboration and intimidation which does not benefit the State. Therefore, the Movant's claim is without merit.

### C.    Perjured Testimony

Movant argues that the prosecutor violated his rights by permitting Detective Humphrey to give perjured testimony. It is not clear what testimony is allegedly perjured or how the prosecutor knowingly permitted perjured testimony. There is no evidence that the witness gave perjured testimony and there is not evidence the prosecutor permitted any witness to give perjured testimony. Therefore, this claim is without merit.

## II.    JUDICIAL MISCONDUCT

The Movant argues that he is entitled to post conviction relief because the trial judge engaged in misconduct and committed error. Specifically, he alleges the trial judge improperly instructed the jury on accomplice liability; he allowed improper bolstering of the State's witness;

A-40:#

4

he committed error by not granting the Movant's motion for new trial due to ineffectiveness; and failed to give the jury specific unanimity instruction. The claims by Movant are procedurally barred because Movant failed to raise all but one of the claims prior to conviction or after conviction. See Superior Court Criminal Rule 61(i)(2) and (3). The claim that the trial judge erred in failing to grant a motion for new trial due to juror inattentiveness is also procedurally barred and will be addressed below.

Even if the claims were not procedurally barred, they are without merit for the reasons set forth below.

### A.    Accomplice Liability

The Movant claims that the trial judge violated his rights by instructing them on accomplice liability. As noted above, an accomplice liability instruction was justified based on the facts of the case. The record evidence supported the instruction. A trial court should instruct a jury on accomplice liability provided the instruction is supported by the evidence and correctly states the law. Zimmerman v. State, 565 A.2d 887, 890 (Del. 1989). The trial judge appropriately instructed the jury on accomplice liability. Therefore, the claim is without merit.

### B.    Improper Bolstering

The Movant argues that the trial judge "allowed improper bolstering of state's witnesses through testimony at trial." It is unclear what specific improper bolstering took place and how it violated his constitutional rights. The Movant has failed to set forth a cognizable legal claim.

### C.    Inattentive Juror

Movant argues that he is entitled to post conviction relief because the trial judge erroneously denied Movant a new trial due to juror inattentiveness. This claim is procedurally

5

A-41.#

barred because it was previously raised in Movant's motion for new trial and on appeal. Any ground for relief that was formerly adjudicated in an appeal or post conviction proceeding is thereafter barred. Superior Court Criminal Rule 61(i)(4). The trial judge reviewed this claim in a motion for new trial and denied it. See State v. Durham, 2004 W.L. 440219 (Del. Super. March 8, 2004). The Movant appealed the conviction to the Delaware Supreme Court. Durham v. State, 867 A.2d 176(Del. 2005). The Delaware Supreme Court affirmed the decision and commended the trial judge for his action. Id. at 181. The claim is also without merit for the reason set forth in the trial judge's opinion since there was no evidence of actual prejudice or circumstances so egregious and inherently prejudicial which raise a presumption of prejudice. State v. Durham, 2004 W.L. 440219, at *1. Therefore, the Movant's claim must be denied.

## D.    Unanimity Instruction

The Movant asserts that the trial judge erred in failing to give a specific unanimity instruction in this case. It is not entirely clear why the Movant believes he was entitled to a specific unanimity instruction. Neither the State, trial counsel nor the trial judge believed he was entitled to a specific unanimity instruction. A specific unanimity instruction is not required in every case where a defendant may be convicted as a principal or accomplice. Ayers v. State, 844 A.2d 304, 309 (Del. 2004); Lice v. State, 628 A.2d 1376, 1386 (Del. 1993); Probst v. State, 547 A.2d 114, 122 (Del. 1988). A specific unanimity instruction is only required if one count encompasses two separate incidents either of which could support a defendant's conviction for a particular charge. Ayers, 844 A.2d at 309. In the Movant's case, the evidence showed that there was a single incident that formed the basis of the charges. C.f. Probst v. State, 547 A.2d 114 (Del. 1988). Therefore, a specific unanimity instruction was not warranted.

A-42 #

6

## III.   Ineffective Assistance of Counsel

The Movant argues that he is entitled to post conviction relief because trial counsel was ineffective.  He alleges that trial counsel failed to adequately conduct a pretrial investigation and failed to object to the admission of the handgun into evidence.  The Movant is unable to satisfy either prong of Strickland.

### A.   Pretrial Investigation

The Movant asserts that "counselor may have found other possible witnesses whom may perhaps give different accounts. ..."  Movant does not state who the witnesses were or how they would have changed the outcome in the case. Conclusory allegations of unprofessional conduct are insufficient to support a motion for post conviction relief.  Younger v. State, 580 A.2d 552, 555 (Del. 1990).  Moreover, in her affidavit trial counsel provided a list of witnesses she spoke to and the results of the interviews.

Movant also asserts that trial counsel failed to conduct an investigation with respect to blood, fingerprints and a photographic line up.  The Movant does not indicate how this was deficient, or how a proper investigation would have resulted in his acquittal.  The Dover Police did not collect blood evidence from the victims' house.  The police did not recover any latent fingerprints.  The police did not create a photo lineup with the Movant because the victim knew him and identified him by name.  Trial counsel responds that if defense counsel attempted to obtain fingerprints "there is likelihood that they would have incriminated Mr. Durham or they would have been irrelevant if they belonged to an accomplice."  Fingerprint or blood evidence recovered from the crime scene wouldn't have exculpated the Movant since he committed the crime with two other men, one of whom was unknown to the police.

7

## B.    Failure to Object to Evidence

Movant argues that trial counsel failed to object to the admission of a handgun and a shell casing. The handgun was recovered from the apartment where the Movant was arrested shortly after the home invasion. A ballistics expert matched the gun to evidence recovered from the scene of the home invasion. There was no legitimate basis to object to the admission of the gun. There was also no legitimate basis to object to the admission of the shell casing recovered from the crime scene. Sgt. Littlefield located the shell casing on the floor of the residence when he arrived. He testified he picked it up and placed it on a table so that it would not be lost. There was no evidence that the casing was tampered with or that its evidentiary value was compromised. The Movant does not advance a legal basis that trial counsel may have relied upon to object to these items. The State suggests that none exists.

The Movant fails to satisfy his burden under Strickland. His allegations of unprofessional conduct are not grounded in fact or law. It is evident that trial counsel conducted a thorough pretrial investigation. Even the Movant is unable to suggest what she could have done differently in her representation of him. It is also clear that there was no legal basis to object to the admission of the handgun or shell casing. The Movant fails to state what legal basis counsel should have used to object to the evidence; this is so because no basis existed. The gun and the casing were properly seized and highly probative of the Movant's guilt.

## IV.    DOUBLE JEOPARDY

The Movant argues that he is entitled to post conviction relief because he was convicted in violation of the Double Jeopardy clause. This claim is procedurally barred because the Movant failed to raise the issue prior to his conviction or on appeal. See Superior Court Criminal Rule 61(i)(2) and (3).

8

A-44 #

Even assuming the claim was not procedurally barred, the claim is without merit. The Movant was indicted on four separate counts of Possession of a Firearm During the Commission of a Felony related to Robbery First, Burglary First, Reckless Endangering First and Kidnapping First. During the first trial, the defense successfully argued a motion for judgment of acquittal on Kidnapping First. Accordingly, the Court dismissed the related Possession of a Firearm During the Commission of a Felony charge. However, the Court did not disturb the three remaining Possession of a Firearm During the Commission of a Felony charges. These charges were separate and distinct from the charge that was dismissed. The Movant's claim that he was convicted of a crime for which he was previously acquitted is factually inaccurate.

## *CONCLUSION*

The Movant is not entitled to post conviction relief. His claims that there was prosecutorial misconduct, judicial misconduct, and that he was convicted in violation of the Double Jeopardy Clause are procedurally barred. Even if the claims were not procedurally barred they lack merit. The Movant is also not entitled to relief based on ineffective assistance of counsel because he is unable to satisfy either prong of Strickland. Therefore, the State respectfully requests that the Motion be denied.

James Kriner
Deputy Attorney General
Carvel State Building, 7th Floor
820 N. French Street
Wilmington, De 19801

9

A-45.

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

|  |  |  |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | ID # 0208019524 |
| | ) | |
| MICHAEL DURHAM | ) | |

### NOTICE OF MAILING

BE IT REMEMBERED on this 1st day of September, 2005, I, Sandra Schock,

Secretary for the Department of Justice, did cause to be delivered via United States mail two

(2) true and correct copies of the State's Memorandum of Law in Opposition to Motion for

Post Conviction Relief Pursuant to Rule 61 to:

      MICHAEL DURHAM, SBI No: 00161286
      DEPARTMENT OF CORRECTION
      1181 PADDOCK ROAD
      SMYRNA DE 19977

                                      _____
                                        Sandra Schock
                                        Department of Justice

DATED:      September 1, 2005
:sas

A-46.

# Office of Disciplinary Counsel
SUPREME COURT OF THE STATE OF DELAWARE

200 West Ninth Street
Suite 300-A
Wilmington, Delaware 19801
(302) 577-7042
(302) 577-7048 (FAX)

MARY M. JOHNSTON
Chief Counsel

ANDREA L. ROCANELLI
MICHAEL S. McGINNISS
MARY SUSAN MUCH
Disciplinary Counsel

October 14, 2003

CONFIDENTIAL
Mr. Mike D. Durham (#161286)
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Re:    Disciplinary Complaint

Dear Mr. Durham:

We received your letter dated October 5, 2003, regarding Sandra W. Dean, Esquire, the public defender representing you in your criminal matter. If you wish to file a disciplinary complaint against Ms. Dean, please complete and return the enclosed complaint form, providing the specific details of your complaint.

For your general information, please be advised that this Office is not a court of law. Rather, this Office evaluates and investigates complaints that allege violations of the Delaware Lawyers' Rules of Professional Conduct. We have no authority to vacate a conviction, reduce a sentence, appoint counsel to represent a defendant or grant any other type of substantive relief. This Office cannot offer you legal advice, nor can we intervene in a criminal proceeding for any reason. We cannot take any action on your behalf in your criminal matter.

