IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHAEL DURHAM,<br><br>Petitioner,<br><br>v.<br><br>PERRY PHELPS,[1] Warden, and JOSEPH R. BIDEN, III, Attorney General of the State of Delaware,<br><br>Respondents. | : | Civ. Act. No. 07-370-JJF |

Michael Durham. Pro se Petitioner.

Elizabeth R. McFarlan, Deputy Attorney General of the DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware. Attorney for Respondents.

**MEMORANDUM OPINION**[2]

October 9, 2009
Wilmington, Delaware

[1]Perry Phelps assumed his position as Warden in January, 2008, replacing former Warden Thomas Carroll, an original party to this case. See Fed. R. Civ. P. 25(d).

[2]This case was re-assigned to this judge from the Vacant Judgeship docket on February 4, 2008.

Farnan, District Judge

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 ("Petition") filed by Petitioner Michael Durham ("Petitioner"). (D.I. 1.) For the reasons discussed, the Court will dismiss the Petition and deny the relief requested.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 2002, Petitioner and two other individuals entered Michael Taylor's Dover home seeking money. The three men physically accosted and chased Taylor throughout the house. One of the men was carrying a handgun and fired it at Taylor. Another man punched Taylor in the face. By the time the police arrived, all three men had fled. Suffering from various injuries, Taylor identified his assailants as Petitioner, Quentin Henry, and one he only knew as "Peebo." Durham v. State, 867 A.2d 176, 178 (Del. 2005).

In April 2003, a Delaware Superior Court jury found Petitioner guilty of offensive touching and second degree criminal trespass. The Superior Court granted Petitioner's motion for judgment of acquittal as to the charges of first degree kidnaping, a related weapons offense, and two counts of endangering the welfare of a child. The jury was hung as to the remaining charges, and a second trial was scheduled for December 2003. (D.I. l 19, at p. 1 n.1.)

In December 2003, a Delaware Superior Court jury convicted Petitioner of first degree burglary, attempted first degree robbery, first degree reckless endangering, second degree conspiracy, four counts of possession of a firearm during the commission of a felony, terroristic threatening, third degree assault (the lesser included offense of second degree assault), endangering the welfare of a child, criminal mischief, and aggravated menacing. Petitioner moved for a new trial, contending that a juror had slept during parts of the trial. After a holding an evidentiary hearing and reviewing further briefing by the parties, the Superior Court denied the motion in March 2004. The Superior Court sentenced Petitioner on March 9, 2004 as an habitual offender to life in prison on the attempted first degree robbery conviction, and also to 103 years of imprisonment on the remaining convictions, suspended after 100 years for probation. On May 25, 2004, the Superior Court re-sentenced Petitioner to the same sentence in order to re-set the time for appeal. (D.I. 19.); State v. Durham, 2004 WL 440219 (Del. Super. Ct. Mar. 8, 2004); Durham v. State, 867 A.2d 176 (Del. 2005).

On direct appeal, Petitioner argued that the Superior Court erred by denying his motion for a new trial. The Delaware Supreme Court affirmed Petitioner's convictions and sentences on January 12, 2005. Durham, 867 A.2d 176.

In May 2005, Petitioner filed in the Superior Court a motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"), asserting the following four grounds: (1) vindictive prosecution (3 allegations); (2) judicial misconduct (4 allegations); (3) ineffective assistance of trial counsel (3 allegations); and (4) Double Jeopardy. The case was referred to a Superior Court Commissioner, who issued a Report and Recommendation concluding that the Superior Court should deny the Rule 61 motion as procedurally barred. State v. Durham, ID 0208019524A, Comm'r. Rep. & Rec. (Del. Super. Ct. Nov. 30, 2005). The Superior Court adopted the Report and Recommendation and denied Petitioner's Rule 61 motion as procedurally barred. State v. Durham, Order (Del. Super. Ct. Mar. 14, 2006). Petitioner appealed, and the Delaware Supreme Court affirmed the Superior Court's decision. Durham v. State, 909 A.2d 594 (Table), 2006 WL 2795079 (Del. 2006).