Please also be aware that this Office does not adjudicate a criminal defendant's claims of ineffective assistance of counsel or prosecutorial misconduct. Where a complaint filed with this Office relates to such allegations, it is usual for this Office to send the complaint to the criminal defense attorney or the prosecuting attorney, as well as that attorney's supervisor, for appropriate action. This Office does not conduct a disciplinary evaluation or investigation for such complaints because this Office has no jurisdiction to affect a criminal matter. Pretrial and postconviction remedies are available to the criminal defendant for that purpose.

Sincerely,

Margot R. Millar

Margot R. Millar
Administration

/mrm
Enclosure

A-47.#

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

*Hearing 1-9-04*

STATE OF DELAWARE      \*
                              \*

       v.                  \*

                              \*      ID# 0208019524 A

                              \*

MICHAEL DURHAM,       \*
                              \*

Defendant.                \*
                              \*

## MOTION FOR NEW TRIAL

COMES NOW, the defendant Michael Durham by and through his attorney, Sandra W. Dean, Esquire, who pursuant to Superior Court Rule 33, moves this Honorable Court to grant him a New Trial. In support of his Motion, he avers as follows:

1. During jury deliberations, the Defendant and others brought to the attention of Counsel that Juror Number Nine was inattentive, dozing or sleeping during the Trial.

2. This was observed by at least three observers present in the Courtroom.

     a. An Affidavit is attached from William A. Mizell, a Courtroom observer.

     b. Beth Savitz, Esquire was in the Courtroom and will submit an Affidavit when she returns from vacation.

     c. Leroy Poore, a Correctional Officer in the Courtroom, told Defense Counsel that the Juror was "not attentive and was nodding in and out". The statement was immediately recorded verbatim in Counsel's notes. Mr. Poore now denies this in his attached Affidavit.

3. Every Defendant has the right to a fair Trial and due process of law. This includes the right to a jury whose members are all alert and attentive.

*A-48#*

WHEREFORE, in the interests of justice, the Defendant requests that the Court grant him

a new trial.

*Sandra W. Dean*

SANDRA W. DEAN, ESQUIRE
Assistant Public Defender
Office of the Public Defender
The Sykes Building
45 The Green
Dover, DE 19901

A-49.#

STATE OF DELAWARE        *
                         *   SS:
COUNTY OF KENT           *

       BE IT REMEMBERED that on this 5th day of December, 2003, personally appeared before me, a Notary Public for the State and County aforesaid, WILLIAM A. MIZELL of 93 Orchard Avenue, Dover, Delaware, a credible person, known to me to be such, and who by me being duly sworn according to law did depose and say as follows:

       1.   I was present for most of the trial of Michael Durham this week in Kent County Superior Court.

       2.   I observed a juror, a black female in the front row in the jury box, dozing off on several occasions during the trial.

       3.   On Monday, December 1, I noticed that during the trial, the juror's eyes would close and then she would catch herself and open her eyes, and come back to attention.

       4.   I also observed her dozing on Wednesday, December 3.

       5.   During the reading of the jury instructions, it was obvious that she was struggling to stay awake. Her eyes would close, flutter open, then close again, then flutter open again. I could tell she was fighting sleep. I did not count the number of times this happened, but I can estimate that it was four times.

       6.   Also, during Mr. Kriner's closing statement she was dozing. It happened twice that I am sure of, possibly more.

                            _William A Mizell_
                          WILLIAM A. MIZELL

       SWORN TO AND SUBSCRIBED before me the day and year aforesaid.

                            _B_____
                        BENJAMIN A. SCHWARTZ
                        A Delaware Attorney
                        ATTORNEY AT LAW
                        WITH POWER TO ACT
                        AS NOTARY PUBLIC
                        PER 29 DEL C 4323 (A)(3)

                    DR      A-50#

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

THE STATE OF DELAWARE          *
                               *
                               *          ID# 0208019524 A and B
                               *
     VS.                       *
                               *
MICHAEL DURHAM,                *
                               *
     Defendant.                *

AFFIDAVIT

I, Leroy Poore, am a Correctional ~~Officer~~ CORPORAL for the State of Delaware.

I was present in the Courtroom during the Trial of State v. Michael Durham.

*I PUT LINES THRU THIS SENTENCE BECAUSE I NEITHER TYPED NOR SAID THIS STATEMENT / L. Poo* 

~~I observed that Juror #9 was not attentive and was "nodding in and out".~~

*My MAIN CONCERN, FOCUS AND ATTENTION WAS TOWARD THAT OF THE INMATE AT THE DEFENSE TABLE ON TRIAL, FOREMOST FOR SECURITY REASONS. L. Poore*

*DEC. 09, 2003*

Leroy Poore
Leroy Poore

Sworn to and Subscribed before me this ___10th___ day of December 2003.

Sandra W. Dean
Notary / attorney

ATTORNEY AT LAW
WITH POWER TO ACT
AS NOTARY PUBLIC
PER 29 DEL C 4323 (A) (3)

A-51.#   A19

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | : | Cr. A. Nos.   KC02-09-0233 thru 0245 |
| | : | KC02-11-0100 thru 0107 |
| v. | : | KC02-11-0118 |
| | : | |
| | : | ID # 0208019524 |
| MICHAEL DURHAM | : | |

STATE'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION FOR NEW TRIAL

Between December 1, 2003 and December 3, 2003, the defendant was tried for a home

invasion robbery in Dover, Delaware. The jury returned a verdict of guilty on the majority of the

charges on December 4, 2003. The defendant made a motion for a new trial pursuant to Superior

Court Rule 33 alleging that a juror slept through portions of the trial. An evidentiary hearing was

held on January 9, 2004. At the conclusion of the hearing, the Court requested that the parties

write memoranda in support of their respective positions. This is the State's Memorandum of

Law in Opposition to the Defendant's Motion for New Trial.

RELEVANT FACTS

The trial of State v. Michael Durham commenced on December 1, 2003 and concluded

with closing arguments on the morning of December 3, 2003. Prior to excusing the jury to

deliberate, neither the defense counsel, the prosecutor or the Court observed any juror sleeping.

A-83        A-52 #

The prosecutor specifically recalls that Juror #9 had her eyes open during his closing argument; although, he concedes he did not observe her during the entire closing argument. During the afternoon of December 3, 2003, the jury sent the Court several notes regarding questions they had on the law. The jury did not reach a verdict on the afternoon of December 3rd, so the Court excused them for the day and requested that they return on December 4th to continue their deliberations.

On the morning of December 4th, defense counsel requested a mistrial. She noted that her client noticed one of the jurors sleeping during the trial.

An evidentiary hearing was held on January 9, 2004. The trial judge, Honorable President Henry DuPont Ridgely, presided over the hearing. A total of five witnesses were called by the Court: Shirley Riley ("Juror #9"), Beth Savitz, Esquire ("Savitz"), Corporal Leroy Poore ("Poore"), William Mizell ("Mizell") and Joseph Sanchez ("Sanchez").

Juror #9 testified that she is a 67 year old woman who is currently not employed. She denied having any physical or mental disabilities that interfered with her jury service. She was questioned extensively by the Court about her conduct during the trial and was confronted with allegations that she appeared to be sleeping or dozing. The juror adamantly denied sleeping during trial, but she admitted she may have nodded for 1-2 seconds on the first day of trial. She testified that she sometimes listened to testimony with her eyes closed and noted she did this when she listened to something particularly important. Finally, she indicated that she understood and comprehended the evidence and the Court's instructions in this case.

Savitz testified that she is a local criminal defense attorney and attended the trial to observe the prosecutor. She attended the first day of trial, but only observed the first two

2

witnesses.[1]  In her affidavit, Savitz indicated she only observed the direct examination of the witnesses.  She testified that while present in the courtroom, she observed a juror with her eyes closed; but admitted she did not watch the juror the entire time and could not estimate the total amount of time the juror had her eyes closed.  Savitz also testified that she wrote several notes to defense counsel during the time she was present in the courtroom.  She characterized these notes as strategy advice to defense counsel.  Savitz did not mention her observations about the juror to defense counsel or the Court.  Finally, Savitz denied that she observed the juror sleeping.

Poore testified that he is a corrections officer with the Department of Correction.  He denied that he ever observed the juror sleeping.  He admitted to making a statement that "the two people who should be aware of juror attentiveness are Ms. Dean and Mr. Kriner."

Mizell testified that he was present during the trial as an observer.  He is a 62 year old retiree who observes trials to occupy himself.  He testified that he observed a juror struggling to keep her eyes open during the first and second day of trial, and during the State's closing argument on the third day.  He testified that he was asked to prepare an affidavit by his personal attorney, another local criminal defense attorney, Benjamin Schwartz, Esquire.  In that affidavit, Mizell only mentioned incidents of alleged misconduct on the first and third day.  Mizell testified that he did not observe the juror sleeping during any portion of the trial.

Sanchez testified that he was the bailiff assigned to the case for the entire trial.  It was his job to monitor the jurors' conduct throughout the trial.  He testified that he has special training to observe jurors when they close their eyes during courtroom proceedings.  Sanchez said he

---

[1]The first two witnesses were the physician that treated the victim and the victim.

noticed the juror occasionally closed her eyes, so he circled her name on the jury sheet and made

a special effort to watch the juror throughout the trial. He testified that on the first day of trial he

noticed the juror swivelling in her chair when she closed her eyes; on the second and third days

he adjusted his chair so that he had a direct view of the juror. He testified that Juror #9 never

slept during the trial.

<div align="center">ISSUES</div>

I.    Whether the record supports the allegations of juror misconduct.

II.    Assuming the record supports the allegation of misconduct, whether misconduct resulted
in prejudice sufficient to warrant a new trial.

<div align="center">ANALYSIS</div>

I.    The Defendant Failed to Support Allegation of Juror Misconduct

The defendant has failed to prove an allegation of juror misconduct that would support a

new trial. In order to justify a new trial a movant must prove that there was juror misconduct and

the misconduct resulted in actual prejudice or so infringed upon defendant's fundamental right as

to raise a presumption of prejudice. See Massey v. State, 541 A.2d 1254, 1257(Del. 1988)

(citing Hughes v. State, 490 A.2d 1034 (Del. 1985)); see also US v. Tierney, 947 F.2d 854, 868

(8th Cir.1991), reh'g and reh'g en banc denied (Dec. 23, 1991) (holding that party claiming

<div align="center">4</div>

A-55.#

misconduct must demonstrate misconduct and prejudice). The defendant does not allege any actual prejudice, and none is suggested by the record. In order to prevail on his motion the defendant must "establish the existence of egregious circumstances, - - ie. circumstances that, if true, would be deemed inherently prejudicial so as to raise a presumption of prejudice in favor of the defendant." Massey, 541 A.2d at 1257.