## II. APPLICABLE LEGAL DOCTRINES

### A. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot review the merits of claims asserted in a habeas petition unless the petitioner has exhausted all means of available relief for the claims under state law. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion

requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the state courts to consider it on the merits. See Duncan v. Henry, 513 U.S. 364, 365 (1995); Castille v. Peoples, 489 U.S. 346, 351 (1989); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). If a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. See Coleman v. Thompson, 501 U.S. 722, 749-750 (1991); Harris v. Reed, 489 U.S. 255, 260-64 (1989); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, the petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). To

demonstrate actual prejudice, the petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 494.

Alternatively, if the petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. Murray, 477 U.S. at 496; Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

**B. Standard of Review**

When a state's highest court adjudicates a cognizable

federal habeas claim on the merits,[3] the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).  Pursuant to § 2254(d), federal habeas relief may only be granted when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial.  28 U.S.C. § 2254(d)(1) & (2);  Williams v. Taylor, 529 U.S. 362, 412 (2000);  Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001).

When reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct.  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1);  Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000);  Miller-El v. Cockrell, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual

---

[3]A state court decision constitutes an adjudication on the merits for the purposes of § 2254(d) if the decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground.  Thomas v. Horn, 570 F.3d 105, 115 (3d Cir. 2009).

decisions).

## III. DISCUSSION

Petitioner presents five grounds for habeas relief: (1) vindictive prosecution and prosecutorial misconduct; (2) judicial misconduct and error; (3) ineffective assistance of trial counsel; (4) Double Jeopardy violations; and (5) unlawful confinement. The State argues that the Court must dismiss the Petition in its entirety because the Court is procedurally barred from reviewing all five Claims.

### A. Claim One: Vindictive Prosecution and/or Prosecutorial Misconduct

In Claim One, Petitioner contends his conviction was the result of vindictive prosecution and/or prosecutorial misconduct because the state prosecutors unreasonably charged him with accomplice liability, they permitted Detective Humphrey and the victim Michael Taylor to provide perjured testimony, and they allowed Petitioner to be placed in the same holding cell as his accomplice, Quentin Henry. For the following reasons, the Court concludes that it is procedurally barred from reviewing the merits of these allegations due to Petitioner's procedural default at the state court level.

#### 1. Accomplice Liability

Petitioner has not exhausted state remedies for his claim that the State engaged in vindictive prosecution and/or prosecutorial misconduct and violated his right to a fair trial

by advancing a theory of accomplice liability during his trial because he did not present this argument to the Delaware Supreme Court on direct appeal or on post-conviction appeal. At this juncture, Delaware Superior Court Criminal Rules 61(i)(2) and (3) would bar Petitioner from presenting this issue to the Delaware State Courts in a new Rule 61 motion. See Lawrie v. Snyder, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); Bright v. Snyder, 218 F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) would bar the Superior Court from considering the claim because Petitioner did not raise the claim in the proceedings leading to his conviction). Therefore, although the Court must excuse Petitioner's failure to exhaust state remedies, the claim is procedurally defaulted for the purposes of habeas review.

It is well-settled that the ineffective assistance of appellate counsel can constitute cause for a petitioner's procedural default of a claim, provided that the petitioner raised the specific issue of counsel's failure to the state courts as an independent claim and counsel's ineffectiveness rose to the level of a constitutional deprivation under Strickland v. Washington, 466 U.S. 668 (1984). Edwards v. Carpenter, 529 U.S. 446 (2000). Here, Petitioner attempts to establish cause for his default by alleging ineffective assistance of counsel due to counsel's failure to raise the accomplice liability portion of

the vindictive prosecution/prosecutorial misconduct claim on direct appeal. (D.I. 26, at pp. 3-4.) Petitioner presented the same ineffective assistance of counsel argument to the Delaware Superior Court in his Rule 61 motion, but he did not present the claim to the Delaware Supreme Court in his subsequent post-conviction appeal. Consequently, this ineffective assistance of counsel allegation is itself procedurally defaulted, and cannot excuse Petitioner's procedural default of the underlying accomplice liability/prosecutorial misconduct/vindictive prosecution claim. See Del. Super. Ct. Crim. R. 61(i)(2); Edwards, 529 U.S. at 453-54.