In his brief, the defendant asserts that the juror "was either sleeping, dozing or was so sleepy that she could not keep her eyes open" "(Defendant's brief at *1), and that the defendant's guilt or innocence should be decided by twelve alert and attentive jurors." (Id. at *2). Vague or conclusory allegations of prejudice are insufficient to support a motion for new trial based on juror misconduct. See Tanner v. US, 483 US 107, 125 (1987); Tierney, 947 F.2d at 868. In Massey v. State, the Delaware Supreme Court rejected defendant's contention that juror misconduct necessitated a new trial. 541 A.2d 1254 (Del. 1988). The defendant was convicted of Murder in the First Degree; however, after trial the defendant learned that one of the jurors had indulged in drugs and alcohol during the trial. Id. at 1255. The Superior Court held an evidentiary hearing at which a juror admitted that he engaged in drug and alcohol use during trial. Id. at 1255-56. However, the other jurors could not recall any incidents during the trial that would indicate the juror was under the influence. Id. at 1255. Based on this record, the Superior Court denied the defendant's motion for a new trial. Id. at 1256. The Supreme Court upheld the denial, reasoning:

> [j]uror self-indulgence in drugs does not necessarily equal intoxication and intoxication does not necessarily equal bias against the accused. Therefore, the mere introduction of some evidence of juror ingestion of alcohol or drugs is insufficient

A-29  A-56.

to warrant a presumption of prejudicial influence against the defendant.

Id. at 1258. (quoting Estes v. Texas, 381 US 532, 542 (1965)). In the instant case, the record does not support the assertion that Juror #9 slept during the trial which would support an inference of prejudice to the defendant. Both Mizell and Savitz candidly testified that they had not observed the juror sleeping. Moreover, neither Mizell nor Savitz were focused on the juror such as Sanchez.[2] Sanchez was present to observe and monitor the jurors. Sanchez testified that he noticed the Juror #9 close her eyes on the first day of trial; so he circled her name on the jury sheet and kept a close watch on her. He also testified he has special training to observe jurors during trials. He testified that he observed the juror on all three days of trial and is certain she did not sleep.[3] Juror #9 testified that she did not sleep during trial, although she admitted nodding for 1-2 seconds during the first day of trial. She testified that she would occasionally close her eyes during testimony and the jury instructions; however, she advised that she listened to and understood all of the evidence and instructions throughout the trial. Where there is no evidence in the record that a juror slept, a conviction should not be set aside. See Bialach v. State, 773 A.2d 386 (Del. 2001)(denying motion for post conviction relief based on allegations of juror misconduct supported only by a brief reference by counsel that a juror slept through closings and instructions). Since there is insufficient evidence to support juror misconduct and

---

[2]Savitz told the Court she was present to observe the prosecutor. Mizell stated that he was watching the trial and was, therefore, presumably focusing his attention on the testimony.

[3]Sanchez testified that he would observe other parts of the juror's body when her eyes closed to ensure she was not sleeping. He indicated she would swivel in her chair or move other body parts during those periods when her eyes were closed.



A-57.

concomitant inherent prejudice, the defendant's conviction should not be set aside.

II.    Assuming the Juror Slept or Dozed During Portions of the Trial, There is an Insufficient
       Basis to Infer Prejudice.

Even assuming that Juror #9 slept during portions of trial, the instances were too insubstantial to prejudice the defendant's rights. "[C]ourts have been reluctant to reverse a conviction or grant a new trial when it has been alleged that jurors have slept during portions of the trial." U.S. v. Ortiz, No. CRIM A.92-0592, 1993 US Dist  WL 303286, at *2 (ED PA August 5, 1993) aff'd 27 F.3d 560 (3d Cir 1994); see also U.S. v. Freitag, 230 F.3d 1019, 1023 (7th Cir. 2000)("Court is not invariably required to remove sleeping jurors."); U.S. v. Springfield, 829 F.2d 860, 864 (9th Cir. 1987)("Every incident of misconduct does not require a new trial").  In U.S. v. Freitag, the 7th Circuit reviewed the district court's refusal to remove a sleeping juror during a criminal trial. 230 F.3d at 1023. The parties agreed that at least one juror slept during trial, but they disputed the extent of the sleep. Id. The lower court indicated that it noticed the juror was inattentive on at least two occasions. Id. The 7th Circuit held defendant's constitutional rights were not violated by the misconduct, reasoning "there is no evidence that the sleeping juror missed large portions of the trial or portions missed were particularly critical." Freitag, 230 F.3d at 1023. In order to receive a new trial based on misconduct, it is not enough to show the juror slept; the defendant must also prove that the juror slept through essential or substantial portions of trial. See Id.; see also Tierney, 947 F.2d at 868-69.  ("Defendant has not shown that the jury ignored any particularly important items."); Ortiz, No. CRIM. A. 92-0592,U.S. Dist. 1993 WL 303286, at *2 ("[D]efendant must show that (1) the jury ignored

7

essential portions of trial and (2) that the defendant was prejudiced by jury misconduct.").
Assuming arguendo Juror #9 slept through portions of the trial, there is no evidence that she
missed essential or substantial portions of the trial. Savitz testified that she observed the juror
close her eyes, but could not testify how long her eyes were closed ("not a split second") nor how
many times the juror closed her eyes. Mizell stated in his affidavit that he observed the juror
"dozing off and on several times during the [three day] trial;" however, at the hearing he
characterized the juror's actions as "struggling" to stay awake as opposed to sleeping. It is also
noteworthy that neither defense counsel, the prosecutor nor the Court observed the juror
sleeping. See Shayne v. U.S., 255 F.2d 739, 745 (1958)(noting since the jury was under the
direct observation by the Court, some action would have been taken by the judge if the juror had
been asleep for a noticeable amount of time). At most the evidence suggests that Juror #9 was
sleepy. The mere fact that a juror may be sleepy or struggling to stay awake during trial does not
equate to juror misconduct necessitating a new trial. See Sallahdin v. Gibson, 275 F.3d 1211,
1226 (10th Cir. 2002)(holding that there was no basis to remove a juror who was on a lot of
medication and had trouble staying alert during the defense's case since there was no evidence
she actually was asleep). Therefore, even assuming there were momentary lapses in attention,
brought about sleep or sleepiness, the record does not support an allegation of prejudice which
would warrant a new trial.

CONCLUSION

The defendant's motion for new trial should be denied. The evidence does not support the allegation of juror misconduct. But, even assuming there was misconduct, there it was not substantial enough to infer prejudice. Therefore, the motion should be denied.

1/30/04
DATE

JAMES KRINER
Deputy Attorney General

9

A-60 #

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR KENT COUNTY

THE STATE OF DELAWARE        :

               vs.        :  I.D. NO.  0208019524

MICHAEL DURHAM        :

## CERTIFICATE OF MAILING

COUNTY OF KENT          )
                    ) SS
STATE OF DELAWARE        )

    BE IT REMEMBERED that on this 30th day of January, 2004, personally appeared before me, a Notary Public in and for the County and State aforesaid, Sue Balik, known to me personally to be such, who after being duly sworn did depose and state:

    (1)  That she is employed as a legal secretary in the Department of Justice, 102 W Water Street, Dover, Delaware.

    (2)  That on 30  day of January, 2004, she did deposit in the mail with sufficient postage attached, a copy of the attached STATE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL in the above-captioned matter properly addressed to Sandra Dean, Assistant Public Defender's Office, 45 The Green, Dover, Delaware, 19904.

SWORN TO and subscribed
before me the day aforesaid

Notary Public

*[Notary seal: BETTY J. WARNER / My Commission Expires 06-13-05 / State of Delaware / NOTARY PUBLIC]*

A-61.

Quentin Henry - Direct

1    something to my brother, something that happened to

2    my little brother. He was basically, Why did you do

3    this, why you do that. And then all during the same

4    course we decided -- well, I decided like where the

5    money at, you got some money up here? Because I

6    know that -- well, I know he sell drugs so I just

7    decide that I be like, You got some money? You got

8    some money?

9          Well, things was happening kind of fast,

10   so then I guess Mike Taylor had jumped up and he had

11   just -- all I can remember, he just ran downstairs

12   and got out the house after that. And then we left

13   out the house. I went one way, and I don't know

14   where Peebo or Mike went.

15        Q.   Okay. Now, why did you pick Mike Taylor's

16   house to go into that night?

17        A.   Well, because something had happened to my

18   younger brother, some guys had home invaded my

19   younger brother, named Warner, and they had tied him

20   up inside of a bathroom, and they beat him up and

21   put him in the hospital really bad, put him in ICU,

22   and I heard rumors that the guy, Mike Taylor, had

23   did this to my little brother.

59

Quentin Henry - Direct

1    Q.    So is that why you chose his house?

2    A.    Yeah.    That is why I chose his house, you

3  know what I mean, to pay him back or whatever.    But

4  in like during the process I just happened to say,

5  You got the money?    Because I knew he sell drugs.    I

6  was like, You got the money, you got some money in

7  here?    But the intention wasn't to rob him, it was

8  just like for what happened to my little brother.

9    Q.    Okay.    Now, you said when you left you ran

10 in one direction.    Did Peebo and Michael Davis run

11 together, or do you know where they went?

12    A.    Well, I actually don't know because I like

13 left out, like went out the front door, and like I

14 was doing like to -- because it is like you come out

15 the door, I had ran to the left.    I ain't even -- I

16 wasn't even looking back.    I don't know if they ran

17 together.    They just went a whole different

18 direction than me.

19    Q.    All right.    Now, at the time this happened

20 had you ever heard of Michael Durham?