In the absence of cause, the Court will not address the issue of prejudice.[4] In addition, Petitioner cannot excuse his

---

[4]Nevertheless, Petitioner cannot demonstrate prejudice stemming from the default of his claim that the State engaged in vindictive prosecution and/or prosecutorial misconduct by advancing an accomplice liability theory. Vindictive prosecution arises in situations where a defendant is punished for exercising a protected statutory or constitutional right, such as when the defendant is charged with more serious charges after invoking his right to a jury trial, or when a defendant is subjected to a harsher sentence by the court, or is charged with more serious charges, after retrial following a successful appeal. See Blackledge v. Perry, 417 U.S. 21, 25 (1974); United States v. Goodwin, 457 U.S. 368, 372 (1982). In order to present a viable claim of prosecutorial vindictiveness, the defendant must satisfy the initial burden of proof and establish the appearance of vindictiveness. See United States v. Schoolcraft, 879 F.2d 64, 67 (3d Cir. 1989). Here, Petitioner has not demonstrated that he exercised any right that would have triggered a penalizing reaction by the prosecutor, and the Court has found nothing in the record to indicate an improper or vindictive motive on the part of the prosecution.

In addition, Petitioner's allegation that the prosecutor

default under the "miscarriage of justice" doctrine because he has not provided any colorable evidence of his actual innocence. Thus, the Court will deny as procedurally barred the portion of Petitioner's vindictive prosecution and/or prosecutorial misconduct claim that is premised on the State's advancement of the accomplice liability theory.

2. Perjured Testimony and Holding Cell Issues

Petitioner contends that the State engaged in vindictive prosecution and/or prosecutorial misconduct by permitting Detective Humphrey and the victim, Michael Taylor, to provide perjured testimony, and also by permitting Petitioner to be

---

inappropriately pursued a theory of accomplice liability such that it denied him a fair trial (i.e., prosecutorial misconduct) is baseless. It is well-settled in Delaware that a person may be liable for the conduct of another when he "aids, counsels or agrees or attempts to aid the other person in planning or committing it," and the evidence in this case supported a theory of accomplice liability. See Del. Code Ann. tit. 11, § 271. In Petitioner's case, the victim, Michael Taylor, testified that three men forced their way into his home on August 27, 2003, chased and assaulted him, shot at him, hit him in the head with a pistol, and demanded money from him. Taylor identified Petitioner as being one of his attackers. One hour after the incident, the police arrested Petitioner less than one half mile away from Taylor's home. The police also discovered a semi-automatic handgun in close proximity to Petitioner, and a ballistics expert matched the handgun to the ballistics evidence recovered from Taylor's home. Moreover, counsel stated in her Rule 61 affidavit that the State properly presented an accomplice theory given the evidence presented at trial, and she explained that she disputed the evidence at trial. Accordingly, the Court concludes that Petitioner cannot demonstrate prejudice because he has failed to establish viable claims of vindictive prosecution or prosecutorial misconduct stemming from the State's decision to pursue a theory of accomplice liability.

placed in the same holding cell as his accomplice, Quentin Henry. Petitioner did not present these two allegations on direct appeal, and although he did present them to the Delaware Supreme Court on post-conviction appeal, the Delaware Supreme Court explicitly denied the arguments under Delaware Superior Court Criminal Rule 61(i)(3) as procedurally defaulted and Rule 61(i)(4) as formerly adjudicated. By denying Petitioner's contentions under Rule 61, the Delaware Supreme Court plainly stated that its decision rested on state law grounds,[5] and this Court has consistently held that a dismissal pursuant to Rule 61 constitutes a procedural default under the independent and adequate state procedural rule doctrine. See McCleaf v. Carroll, 416 F. Supp. 2d 283, 296 (D. Del. 2006); Mayfield v. Carroll, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Therefore, the instant two allegations are exhausted but procedurally defaulted, and the Court cannot review the merits of the allegations absent a showing of cause and prejudice, or that a miscarriage of justice will occur if the claims are not reviewed.

Petitioner attempts to establish cause for his procedural default by blaming counsel for not raising the claims on direct appeal. Petitioner presented these particular complaints about counsel's performance to the Delaware State Courts as an independent claim, and the Delaware State Courts rejected

---

[5] Harris v. Reed, 489 U.S. 255, 263-64 (1989).