21    A.    I heard of him.

22    Q.    Okay.    Was he a friend of yours?

23    A.    No.

SHEILA A. DOUGHERTY
Official Court Reporter

A-63.#

90

Quentin Henry - Direct

1      Q.   Okay.  Did you hang out with him?

2      A.   I ain't never hanged out with him before

3   in my life.

4      Q.   Okay.  Now, up at the Delaware

5   Correctional Center are you in the same building or

6   in a different building from where he is?

7      A.   No, we never been in contact the whole

8   time we been in there.

9      Q.   Okay.  Has he promised you anything to

10  testify here today?

11     A.   No, ma'am.

12     Q.   Has he threatened you in any way?

13     A.   No, ma'am.

14     Q.   Are you afraid of Michael Durham?

15     A.   No.

16          MS. DEAN:  No other questions, Your Honor.

17          THE COURT:  You may cross-examine.

18          MR. KRINER:  Your Honor, I believe there

19  are some matters we can address outside the presence

20  of the jury.

21          THE COURT:  Show the jury out, please.

22          (The jury left the courtroom.)

23          THE COURT:  Mr. Kriner.

SHEILA A. DOUGHERTY
Official Court Reporter

A-64. #

Quentin Henry - Cross

1       Q.    Well, do you know that his nickname is Jim

2    or his real name is Jim?

3       A.    No.

4       Q.    You don't know that?

5       A.    No, I don't know.

6       Q.    So if you told Detective -- do you

7    remember being interviewed by Detective Virdin?

8       A.    I remember getting locked up and I know --

9    I really can't remember too much that day because I

10   was like highly intoxicated and under the influence

11   of marijuana, and I had been drinking all night.

12      Q.    Uh-huh.  And you testified the other guy

13   is Mike Davis?

14      A.    Yes, sir.

15      Q.    Not Mike Durham?

16      A.    Yes, sir.

17      Q.    Right?  Do you agree that Mr. Taylor's

18   children were there as this was happening?

19      A.    Yes, sir.

20      Q.    And his four-year-old son was sitting on

21   the bed as he was assaulted?

22      A.    I have no idea which son or whatever.  I

23   just know it was kids there.

SHEILA A. DOUGHERTY
Official Court Reporter
A-65.#

Quentin Henry - Cross

1  know because, like I said, when I got locked up I

2  was highly intoxicated and under the influence of

3  marijuana, so I don't remember any statements that I

4  gave the police that night and I never talking to no

5  police afterwards, so I don't know.

6      Q.  Let me ask you this:  Would it be accurate

7  or inaccurate, the truth or a lie, that you knew

8  Mike Taylor lived at that house?

9      A.  I would say I knew that he lived there.

10     Q.  And is it accurate or inaccurate, if you

11  said that you knew Peebo was -- his real name was

12  Jim?

13     A.  I can't recall whether it was accurate or

14  inaccurate.  I would say that it was probably

15  accurate that I said that.

16     Q.  Is that accurate that Peebo's real name is

17  Jim?

18     A.  I don't know what his real name is, so I

19  can't say if it is accurate or not from my

20  knowledge.  I have no idea.

21     Q.  So you would agree that if you told the

22  detective that you knew that Peebo's real name was

23  Jim, you would have not been telling the detective

Quentin Henry - Cross

1  the truth?

2      A.   Hum.  Can you repeat that again, please?

3      Q.   Sure.  If you told the detective that

4  interviewed you that you knew that Peebo's real name

5  was Jim, that would not be accurate?

6      A.   Right.

7      Q.   Is your statement, is your testimony today

8  accurate or inaccurate?

9      A.   I would say that it is accurate.

10     Q.   Accurate.  And you testified that you have

11 never been in contact with Mike Durham since you

12 have been in jail?

13     A.   Never been in contact with him since I

14 been in jail.

15     Q.   Never talked to him?

16     A.   I had a couple words with him because down

17 in the holding cell down there they like side by

18 side, so I probably said a couple words to him, but

19 we don't talk like that because I hardly even know

20 him to even talk to him like that.  But to like

21 during this case, like I just know that we was on

22 trial together for something he didn't do that I

23 did, and that is the only reason why I know him.

Quentin Henry - Cross

1        Q.    So the only -- you only said a couple of

2    words to him, and that was just while you are

3    downstairs?

4        A.    Yeah.  Like are they going to come get me,

5    are they like, when are they going to come get me,

6    like if he go upstairs I say something, are they

7    going to come get me yet, or something like that.

8        Q.    Well, isn't it true that back in April you

9    and he sat in the same cell?  Downstairs in lockup?

10       A.    No.  That is not true.

11       Q.    Are you sure?  When you were here last

12   time, in April, were you in the same cell before you

13   were brought up?  Think about it.

14       A.    No, we wasn't.

15       Q.    Are you sure?

16       A.    No.  They side by side, but they separate.

17       Q.    I am not talking yesterday.

18       A.    Yeah.  We talking all.  They is separate.

19       Q.    That is your answer, that you weren't in

20   the same cell?

21       A.    We weren't in the same cell.

22       Q.    Were not?

23       A.    Were not.

Quentin Henry - Cross

1      Q.    Did you discuss the case at all?

2      A.    No, we didn't.

3      Q.    How about yesterday.  Did you ever share a

4   cell with him yesterday?

5      A.    Not that I can recall.  We never shared a

6   cell, ever, because we can't be together for some

7   reason.

8      Q.    I don't want an explanation for it, sir, I

9   just want you to answer yes or no.

10         Isn't it true that yesterday for a period

11   of time you were actually in the same cell with the

12   defendant?

13         MS. DEAN:  Objection, Your Honor.  It has

14   been asked and answered.

15         THE COURT:  I will allow it.

16   BY MR. KRINER:

17      Q.    Just yes or no, sir, yesterday.

18      A.    No, sir.

19      Q.    No.  And you agree that you are in the

20   same institution with the defendant; correct?

21      A.    We are in the same institution, but in

22   different parts.

23      Q.    Okay.  So your testimony today is that you

SHEILA A. DOUGHERTY
Official Court Reporter

A-69.#

Quentin Henry - Cross

1  and the defendant have never discussed the case and

2  your testimony here today?

3       A.   That's true.

4       Q.   That's the same answer as you never shared

5  a cell yesterday?

6       A.   That's true.

7       Q.   And you weren't talking back and forth

8  when you weren't in the same cell yesterday?

9       A.   No, we weren't.

10      Q.   Now, it is true that you contacted

11  Ms. Dean to show up here and testify today?

12      A.   Yes.

13      Q.   And on behalf of the defendant?

14      A.   Yes.

15      Q.   And you never contacted Detective

16  Humphrey?

17      A.   For what reason?  What should I contact

18  him for?

19      Q.   Well, to tell him your side of the story.

20      A.   The reason why I contacted her, so I could

21  testify on his behalf, so I am here today.

22      Q.   Exactly.  You wanted to testify on the

23  defendant's behalf?

A-00

SHEILA A. DOUGHERTY
Official Court Reporter
A-70.#

Quentin Henry - Cross

1    A.   Right.

2    Q.   And have you previously been convicted of

3  crimes of dishonesty?

4    A.   No.

5    Q.   No?  How about back in April of 2000?

6    A.   Yes.  I think I had a forgery second.

7    Q.   So was that a yes now?

8    A.   Oh, yes.  I didn't know when you said

9  previous, was it like this year or -- I didn't know

10  exactly when.

11    Q.   Are there any other questions that I have

12  asked you up until this point that you didn't

13  understand?

14    A.   No, sir.  Or I would have asked you.

15    Q.   And criminal impersonation, you have also

16  been convicted of that; correct?

17    A.   Yes, sir.

18    Q.   And you agree that you have previously

19  made a statement to the police when you were

20  arrested for this incident; correct?

21    A.   I can't recall what I said because I was

22  intoxicated and under the influence, and I don't

23  know what I said, if I said anything.

Quentin Henry - Cross

1      Q.    You agree you remember making the

2  statement though?

3      A.    I don't remember -- I was drunk.  And

4  under the influence of marijuana.  All I know, I can

5  remember waking up in the cell at the police station

6  and then going to jail.  That is all I remember.

7      Q.    And so you don't remember denying that you

8  had any involvement in this?

9      A.    Nope.  I don't remember it.

10      Q.    You don't remember doing that?

11      A.    (Witness shook head from side to side.)

12          MR. KRINER:  Your Honor, at this time I

13  would like to play the defendant's statement.

14          THE COURT:  You may.  Which exhibit are

15  you referring to?

16          MR. KRINER:  May I have a moment?

17          THE COURT:  You are talking about the tape

18  of the witness?

19          MR. KRINER:  Yes, sir.

20          THE COURT:  You may.  Hand the exhibit to

21  the bailiff and he will play it.

22          (Whereupon the tape was played.)

23          MR. KRINER:  The State has no further

SHEILA A. DOUGHERTY
#Official Court Reporter

A-72.

Quentin Henry - Cross

1   questions of this witness.

2            THE COURT:  Ms. Dean.

3                    REDIRECT EXAMINATION

4   BY MS. DEAN:

5        Q.  Mr. Henry, in your life have the police

6   been people who have helped you or have the police

7   been people who did not help you in your life?

8            MR. KRINER:  Objection.  Relevance.

9            MS. DEAN:  We are talking about his

10  statement to the police, Your Honor.

11           THE COURT:  I will allow it.

12  BY MS. DEAN:

13       Q.  Have the police been your friends or not,

14  generally in your life?

15       A.  Well, in my life, I mean, not really, no.

16       Q.  No?  What do you think would have happened

17  if you had told the police officer what you did that

18  night at Taylor's house?

19           MR. KRINER:  Your Honor, I am going to

20  object.

21           THE COURT:  The objection is sustained.

22           THE WITNESS:  Hum.

23           MS. DEAN:  No, no, I will withdraw the

Quentin Henry - Redirect

1   question.

2   BY MS. DEAN:

3       Q.   Why did you lie to the police?

4       A.   Because I was afraid of the consequence,

5   whatever would happen to me.

6       Q.   Okay.

7            MS. DEAN:  No other questions, Your Honor.

8            THE COURT:  Mr. Kriner.

9                    RECROSS-EXAMINATION

10  BY MR. KRINER:

11      Q.   Mr. Henry, do you remember a few minutes

12  ago when I was up here asking you questions?