Petitioner's ineffective assistance of counsel argument for being "merely conclusory" and for failing to satisfy the prejudice prong of the Strickland test. See (D.I. 24, State's Motion to Affirm in Durham v. State, No.176,2006, at Exh. B-9.) Therefore, counsel's failure to raise the instant two vindictive prosecution/prosecutorial misconduct issues on appeal will only constitute cause if the Delaware Supreme Court's denial of the arguments was contrary to, or an unreasonable application of, Strickland.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by Strickland v. Washington, 466 U.S. 668 (1984) and its progeny. See Wiggins v. Smith, 539 U.S. 510 (2003). Under the first Strickland prong, Petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. Strickland, 466 U.S. at 688. Under the second Strickland prong, Petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." Id. at 687-96.

In this proceeding, Petitioner asserts that Detective Humphrey committed perjury by testifying that Taylor was still at the crime scene when he informed Detective Humphrey that

Petitioner was one of his assailants. The record, however, belies Petitioner's assertion; according to the transcript of Detective Humphrey's testimony, Detective Humphrey explained that he first interviewed Petitioner at the hospital.[6] Because Petitioner's underlying claim of perjury is factually baseless, counsel's failure to raise a meritless perjury argument did not prejudice Petitioner under Strickland. Accordingly, the Court concludes that the Delaware Supreme Court did not unreasonably apply Strickland in denying Petitioner's claim that counsel should have raised the issue of Detective Humphrey's alleged perjury on direct appeal.

In turn, the Delaware Superior Court denied as meritless Petitioner's claim that the prosecutor purposely placed Henry in the same holding cell with him so that the prosecutor could subsequently impeach Henry's testimony by suggesting that Henry consulted with Petitioner about his testimony while they shared the same cell. The Delaware Superior Court rejected this allegation because nothing in the record supported Petitioner's

---

[6]For instance, the prosecutor asked Detective Humphrey, "Do you recall where that interview [with Mr. Taylor] took place," and Detective Humphrey replied, "That was at Kent General in the emergency room." (D.I. 25, App. to Appellant's Op. Br. in Durham v. State, No.227,2004, at A-76) Mr. Taylor, however, testified that he identified Petitioner as his attacker to the police investigating the crime scene, and that he made this identification before he was transported to the hospital and before he spoke to Detective Humphrey at the hospital. Id. at A-52.

contention that the prosecutor had something to do with placing Petitioner in the same cell as Henry. In addition, the Superior Court stated that "there is no logical reason a prosecutor would knowingly allow a defense witness to share a cell with a defendant during trial. That situation allows for collaboration and intimidation, which does not benefit the [S]tate." Durham, ID 0208019524A, Comm'r. Rept. & Rec., at p. 10.

After independently reviewing the record, the Court has found nothing to support Petitioner's contention that the prosecutor knew about his placement in the holding cell with Quentin Henry. In fact, defense counsel's Rule 61 affidavit explicitly rejects Petitioner's allegation, explaining that

> Correctional staff in the Courthouse cellblock placed Petitioner and Henry in the same cell for a brief time. There was no evidence that the prosecutor knew of this before it happened or "allowed it." The correctional officer testified that he did not hear any threats, promises or discussion about testimony between [Petitioner] and Henry.

(D.I. 25, Affidavit of Sandra W. Dean, in Appellant's App. to Op. Br. in Appeal of Superior Court's Rule 61 Order, at A-22.) Thus, the Court concludes that the Delaware Supreme Court reasonably applied Strickland in denying the instant claim for lack of prejudice.

Based on the foregoing, appellate counsel's performance cannot constitute cause for Petitioner's default of the underlying perjury and holding cell allegations. In the absence

of cause, the Court will not address the issue of prejudice. The Court also concludes that the miscarriage of justice exception to the procedural default doctrine does not apply because Petitioner has not provided any colorable claim of his actual innocence. Accordingly, the Court will deny as procedurally barred the portion of Claim One that is based on the perjury and holding cell arguments.