13      A.   Yes, sir.

14      Q.   And I asked you questions about your

15  statement?

16      A.   Yes, sir.

17      Q.   Do you remember what your answer was with

18  respect to whether or not you remembered even making

19  the statement?

20      A.   I said I wasn't sure if I made a

21  statement.

22      Q.   And you just said in response to

23  Ms. Dean's question that you lied to the police when

Quentin Henry - Recross

1    you made the statement?

2         A.    Yeah, because it is clear that on the tape

3    I lied, but I am quite sure that I know that if I

4    lied it was because I was protecting myself from a

5    consequence.

6         Q.    So do you remember now making the

7    statement?

8         A.    I am kind of recalling from hearing the

9    tape a little bit, but I was highly intoxicated and

10   drunk, and I mean that is my voice, so I said that,

11   but I don't remember.    I can't say I remember saying

12   it, but that is my voice, I had to say it.

13        Q.    Well, let's just get to -- the question

14   is:  Did you lie to the police or not even remember

15   making the statement to the police, and the

16   statement is the product of you being intoxicated?

17   Which is it?

18        A.    Um, I don't remember making the statements

19   to the police, so I can't really remember, but I

20   did, so I would say I lied because I was protecting

21   myself.    So I lied, yeah.

22        Q.    Okay.  So you remember when you made the

23   statement, you were sober enough to try and help

Quentin Henry - Recross

1  yourself out?

2      A.   As I recall from the tape, it is evident

3  that I was lying to protect myself, help myself out,

4  so that is how I remember it.

5      Q.   We want to know what you remember based --

6      A.   I don't actually remember nothing during

7  being questioned by the police because I was highly

8  intoxicated and drunk, so I don't really remember

9  too much.

10     Q.   So you didn't lie to the police?

11     A.   Well, I really don't know.  I was

12  intoxicated.  It was evident on the tape that I

13  lied, so that is how I know that I lied because I

14  just heard it.

15     Q.   And your testimony today is you lied

16  because that is inconsistent with what you are

17  testifying to here today on the witness stand;

18  correct?

19     A.   Correct.

20         MR. KRINER:  Nothing further.

21         THE COURT:  Ms. Dean.

22         MS. DEAN:  No further questions, Your

23  Honor.

A-76 #,

Carl Humphrey - Direct

1    Investigations Unit.

2        Q.    Can you describe what the Criminal

3    Investigations Unit, what their responsibilities

4    are?

5        A.    The Criminal Investigations Unit handles

6    all major felonies, crimes such as rapes, homicide,

7    things of that nature.

8        Q.    And were you assigned to investigate a

9    home invasion robbery at 34 Heritage Drive?

10       A.    Yes, I was.

11       Q.    Was that on August 27, 2002?

12       A.    Yes, it was.

13       Q.    What county and state is that?

14       A.    Kent County, State of Delaware.

15       Q.    Did you respond to the address?

16       A.    Yes, I did.

17       Q.    And for what purpose, for what purpose did

18   you respond?

19       A.    To investigate a burglary, reported

20   burglary at that time.

21       Q.    Were you assigned as the chief

22   investigating officer?

23       A.    Yes, I was.

32

Carl Humphrey - Direct

1        Q.    And did you learn what time the incident

2    was reported?

3        A.    It was reported at approximately quarter

4    to 10:00 in the p.m.

5        Q.    Did you enter the residence at 34 Heritage

6    Drive?

7        A.    Yes, I did.

8        Q.    Can you describe the condition of the

9    residence when you entered it?

10       A.    I noticed obvious damage when I entered

11   the door.  It was open, the screen door had been --

12   the screen in the screen door had been torn, the

13   door jamb was damaged.

14       Q.    Did you have occasion to recover any

15   evidence?

16       A.    Yes, I did.

17       Q.    Can you describe what evidence you

18   recovered personally?

19       A.    I recovered an empty shell casing, and

20   also recovered some bullet fragments from the wall.

21       Q.    From where did you recover the shell

22   casing?

23       A.    The shell casing was on a table which had

33

Carl Humphrey - Direct

1   been placed there by Sergeant Littlefield, who

2   testified yesterday.

3        Q.   And how about the bullet, projectile?

4        A.   The projectile was recovered from the wall

5   itself.

6            MR. KRINER:   Your Honor, may I retrieve

7   some exhibits?

8            THE COURT:   Yes.

9            MR. KRINER:   May I approach the witness?

10           THE COURT:   Yes.

11  BY MR. KRINER:

12       Q.   I am handing you what has been marked for

13  identification as State's Exhibit E and State's

14  Exhibit G.  Do you recognize those, sir?

15       A.   Yes.

16       Q.   What are those?

17       A.   This is the shell casing I recovered from

18  the table.

19       Q.   That is State's Exhibit G?

20       A.   This is E.

21       Q.   I am sorry, E?

22       A.   State's E.  And this one is Exhibit G.

23  These are the bullet fragments that I recovered from

35

Carl Humphrey - Direct

1      A.   When I interviewed Mr. Taylor he was sort

2  of in a panic.  He appeared to be shaken up.

3      Q.   Upset?

4      A.   Yes, he was very upset.

5      Q.   Do you recall about what time you

6  interviewed him?

7      A.   It was after I covered the scene, between

8  10:00, 10:30.

9      Q.   And did you ask him what occurred?

10      A.   Yes, I did.

11      Q.   And did he tell you?

12      A.   Yes, he did.

13      Q.   And did he tell you who did it?

14      A.   Yes, he did.

15      Q.   And did he know any of the persons' names?

16      A.   Yes, he did know the names.

17      Q.   What name did he use?

18      A.   He gave me Michael Durham, ~Perjured~ he gave me a

19  nickname of Nugget and a nickname of Peebo.

20      Q.   Did you hear his testimony yesterday in

21  Court?

22      A.   Yes, I did.

23      Q.   Was his testimony consistent with what he

*AOT*

A-80.#.        SHEILA A. DOUGHERTY
               Official Court Reporter

37

Carl Humphrey - Direct

1       Q.    What is that?

2       A.    That is the handgun I recovered from the

3    lock box at the Dover Police Station.

4       Q.    From Officer Knight?

5       A.    Yes.

6             MR. KRINER:  Your Honor, I have no further

7    questions.

8             THE COURT:  You may cross-examine.

9                     CROSS-EXAMINATION

10   BY MS. DEAN:

11      Q.    Good morning.

12      A.    Good morning, Ms. Dean.

13      Q.    Are you the lead investigator?  You are

14   the investigating officer in this case?

15      A.    That's correct.

16      Q.    Is it part of your job to summarize or

17   evaluate all the evidence?

18      A.    Yes, it is.

19      Q.    Were any fingerprint analysis taken at the

20   scene?

21      A.    No.

22      Q.    None from the door?

23      A.    No.

SHEILA A. DOUGHERTY
Official Court Reporter

Carl Humphrey - Cross

1    Q.    Front door?  Back door?  None?

2    A.    No.

3    Q.    Okay.  Did your investigation reveal how

4    the blood got on the curtain by the back door?

5    A.    No.  I asked about that.  Mr. Taylor

6    couldn't remember.

7    Q.    Who couldn't remember?

8    A.    Mr. Taylor.

9    Q.    What about Mr. Taylor?  Did he remember?

10   A.    No.

11   Q.    No?  Okay.  Was that blood or any blood in

12   the house analyzed to see if it was the same blood

13   here or there?  Was any analysis done of blood?

14   A.    No.  There was no need to analyze the

15   blood.

16   Q.    Okay.  Now, there were two, actually three

17   children present in the home; is that correct?

18   A.    Yes.

19   Q.    When this happened?  And two of them were

20   like ten and 11 years old?

21   A.    One was ten, the other one was probably a

22   little bit older.

23   Q.    Were the children interviewed?

SHEILA A. DOUGHERTY
Official Court Reporter

Carl Humphrey - Redirect

1      A.   No, I wouldn't have done that.

2      Q.   Okay.  So I guess my question is:  Did

3  Mr. Taylor inform you that Durham was the assailant

4  before you informed him that it was an arrest?

5      A.   That's correct, that's correct.  *Perjured*

6           MR. KRINER:  I have no further questions.

7           THE COURT:  Ms. Dean.

8                  RECROSS-EXAMINATION

9  BY MS. DEAN:

10     Q.   Officer, just to clarify, is it correct

11  that you testified that you do not remember whether

12  or not you told Mr. Taylor that Mr. Durham had been

13  arrested?

14     A.   That's correct.  That is what I testified

15  to.

16     Q.   So you don't remember if you told him at

17  all, before, after, or ever?

18     A.   That's correct.

19          MS. DEAN:  Okay.  No questions, Your

20  Honor.

21          THE COURT:  Mr. Kriner.

22

23

A·84 #

SHEILA A. DOUGHERTY
Official Court Reporter

1                    *  *  *  *  *

2   Whereupon,

3                    SHIRLEY RILEY,

4   was called as a witness and, having been first duly

5   sworn, was examined and testified as follows:

6                    THE COURT:  Good afternoon, Ms. Riley.

7                    THE WITNESS:  Good afternoon.

8                    THE COURT:  The reason that we have had

9   you come back to the courthouse is because a motion

10  for a new trial has been made and issues have been

11  raised regarding your attentiveness and even the

12  suggestions and evidence from some observers who

13  believe you were sleeping during the course of the

14  trial.

15                   First of all, can you tell me how old

16  you are?

17                   THE WITNESS:  67.

18                   THE COURT:  And are you employed today?

19                   THE WITNESS:  No.

20                   THE COURT:  During the time of the trial

21  were you employed?

22                   THE WITNESS:  No.

23                   THE COURT:  Were you getting regular

---

Jennie L. Washington
Official Court Reporter

A-85.

1    sleep each day?

2           THE WITNESS:  Enough.

3           THE COURT:  Specifically, there is an

4    allegation that you were observed with your eyes

5    being closed and then you would catch yourself and

6    open your eyes.  Do you recall dozing at all during

7    the trial?