**B. Claim Two: Judicial Misconduct And Error**

In Claim Two, Petitioner asserts that the trial judge: (a) failed to question a juror regarding her inattentiveness ("Claim Two(a)"); (b) improperly instructed the jury on accomplice liability ("Claim Two(b)"); (c) improperly permitted a prosecution witness to vouch for the victim ("Claim Two(c)"); and (d) failed to give the jury an unanimity instruction ("Claim Two(d)"). The record reveals that Petitioner presented Claim Two(a) involving the judge's review of a juror's inattentiveness to the Delaware Supreme Court on direct appeal, and the Delaware Supreme Court denied the claim as meritless.[7] Therefore, the

---

[7]Petitioner also presented this claim to the Superior Court in his Rule 61 motion and to the Delaware Supreme Court in his post-conviction appeal, and both state courts denied the claim as procedurally barred under Rule 61(i)(4). Nevertheless, all that is required for exhaustion purposes is that a petitioner present a claim to the state supreme court, either on direct appeal OR on post-conviction appeal. Considering that Petitioner clearly presented the sleeping juror issue to the Delaware Supreme Court on direct appeal, the Court does not accept the State's argument that Petitioner procedurally defaulted this claim by failing to raise it on direct appeal or post-conviction appeal. See (D.I.

Court must review this claim under § 2254(d).

In contrast, the record reveals that Petitioner did not present the remaining three allegations of judicial misconduct to the Delaware Supreme Court on direct appeal or on post-conviction appeal.[8] Any attempt to raise these claims in a new Rule 61 motion and subsequent post-conviction appeal would be barred as untimely under Rule 61(i)(1), as repetitive under Rule 61(i)(2), and as procedurally defaulted under Rule 61(i)(3). Consequently, these three claims of judicial misconduct are procedurally defaulted for the purposes of federal habeas review, thereby precluding review of their merits absent a showing of cause and prejudice, or a miscarriage of justice. The Court will review

---

19, at p.9.)

[8]Petitioner did not raise Claims Two (b), (c), and (d) on direct appeal. He did, however, raise these issues in his Rule 61 motion, and the Superior Court denied these three arguments as procedurally barred after determining that Petitioner's attempt to blame counsel for failing to raise these issues on direct appeal failed to establish ineffective assistance of counsel sufficient to excuse his default of the arguments. (D.I. 1, Comm'r. Rept. & Rec. at p.9) However, the Delaware Supreme Court considered these three judicial misconduct assertions to be waived because Petitioner did not raise the claims in his post-conviction appeal. Durham, 2006 WL 2795079, at*1, n.10.

In this proceeding, Petitioner argues that the Superior Court erred in denying his Rule 61 motion as procedurally barred, insisting that counsel failed to raise "any and all necessary grounds" on direct appeal, which thereby demonstrated cause for his default. (D.I 2, at p. 6.) Yet, it was Petitioner's failure to raise Claims Two(b), (c), and (d) to the Delaware Supreme Court either on direct appeal or on post-conviction appeal that causes the Court to find a procedural default, not the fact that the Superior Court denied the three issues as procedurally barred in his Rule 61 proceeding.

all four judicial misconduct claims under the appropriate standards of review.

1. Claim Two(a): Judge's failure to "comprehensively" review the issue of the sleeping juror

Petitioner contends that the trial judge failed to comprehensively review his assertion that a juror slept through his trial because the judge did not question the juror who "nudged" Juror Nine awake when she fell asleep. (D.I. 2, at p. 16.) According to Petitioner, this lapse in the trial judge's inquiry led to the improper denial of Petitioner's motion for new trial.

Petitioner presented the same argument to the Delaware Supreme Court in his direct appeal. The Delaware Supreme Court reviewed both federal and state caselaw relevant to determining whether the presence of a sleeping juror violated Petitioner's Sixth Amendment right to a fair trial by an impartial jury, and opined that

> [t]he factors for consideration thus revolve around the extent of Juror Nine's inattention, whether the trial judge or the parties were aware of the sleeping juror during trial, and [Petitioner's] ability to produce evidence demonstrating that the juror's lapse was so severe that he was denied a fair trial. Additional considerations are the interests in the finality of judgments and insulation of the decisionmaking process from scrutiny by either the government or the public.