8           THE WITNESS:  That could have happened,

9    but the juror next to me would nudge me.  But I was

10   not fully asleep, no.  All closed eyes are not

11   asleep.

12          THE COURT:  And was this juror --

13   basically, how often would that happen, that he

14   nudged you?

15          THE WITNESS:  Actually, it really didn't

16   happen.  He said that at one time he started to,

17   but it really didn't happen.

18          THE COURT:  At what point in the trial

19   did that happen, do you recall?

20          THE WITNESS:  No, I don't recall.  I --

21   no.  It was probably the first day.

22          THE COURT:  Well, were you sleeping or

23   not?

---

Jennie L. Washington
Official Court Reporter



A-86.#

1          THE COURT:  He's referring to Monday,

2     December 1st, so that's consistent with what you

3     said?

4          THE WITNESS:  Yes.

5          THE COURT:  He next says, "I also

6     observed her dozing on Wednesday, December 3rd --"

7          THE WITNESS:  I don't think so.

8          THE COURT:  He next says, "During the

9     reading of the jury instructions, it was obvious

10    that she was struggling to stay awake.  Her eyes

11    would close, flutter open and then close again.

12    Then flutter open again.  I could tell she was

13    fighting sleep.  I did not count the number of

14    times this happened, but I can estimate that it was

15    four times."

16         THE WITNESS:  Now, can you read the very

17    first part again?

18         THE COURT:  "During the reading of the

19    jury instructions --"

20         THE WITNESS:  Okay.

21         THE COURT:  "-- it was obvious she was

22    struggling to stay awake, her eyes would close,

23    flutter open, then close again and then flutter

A-87.

1  sleep each day?

2          THE WITNESS:  Enough.

3          THE COURT:  Specifically, there is an

4  allegation that you were observed with your eyes

5  being closed and then you would catch yourself and

6  open your eyes.  Do you recall dozing at all during

7  the trial?

8          THE WITNESS:  That could have happened,

9  but the juror next to me would nudge me.  But I was

10 not fully asleep, no.  All closed eyes are not

11 asleep.

12         THE COURT:  And was this juror --

13 basically, how often would that happen, that he

14 nudged you?

15         THE WITNESS:  Actually, it really didn't

16 happen.  He said that at one time he started to,

17 but it really didn't happen.

18         THE COURT:  At what point in the trial

19 did that happen, do you recall?

20         THE WITNESS:  No, I don't recall.  I --

21 no.  It was probably the first day.

22         THE COURT:  Well, were you sleeping or

23 not?

Jennie L. Washington
Official Court Reporter



```
1                    THE WITNESS:  No.

2                    THE COURT:  Were there times that you

3      were listening with your eyes closed or --

4                    THE WITNESS:  Yes.

5                    THE COURT:  How often did that happen?

6                    THE WITNESS:  Not often.

7                    THE COURT:  If there was any point in

8      time when you had to be nudged or you closed your

9      eyes, how long would that have lasted?

10                   THE WITNESS:  One or two seconds.

11                   THE COURT:  Do you consider that you

12     were attentive or not attentive as a juror?

13                   THE WITNESS:  I was attentive.  Very

14     attentive.

15                   THE COURT:  I have an affidavit from

16     Mr. Mizell who says that, "On Monday, December 1st,

17     I noticed during the trial the juror's eyes were

18     closed and she would catch herself and open her

19     eyes and come back to attention."

20                   THE WITNESS:  Who is Mr. Mizell?

21                   THE COURT:  He apparently was a

22     spectator in the courtroom.

23                   THE WITNESS:  Okay.
```

Jennie L. Washington
Official Court Reporter

A-89. #

1          THE COURT:  He's referring to Monday,

2    December 1st, so that's consistent with what you

3    said?

4          THE WITNESS:  Yes.

5          THE COURT:  He next says, "I also

6    observed her dozing on Wednesday, December 3rd --"

7          THE WITNESS:  I don't think so.

8          THE COURT:  He next says, "During the

9    reading of the jury instructions, it was obvious

10   that she was struggling to stay awake.  Her eyes

11   would close, flutter open and then close again.

12   Then flutter open again.  I could tell she was

13   fighting sleep.  I did not count the number of

14   times this happened, but I can estimate that it was

15   four times."

16         THE WITNESS:  Now, can you read the very

17   first part again?

18         THE COURT:  "During the reading of the

19   jury instructions --"

20         THE WITNESS:  Okay.

21         THE COURT:  "-- it was obvious she was

22   struggling to stay awake, her eyes would close,

23   flutter open, then close again and then flutter

Jennie L. Washington
Official Court Reporter

```
 1    open again.  I could tell she was fighting sleep.

 2    I did not count the number of times that this

 3    happened, but I can estimate that it was four

 4    times."

 5                 THE WITNESS:  Can I say something

 6    at this point?

 7                 THE COURT:  Yes.  That's why I'm --

 8                 THE WITNESS:  The instructions to the

 9    jury was in writing; is that correct?

10                 THE COURT:  Yes.

11                 THE WITNESS:  And something like 43

12    pages?

13                 THE COURT:  Yes.

14                 THE WITNESS:  And we went over those

15    pages.  I'm not saying that -- what I am saying is

16    that even if that happened, which I don't remember

17    it happening, it was in writing for me to read.

18                 THE COURT:  And did you read the

19    instructions?

20                 THE WITNESS:  Yes, I remember the

21    instructions.  I remember both lawyers going

22    through the instructions with you, and none of the

23    lawyers made any objections.
```

Jennie L. Washington
Official Court Reporter



```
 1              THE COURT:  The affidavit of Mr. Mizell

 2   goes on to say, "Also, during Mr. Kriner's closing

 3   statement --" that's the prosecutor, Mr. Kriner,

 4   "-- she was dozing.  It happened twice that I am

 5   sure of, or possibly more."

 6              THE WITNESS:  I'm sorry?

 7              THE COURT:  Go ahead.

 8              THE WITNESS:  If I dozed, it was the

 9   first day.  If I dozed.

10              THE COURT:  I have an affidavit of Beth

11   Savitz who is an attorney and she says, in

12   pertinent part, as follows:  She was present in the

13   courtroom during opening statements and

14   direct-examinations of the first two witnesses in

15   the trial.  She observed a juror in the front row,

16   a black female sitting with her eyes closed and her

17   chin to her chest.  This juror appeared to be

18   dozing off and on during this time.

19              THE WITNESS:  I dozed off in the large

20   courtroom, before the jurors were picked.

21              THE COURT:  Do you have any sleeping

22   disorders of any kind?

23              THE WITNESS:  Umm, no, I don't.  I have
```

Jennie L. Washington
Official Court Reporter

A139

A-92#.

1   weird sleeping hours, but I don't have any sleeping

2   disorders.

3           THE COURT:  Do you, at times, place your

4   chin down to your chest as you are listening to

5   things?

6           THE WITNESS:  Oh, I never paid any

7   attention to that.  It depends on how, if it's

8   quite serious, I might put my head down to my

9   chest, if it's serious as to what I'm listening to.

10          THE COURT:  Did you understand and

11  comprehend all of the evidence --

12          THE WITNESS:  Yes.

13          THE COURT:  -- and arguments in this

14  case?

15          THE WITNESS:  Yes, yes.

16          THE COURT:  Did you comprehend and

17  understand the Court's instructions?

18          THE WITNESS:  Yes.

19          THE COURT:  If you will step outside to

20  the corridor for a moment, please?

21              *  *  *  *  *

22          (Whereupon, the juror exited the

23          courtroom.)

Jennie L. Washington
Official Court Reporter

A-740

A-93. #

```
 1                      * * * * *
 2              THE COURT:  Counsel, do you have any
 3    additional inquiries to suggest?
 4              MR. KRINER:  Not from the State, Your
 5    Honor.
 6              MS. DEAN:  Just one thing, Your Honor.
 7    She testified, "I have weird sleeping hours."  I
 8    just wondered if the Court would follow-up a little
 9    bit more on that to find out what her sleeping
10    hours were during the trial.
11              THE COURT:  All right.  Bring her back
12    in.
13                      * * * * *
14              (Whereupon, the juror entered
15              the courtroom.)
16                      * * * * *
17              THE COURT:  I want to follow-up on your
18    statement.  You referred to having weird sleeping
19    hours.
20              THE WITNESS:  Hm-mm.
21              THE COURT:  What do you mean by that?
22              THE WITNESS:  I sleep whenever.  Well,
23    from, I need to go back a long time, I'm 67 years
```

A-144

A-94.#

1   old.

2           THE COURT:  All right.

3           THE WITNESS:  And my mother told me as

4   an infant sometimes she would put me to bed and

5   check on me when she would go to bed and I would be

6   awake.  So normally, I just get my sleep whenever I

7   can.  So that's probably why I got my few minutes

8   in before the jury was selected.

9           THE COURT:  All right.  And what was

10  your sleeping pattern during the time of this

11  trial -- which I'll remind you that the trial began

12  December 1st, 2003, and the jury was instructed on

13  December 3rd, 2003 -- what were your sleeping

14  patterns then?

15          THE WITNESS:  As usual, I go to bed very

16  late.  But I've been the kind who can get up

17  any time if I have to and do what I have to do.

18  But if there's a period in between where I can

19  catch ten or fifteen minutes, I'll do that, but not

20  at a pertinent time.