Durham, 867 A.2d at 181. The Delaware Supreme Court then held that the trial court properly denied Petitioner's motion for new trial because the trial judge had conducted a comprehensive post-

verdict factual inquiry into the issue, and properly determined that Petitioner failed to demonstrate that he was prejudiced by any alleged inattentiveness on Juror Nine's part.

The United States Supreme Court has opined that "a federal court's review into . . . a criminal jury's deliberations is a decidedly limited enterprise," primarily because "[a]llegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the [trial] process." Tanner v. United States, 483 U.S. 107, 120 (1987). In addition, pursuant to Third Circuit precedent, a trial court should grant such motions for new trial only if the juror missed an essential part of the trial while sleeping and the defendant was prejudiced by this misconduct. See United States v. Resko, 3 F.3d 684, 691 (3d Cir. 1993); United States v. Sheika, 2005 WL 2562969, at *4 (D.N.J. Oct. 7, 2005).

In Petitioner's case, the Superior Court held an evidentiary hearing on Petitioner's motion for new trial, and heard testimony from the bailiff, an attorney who was present in the courtroom, a spectator during the trial, and Juror Nine herself. State v. Durham, 2004 WL 440219 (Del. Super. Ct. Mar. 8, 2004). The bailiff testified that Juror Nine tended to close her eyes, but that she also moved her hands or swivelled back and forth in her chair while her eyes were closed, and that he never saw Juror

Nine sleeping. The attorney testified that she saw Juror Nine put her head down, but that she could not be sure if the Juror was sleeping. The spectator testified that Juror Nine fought sleep during the closing statements and during the jury charge, but that she did not actually go to sleep. And finally, Juror Nine herself testified that she did not sleep during the trial, but that she did close her eyes at times. Id.

Given this testimony, the trial judge concluded that Petitioner failed to establish any actual prejudice caused by Juror Nine's actions because Juror Nine had not slept during the trial, nor had Juror Nine ignored essential portions of the trial. The trial judge also found that, "[e]ven if Juror Nine was fighting sleep at times, that circumstance is not so egregious and inherently prejudicial as to raise any presumption of prejudice." Durham, 2004 WL 440219, at *1. The Delaware Supreme Court affirmed the Delaware Superior Court's decision on direct appeal, noting that the trial judge analyzed Petitioner's juror misconduct claim in "an orderly, logical deductive-reasoning process," and that Petitioner did not suffer prejudice as a result of Juror Nine's actions because Petitioner did not provide any testimony that Juror Nine actually missed portions of the trial.

In this proceeding, Petitioner obliquely contends that the trial judge should have heard testimony from a juror who

allegedly "nudged" Juror Nine awake, and that such testimony would have demonstrated the prejudice necessary to warrant a new trial. However, during the evidentiary hearing on the motion for new trial, Juror Nine stated that she closed her eyes on the first day of jury selection, and that, even though another juror started to nudge her, he actually never did nudge her. (D.I. 3, at A-86.) The trial judge then asked several questions regarding Juror Nine's tendency to close her eyes while thinking about issues, and Juror Nine repeatedly stated that, even if she dozed prior to jury selection, she was attentive and awake for the remaining portion of Petitioner's trial. The judge asked if Juror Nine understood and comprehended all of the evidence and the court's instructions, and Juror Nine responded affirmatively.

After reviewing Juror Nine's testimony in conjunction with the testimony provided by the three people who were in the courtroom at the time Juror Nine is alleged to have been sleeping, the Court concludes that the Delaware Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established Federal law, nor was it an unreasonable determination of the facts based on the evidence. Significantly, Petitioner has not alleged that the "nudging" juror would have been able to identify actual portions of testimony missed by Juror Nine. Moreover, given Juror Nine's statement that, if she did doze, it was prior to jury selection, there is no indication

that any portion of the trial missed by Juror Nine was essential to Petitioner's case. Therefore, the Court concludes that Claim Two(a) does not warrant relief under § 2254(d)(1)or (2).