21          THE COURT:  All right.  You were asked

22  during the selection process in this case if, along

23  with all the other jurors, if you had any mental or

Jennie L. Washington
Official Court Reporter

A-142

A-95. #

```
 1    physical disability that would prevent you from

 2    performing satisfactory jury service.

 3            THE WITNESS:  Yes.

 4            THE COURT:  Did you have any such mental

 5    or physical disability?

 6            THE WITNESS:  No, no.

 7            THE COURT:  Please step out to the

 8    corridor again.

 9                    *  *  *  *  *

10            (Whereupon, the juror exited the

11            courtroom.)

12                    *  *  *  *  *

13            THE COURT:  Counsel, any other questions

14    to suggest?

15            MR. KRINER:  No, Your Honor.

16            MS. DEAN:  No, Your Honor.  should have called
                                          juror then they nudged her.

17            THE COURT:  All right.  I'm going to

18    have her stay until we hear from the rest of the

19    witnesses, in case there are other questions that

20    might be suggested after hearing them.

21            Have Ms. Savitz come in, please.

22                    *  *  *  *  *

23    Whereupon,
```

Jennie L. Washington
Official Court Reporter

A-113

A-96 #

```
 1                    BETH SAVITZ,
 2  was called as a witness and, having been first duly
 3  sworn, was examined and testified as follows:
 4             THE COURT:  Good afternoon, Ms. Savitz.
 5             THE WITNESS:  Good afternoon, Your
 6  Honor.
 7             THE COURT:  I have your affidavit where
 8  you refer to being present during the opening
 9  statements and direct-examinations of the first two
10  witnesses in State versus Michael Durham.
11  Would you tell me what you recall observing.
12             THE WITNESS:  With respect to the juror?
13             THE COURT:  Yes.
14             THE WITNESS:  It's an older black woman
15  sitting in the front row, wearing a red sweater,
16  sweatshirt, something, it was red.  And I don't
17  remember exactly when, but while we were sitting
18  there, she would sort of put her head down and she
19  appeared to be dozing.  I can't tell you for sure
20  that she was, but she was sitting with her eyes
21  closed.  I remember having a conversation with
22  another spectator to the effect of:  Do you think
23  she's sleeping?
```

Jennie L. Washington
Official Court Reporter

A-97 #.

1    THE COURT:  Was that Mr. Mizell or
2    somebody else?
3    THE WITNESS:  I think that's Mr. Mizell,
4    if he's the gentleman in the hallway.
5    THE COURT:  All right.
6    THE WITNESS:  That really -- I was there
7    for the first witness that Mr. Kriner called.  It
8    was the female doctor from the ER, and then
9    Mr. Durham -- I mean, I'm sorry, the alleged victim
10    testified, and then I left.  So I wasn't in there a
11    whole long time.
12    THE COURT:  Your affidavit says, "She
13    observed a juror in the front row, a black female
14    sitting with her eyes closed and her chin to her
15    chest."  Is that what you are telling me today?
16    THE WITNESS:  Yes, Your Honor.
17    THE COURT:  All right.  How long were
18    her eyes closed?
19    THE WITNESS:  I don't know.  I didn't
20    look at a clock.  I don't know how long I was in
21    there.  I know I was there for both opening
22    statements, the testimony of the ER doctor, and the
23    direct or parts of the direct of the alleged

Jennie L. Washington
Official Court Reporter

A-145
A-98.#.

```
 1    victim.  But it wasn't, I didn't look at the juror

 2    the whole time.  I mean, it wasn't just for a split

 3    seecond.

 4              THE COURT:  Do you have any estimate as

 5    to how long it was?

 6              THE WITNESS:  No, I do not.  I know I

 7    looked over more than once.

 8              THE COURT:  Anything else you can recall

 9    on the issue of this juror being inattentive or

10    dozing?

11              THE WITNESS:  That's it, Your Honor.

12              THE COURT:  If you would step out to the

13    corridor, please.

14              THE WITNESS:  Thank you.

15                        *  *  *  *  *

16              (Whereupon, the witness exited

17              the courtroom.)

18                        *  *  *  *  *

19              THE COURT:  Counsel, do you have any

20    additional questions to suggest?

21              MS. DEAN:  No, Your Honor.

22              MR. KRINER:  Your Honor, I guess the

23    question the State would have, since she's an
```

Jennie L. Washington
Official Court Reporter



1    attorney, whether or not she brought this to either

2    of the attorneys' attention at the time, whether

3    she brought anything else to the attention of

4    either the attorneys, and why this wasn't one of

5    the things?  For example, I believe, I have some

6    information that she was providing notes to

7    Ms. Dean during a portion of the trial.  This would

8    seem like something, as an officer of the Court,

9    she should have brought to the attention.

10                THE COURT:  All right.  Bring her back

11   in.

12                        *  *  *  *  *

13                (Whereupon, the witness reentered the.

14                courtroom.)

15                        *  *  *  *  *

16                THE COURT:  Have a seat.  When did you

17   first bring this to the attention of Ms. Dean?

18                THE WITNESS:  I think it was the day

19   their verdict came in.

20                THE COURT:  And do you have any

21   explanation why you didn't bring it to anyone's

22   attention when you observed it?

23                THE WITNESS:  No.

Jennie L. Washington
Official Court Reporter

A-100.#

```
 1              THE COURT:  When you brought it to

 2   Ms. Dean's attention, did you do that by a note or

 3   orally, or how was that done?

 4              THE WITNESS:  I think we were standing

 5   in Courtroom 2, actually, when I told -- excuse me,

 6   sorry.  I think I heard somebody say something.  I

 7   said, "Yeah, I saw her.  Was it the lady sitting

 8   down front?"

 9              THE COURT:  Okay.

10              THE WITNESS:  And I described her.

11              THE COURT:  Were you at any time passing

12   notes to Ms. Dean during the trial of this case?

13              THE WITNESS:  I wrote a note.  I did not

14   pass it to her and it had nothing to do with the

15   juror.

16              THE COURT:  All right.  Did it have to

17   do with the trial, or the case?

18              THE WITNESS:  Yes.

19              THE COURT:  Strategy or something of

20   that sort?

21              THE WITNESS:  It was a thought that

22   popped in my head when somebody had asked a

23   question about the identity of the defendant, and I
```

Jennie L. Washington
Official Court Reporter

A-148

A-101.#.

1    thought of a question that she might want to ask.

2           THE COURT:  All right.  Did you

3    represent any of the parties involved in this case?

4    Why were you present?

5           THE WITNESS:  Because I hadn't seen

6    Mr. Kriner's opening statement before and I was

7    supposed to have a trial starting with him two

8    weeks later, and I wanted to see what his opening

9    sounded like.

10           THE COURT:  Please step out to the

11    corridor again.

12                         *  *  *  *  *

13           (Whereupon, the witness left the

14           courtroom.)

15                         *  *  *  *  *

16           THE COURT:  Any other questions for this

17    witness?

18           MR. KRINER:  No, Your Honor.

19           MS. DEAN:  Your Honor, I have no other

20    questions for the witness, but I would like to put

21    on the record about the note.  Would you permit

22    that briefly?

23           THE COURT:  All right.

Jennie L. Washington
Official Court Reporter

A-102 #

1          MS. DEAN:  During the direct-examination

2    of the alleged victim, Ms. Savitz was sitting in

3    the back of Courtroom 2 and she kind of tried to

4    get my attention.  And I think she gave me a note,

5    but I'm not positive that she actually gave me the

6    note.  But she wanted to suggest to me that I

7    should ask the victim if the person who did this

8    had any tattoos; and she suggested to me that that

9    would be a good question to ask.  That's what that

10    was about.

11          THE COURT:  All right.  You asked that

12    question, didn't you?

13          MS. DEAN:  Yes.  I took her suggestion,

14    Your Honor.

15          THE COURT:  Anything else, Mr. Kriner?

16          MR. KRINER:  No, Your Honor.

17          THE COURT:  All right.  Have Leroy Poore

18    come in, please.

19                  *  *  *  *  *

20    Whereupon,

21               LEROY POORE,

22    was called as a witness and, having been first duly

23    sworn, was examined and testified as follows:

---

Jennie L. Washington
Official Court Reporter



A-103.#

```
 1            THE COURT:  Good afternoon, Mr. Poore.

 2            THE WITNESS:  Good afternoon, Judge.

 3            THE COURT:  Or I will say Corporal

 4   Poore.  I have an affidavit that you have filed

 5   which reads, "I was present in the courtroom during

 6   the trial of State versus Michael Durham."  And

 7   then in the typewritten portion it says, "I

 8   observed Juror Number 9 was not attentive and

 9   nodding in and out."  That is stricken through and

10   it's handwritten, "I put a line through this

11   sentence because I neither typed or said this

12   statement.  My main concern, focus and attention

13   was towards that of the inmate at the defense table

14   on trial, foremost for security reasons."

15            I understand that.  Did you observe

16   Juror Number 9 as being nodding or inattentive in

17   addition to your other duties?

18            THE WITNESS:  No, sir, I hadn't.  I

19   don't know what went on with Juror Number 9.  I

20   have no knowledge of whether she was or whether she

21   wasn't nodding.  My main focus and attention was

22   towards that of the inmate, Inmate Michael Durham.

23            THE COURT:  All right.  Do you have any
```

Jennie L. Washington
Official Court Reporter

A-104.

1    explanation why you were asked to give an

2    affidavit?

3             THE WITNESS:  I have none.  We were by

4    the soda machines, the coke machines, I came out of

5    the bathroom, another officer and myself, the other

6    officer was the one that was saying a few things or

7    whatever.  And I don't know, Sandy turned around

8    and looked at me -- or Ms. Dean did.  I didn't

9    say -- I did not write that and they weren't my

10   words.  That's as to why I marked through them and

11   initialed it.

12             THE COURT:  All right.  What was the

13   other officer's name?

14             THE WITNESS:  Corporal Gregory

15   Alexander.

16             THE COURT:  What did he say?

17             THE WITNESS:  He was just talking about

18   he was noticing Juror Number 9.

19             THE COURT:  Okay.  And did he say that

20   he saw she was nodding in and out, or something to

21   that effect?