2. Claims Two (b),(c),(d): Procedurally barred allegations of judicial misconduct

As previously explained, Petitioner's remaining three allegations of judicial misconduct are procedurally defaulted and cannot be reviewed on their merits absent a demonstration of cause and prejudice, or a miscarriage of judge. The Court has failed to find any allegation of cause for Petitioner's default of Claims Two(b), (c), and (d) in the Delaware State Courts.[9]

---

[9]Petitioner's § 2254 application simply does not assert ineffective assistance as cause for his default of the judicial misconduct claim. (D.I. 1; D.I. 2; D.I. 26.) For example, Petitioner's "Opening Brief In Support of Petition" provides support for three of his claims (prosecutorial misconduct with respect to the holding cell issue, prosecutorial misconduct by permitting perjured testimony, and judicial misconduct related to the denial of Petitioner's motion for new trial), generally asserts ineffective assistance of counsel for failing to raise each of these three issues on direct appeal, and specifically asserts ineffective assistance as cause for his failure to raise "claims three and six as designated by the Superior Court Commissioner in his Rule 61 proceeding on direct appeal." (D.I. 2, at p. 5.) Claims Three and Six to which Petitioner refers involve his prosecutorial misconduct claims, not his judicial misconduct claims. See (D.I. 25, State v. Durham, Order (Del. Super. Ct. Mar. 14, 2006) at pp. 2-3.) Even in his Response to the State's Answer, Petitioner does not allege ineffective assistance of counsel as cause for his default of Claims Two(b),(c) and (d). (D.I. 26.) Rather, Petitioner's Response: (1) re-asserts his vindictive prosecution claim that the prosecutors unreasonably charged him with accomplice liability, along with a corollary independent claim that counsel provided ineffective assistance by failing to request a "complete" instruction on accomplice liability; (2) re-asserts his prosecutorial misconduct claim regarding Detective Humphrey's perjured testimony, along with the corollary and independent

Even if the Court were to liberally construe assertions raised in Petitioner's voluminous state court filings as an attempt to allege ineffective assistance of counsel as cause for his default in this proceeding, the Court concludes that counsel's performance cannot excuse Petitioner's default because this particular allegation of ineffective assistance of counsel is itself procedurally defaulted.[10]

In the absence of cause, the Court will not address the issue of prejudice. Further, Petitioner's vague and unsupported statements regarding his actual innocence fail to excuse his default under the "miscarriage of justice" exception. See (D.I. 1, Memorandum, at pp. i & 9.) Accordingly, the Court will deny Claims Two(b),(c), and (d) as procedurally barred from habeas review.

**C. Claims Three and Four: Ineffective Assistance Of Counsel and Double Jeopardy**

---

claim that trial counsel should have objected to the perjury and also should have raised the perjury issue on direct appeal. Id. at pp. 2-3; and (3) newly asserts a claim that there should have been a jury instruction on lesser-included offenses, and attempts to establish cause for his failure to raise this claim earlier by asserting that counsel provided ineffective assistance by failing to request such an instruction. Id. at pp.4-6.

[10]The ineffective assistance of counsel allegations raised by Petitioner on post-conviction appeal related to Petitioner's prosecutorial misconduct claims, his inattentive juror claim, and two other independent claims; Petitioner did not argue that counsel provided ineffective assistance with respect to the judicial misconduct allegations contained in Claims Two(b),(c), and (d). See (D.I. 24, Appellant's Op. Br. in Durham v. State, 176,2006.)

In Claim Three, Petitioner contends that counsel failed to: (1) discover defects in the State's evidence, such as the State's failure to obtain fingerprints, blood samples, or even conduct a line-up; (2) investigate and find other witnesses; (3) have the gun suppressed as evidence; (4) object to the attempted first degree robbery charge on the grounds that Petitioner did not have the requisite state of mind; (5) object to the admission of the gun as evidence;[11] (6) object to the fact that the prosecutors placed Petitioner in the same holding cell as a defense witness; (7) object to the presentation of perjured testimony; and (8) call the juror who "nudged" Juror Nine to testify during the hearing held with respect to Petitioner's motion for new trial.[12] In Claim Four, Petitioner asserts that his conviction in his second trial for possession of a firearm during the commission of a felony violated his right to be protected against Double Jeopardy, because he was acquitted of that same charge in his first trial.

The Court has already concluded that allegations six, seven, and eight in Claim Three do not warrant federal habeas relief. See supra at pp. 7-15. Therefore, the Court will not re-address those issues here.