22             THE WITNESS:  I really can't recall

23   right now, to be honest with you.  I can't really

Jennie L. Washington
Official Court Reporter



A-105.#

```
1    recall what he said.

2             THE COURT:  All right.  Please step out

3    to the corridor again.

4                       *  *  *  *  *

5             (Whereupon, the witness exited the

6             courtroom.)

7                       *  *  *  *  *

8             THE COURT:  Counsel, do you have any

9    additional questions to suggest?

10            MR. KRINER:  No, Your Honor.

11            THE COURT:  Ms. Dean?

12            MS. DEAN:  Your Honor, I would

13   appreciate it if you would ask Mr. Poore if he

14   recalls my asking him what he observed, and if he

15   recalls at the very moment he told me, that I stood

16   there and wrote down what he said, if he recalls

17   that happening?  I believe that happened in

18   Courtroom 2.  And I've mentioned in my affidavit

19   about that.  I'd appreciate if the Court would ask

20   him if he recalls me writing down what he said.

21            THE COURT:  All right.  Bring him back

22   in.

23                       *  *  *  *  *
```

Jennie L. Washington
Official Court Reporter

A-106.#

```
 1              (Whereupon, the witness reentered the

 2         courtroom.)

 3                    *  *  *  *  *

 4              THE COURT:  Do you recall having any

 5    conversations with Ms. Dean in Courtroom Number 2?

 6              THE WITNESS:  Yes, I do.

 7              THE COURT:  And do you recall her asking

 8    you what you observed?

 9              THE WITNESS:  No.  We had made a

10    comment, or she had made a comment -- a few people

11    were talking and cutting up, or whatever, and they

12    were teasing Mr. Kriner.  And I think I made a

13    comment, I said, "Whether or not she was sleeping,"

14    I said, "The only two people that surely would know

15    whether she was nodding or not, should have been

16    the people who were addressing her when giving

17    their closing statements," and that was Ms. Dean

18    and Mr. Kriner.  That's all I said.

19              THE COURT:  Do you recall Ms. Dean

20    writing anything down as you were speaking?

21              THE WITNESS:  I don't know if she was or

22    not, sir.

23              THE COURT:  All right.  Was there some
```

Jennie L. Washington
Official Court Reporter

A-107.

```
 1    effort at humor about Mr. Kriner putting jurors to

 2    sleep or something; is that what you are referring

 3    to?

 4              THE WITNESS:  Just a few cut-ups being

 5    made and everything, including myself were making

 6    comments.  Other than that, no.

 7              THE COURT:  All right.  Please step out

 8    to the corridor again.

 9                        *  *  *  *  *

10              (Whereupon, the witness exited the

11              courtroom.)

12                        *  *  *  *  *

13              THE COURT:  Any other questions for this

14    witness?

15              MR. KRINER:  No, Your Honor.

16              MS. DEAN:  No, Your Honor.

17              THE COURT:  All right.  Bring in

18    Mr. Mizell.

19              Any objection to Ms. Savitz and

20    Mr. Poore being excused?

21              MR. KRINER:  Not from the State, Your

22    Honor.

23              MS. DEAN:  No, Your Honor.
```

Jennie L. Washington
Official Court Reporter



```
 1                        *  *  *  *  *

 2    Whereupon,

 3                         WILLIAM MIZELL,

 4    was called as a witness and, having been first duly

 5    sworn, was examined and testified as follows:

 6              THE COURT:  Good afternoon, Mr. Mizell.

 7              THE WITNESS:  Good afternoon.

 8              THE COURT:  I have some questions for

 9    you as a follow-up to the affidavit that you've

10    filed on or completed on December 5th, 2003,

11    regarding the trial, State versus Michael Durham.

12    How much of the trial did you attend?

13              THE WITNESS:  All of it.

14              THE COURT:  Was there any particular

15    reason you attended the whole trial?

16              THE WITNESS:  I'm retired and that's

17    what I do.  I come down and observe all, a lot of

18    different trials.

19              THE COURT:  What was your occupation

20    before you retired?

21              THE WITNESS:  I was a construction

22    superintendent.

23              THE COURT:  How old are you today?
```

Jennie L. Washington
Official Court Reporter



A-109.#

```
 1                    THE WITNESS:  62.

 2                    THE COURT:  Can you tell me what you

 3     observed of the juror?

 4                    THE WITNESS:  Yes.  The first day of the

 5     trial, we were, I think it's Courtroom 2, I'm not

 6     sure of the numbers, the one across the way here.

 7                    THE COURT:  That's Courtroom 2.

 8                    THE WITNESS:  That's where the first day

 9     was.  And I was sitting there, it was warm in

10     there.  And I happened to notice that there was a

11     black woman in the front row, and I happened to

12     notice that she was really struggling.  She was

13     struggling, and all through the whole thing.

14     We had a couple of jurors that were dismissed.

15                    At the end of the day, I went home and

16     when I came back the next day, we were over here,

17     and she was sitting in the front row there and she

18     was doing the same thing.  She never actually went

19     to sleep, but she was struggling with sleep I guess

20     like a baby would do, I guess.  And then the third

21     day we were in here when you were giving your

22     instructions to the jury, it was -- she was really

23     having a hard time.  And when Mr. Kriner gave his
```

Jennie L. Washington
Official Court Reporter



A-110.#

1    closing statement and Ms. Dean gave her closing

2    statements, she was struggling.  She didn't go to

3    sleep, but she was struggling.  She was fighting

4    sleep hard.

5              THE COURT:  And when did you bring this

6    to the attention of Ms. Dean?

7              THE WITNESS:  Well, it wasn't actually

8    to Ms. Dean.  I was talking to Mr. Schwartz, Ben

9    Schwartz.  He did a -- he prepared some wills for

10   me, and I mentioned to him that one of the jurors

11   in the trial I was watching -- he had a trial

12   across in the other room -- and I mentioned to him

13   the juror was really, really struggling with sleep

14   all the way through the trial.  And he's the one

15   who took my affidavit.  I never did actually talk

16   to Ms. Dean.

17             THE COURT:  All right.  If you will

18   please step out to the corridor for a moment?

19                     *  *  *  *  *

20             (Whereupon, the witness exited the

21             courtroom.)

22                     *  *  *  *  *

23             THE COURT:  Counsel, do you have any

Jennie L. Washington
Official Court Reporter



A-111.#.

```
 1              THE COURT:  Counsel, do you have any
 2   other questions to suggest or ask of Mr. Mizell?
 3              MR. KRINER:  No, Your Honor.
 4              MS. DEAN:  No, Your Honor.
 5              THE COURT:  Do we have any other
 6   questions to suggest, in view of the testimony, of
 7   Ms. Riley, the juror?
 8              MR. KRINER:  Not from the State, Your
 9   Honor.
10              MS. DEAN:  No, Your Honor.
11              THE COURT:  All right.  Madam Bailiff,
12   if you could inform both of them that they are
13   excused.
14              Counsel, will there be any additional
15   evidence?  Do you see the need for any additional
16   evidence?
17              MR. KRINER:  No, Your Honor.
18              MS. DEAN:  No, Your Honor.
19              THE COURT:  I'm going to allow you to
20   submit written memos in support of your respective
21   positions.  Come to sidebar, we will discuss the
22   scheduling of that.
23                      *  *  *  *  *
```

                    Jennie L. Washington
                    Official Court Reporter



A-112 #

```
 1                    (Whereupon, a discussion at sidebar

 2                    occurred, off the record, at the

 3                    conclusion of which, the following

 4                    occurred in open court:)

 5                         *  *  *  *  *

 6              THE COURT:  Counsel, as discussed at

 7      sidebar, the defendant's letter memorandum may be

 8      filed by Friday, January 16th.  The State may

 9      answer by Friday, January 30th, and the defendant

10      may reply by Friday, February 6th.

11                    Anything else today?

12              MR. KRINER:  No, Your Honor.

13              MS. DEAN:  No, Your Honor.

14              THE COURT:  Court is now adjourned.

15                         *  *  *  *  *

16                    (Whereupon, the matter was adjourned

17                    and reconvened at 4:34 o'clock p.m. the same

18                    day.)

19                         *  *  *  *  *

20              THE COURT:  Counsel, I asked you earlier

21      whether there was any additional evidence, and I've

22      since been approached with a suggestion that I call

23      an additional witness.
```

Jennie L. Washington
Official Court Reporter



A-113.#.

```
 1                    Mr. Kriner, is that your application?
 2                    MR. KRINER:  Yes, Judge.  Joe Sanchez.
 3                    THE COURT:  Any objection, Ms. Dean?
 4                    MR. KRINER:  Well, he was present, so I
 5    don't think I can object to you calling him.
 6                    THE COURT:  All right.  Bring him in.
 7                          *  *  *  *  *
 8    Whereupon,
 9                    JOSEPH SANCHEZ,
10    was called as a witness and, having been first duly
11    sworn, was examined and testified as follows:
12                    THE COURT:  Mr. Sanchez, can you state
13    your employment for the record?
14                    THE WITNESS:  Superior Court bailiff.
15                    THE COURT:  Do you have information
16    regarding the jury service of Shirley Riley, Juror
17    Number 9, in the State versus Michael Durham trial
18    that was tried between December 1st and
19    December 3rd, 2003?
20                    THE WITNESS:  Yes, Your Honor.
21                    THE COURT:  What information is that?
22                    THE WITNESS:  I noticed on the first day
23    of trial when we were in Courtroom Number 2 that
```

Jennie L. Washington
Official Court Reporter



## TABLE OF CONTENTS

TABLE OF CITATIONS                                              i

NATURE AND STAGE OF PROCEEDINGS                                 1

SUMMARY OF ARGUMENTS                                            3

STATEMENT OF FACTS                                              4

ARGUMENT

I.   THE COURT ABUSED ITS DISCRETION BY DENYING DURHAM'S
     MOTION FOR A MISTRIAL OR A NEW TRIAL DUE TO A SLEEPING
     OR INATTENTIVE JUROR.                                     9

CONCLUSION                                                     14

Exhibits:

State v. Witherspoon, 1999 WL 744429 (Del. Super.)  Exhibit "A"

A-115.

1    were there other officers there or just the one?

2        A.    There was other ones there.

3        Q.    All right.  Did you tell anyone --

4    before you got in the ambulance, did you tell

5    anyone who had done this?

6        A.    I can't recall.

7        Q.    Okay.  So you recall telling

8    Detective Humphrey when you got -- when he came to

9    see you at the hospital; was that your testimony?

10       A.    That's what I said, yes.

11       Q.    All right.  But you don't recall telling

12   anybody at the scene?

13       A.    (No response.)

14       Q.    Did Detective Humphrey tell you that

15   they had found Mr. Durham at some other location?

16       A.    I can't recall that.

17       Q.    You don't remember that?

18       A.    (No response.)

19       Q.    Okay.  You testified that you had been

20   convicted in the past of forgery in the second

21   degree?

22       A.    Yes.

23       Q.    Was that for signing somebody else's

Jennie L. Washington
Official Court Reporter

A-116.#