In turn, the record reveals that Petitioner did not present

---

[11]The first five allegations are raised in D.I. 1, Memorandum, at pp. 6-9.

[12]The last three allegations are raised in D.I. 2.

allegations one through five of Claim Three to the Delaware Supreme Court on post-conviction appeal.[13] At this juncture, Delaware Superior Court Criminal Rule 61(i)(3) and (4) would bar Petitioner from raising these five arguments in a new Rule 61 motion. Consequently, the Court must treat allegations one through five of Claim Three as procedurally defaulted for the purposes of habeas review.

The Court also concludes that Claim Four is procedurally defaulted. Although Petitioner presented this claim to the Delaware Superior Court in his Rule 61 motion, he did not present the claim to the Delaware Supreme Court on post-conviction appeal. At this juncture, Delaware Superior Court Criminal Rules 61(i)(3) and (4) would bar Petitioner from presenting Claim Four in new Rule 61 motion.[14] Thus, the Claim is deemed exhausted but

---

[13]Petitioner asserted the following three arguments on post-conviction appeal: (1) Prosecutorial misconduct in allowing a defense witness to be placed within the same holding cell during trial, along with trial counsel's ineffectiveness in failure to object to this occurrence; (2) Prosecutorial misconduct/ineffective assistance of counsel in failing to object to, and move to exclude, the state presenting perjured testimony by Detective Humphrey; and (3) Trial Court's abuse of discretion in denying motion for a new trial due to Juror Number Nine's inattentiveness, along with counsel's negligent ineffectiveness in not bringing to light all facts of error, through calling the other juror that actually nudged Juror Number Nine whom was asleep to testify. (D.I. 25, Appellant's Op. Br. on Post-Conviction Appeal, in Durham v. State, No. 176, 2006, at p.1.)

[14]Delaware Superior Court Criminal Rule 61(i)(3) would bar further state court review of Claim Four as procedurally defaulted because Petitioner did not raise the issue on direct appeal. Rule 61(i)(4) would bar Petitioner from presenting the

procedurally defaulted.

Based on the foregoing, the Court cannot review the merits of Claim Four, or allegations one through five of Claim Three, unless Petitioner demonstrates cause for the default and prejudice resulting therefrom, or that a miscarriage of justice will result absent such review. Petitioner does not assert any cause for his default of the five allegations in Claim Three. Although Petitioner alleges ineffective assistance of counsel as cause for his default of Claim Four, counsel's performance cannot constitute cause because Petitioner never asserted this particular ineffective assistance issue in his state collateral proceeding or in his subsequent post-conviction appeal. See Edwards, 529 U.S. at 453-54.

In the absence of cause, the Court will not address the issue of prejudice. Moreover, the miscarriage of justice exception to the procedural default doctrine also does not excuse Petitioner's default because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Four, and allegations one through five in Claim Three Claim, as procedurally barred from federal habeas review.

---

claim in a new Rule 61 motion because he previously raised the claims in the Rule 61 motion that was denied by the Superior Court. See White v. Carroll, 416 F. Supp. 2d 270, 281 (D. Del. 2006).

**D. Claim Five: Unlawful Confinement**

In his final claim, Petitioner asserts that he "was illegally detained on charges resulting in his conviction and sentence." Petitioner, however, has never presented Claim Five to the Delaware State Courts in any of his proceedings. Therefore, the Claim is unexhausted.

At this point in time, Rules 61(i)(2) and (3) would bar Petitioner from raising Claim Five in a new Rule 61 motion. See Lawrie v. Snyder, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); Bright v. Snyder, 218 F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) would bar the Superior Court from considering the claim because Petitioner did not raise the claim in the proceedings leading to his conviction). Given this procedural situation, the Court must treat the claim as exhausted, but procedurally defaulted.

Petitioner has not alleged any cause for his default of Claim Five, and this alone is sufficient for the Court to refrain from addressing the issue of prejudice. The Court also notes that Petitioner's conclusory allegation of actual innocence does not trigger the miscarriage of justice exception to the procedural default doctrine. Therefore, the Court will deny Claim Five as procedurally barred.

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. See 3d Cir. L.A.R. 22.2 (2008). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Therefore, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 will be denied.

An appropriate Order will be entered.